UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

Michael Kane; William Castro; Margaret Chu;
Heather Clark; Stephanie Di Capua; Robert Gladding;                    No.: 21-CV-7863(VEC)
Nwakaego Nwaifejokwu; Ingrid Romero; Trinidad Smith;
Amaryllis Ruiz-Toro,

                                                    Plaintiffs,

                            - against -

Bill de Blasio, in his official capacity as Mayor of the City
of New York; David Chokshi, in his official capacity of
Health Commission of the City of New York, New York
City Department of Education,

                                                    Defendants.

------------------------------------------------------------------------ x

### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

**GEORGIA M. PESTANA**
Corporation Counsel of the City of New York
Attorney for Defendants
100 Church Street
New York, New York 10007

*Of Counsel:*

                            Amanda C. Croushore
                            Lora Minicucci

## PRELIMINARY STATEMENT

On August 24, 2021—the day after the U.S. Food and Drug Administration ("FDA") fully approved the Pfizer COVID-19 vaccine—the Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH"), David A. Chokshi, issued a Commissioner's Order ("COH Order") requiring all New York City Department of Education ("DOE") employees to show proof of at least one dose of vaccination against COVID-19 by September 27, 2021 (the "DOE Vaccination Mandate").[1]   The COH Order's preliminary paragraphs provide a salient and unassailable predicate for making the mandate, including that the U.S. Centers for Disease Control and Prevention ("CDC") extols vaccination as the primary strategy to stop the spread of COVID-19 and thus recommends teachers be vaccinated as soon as possible to help schools safely resume full operations.  Further, and to that end, DOE is the largest school district in the country, with around one million students, hundreds of thousands of whom are not yet able or eligible to be vaccinated.  Thus, the DOE Vaccination Mandate is fully premised on potentially saving lives, protecting public health, and promoting public safety.

Plaintiffs are ten New York City public school employees who oppose the DOE Vaccination Mandate.[2]  Plaintiffs claim that without an injunction 15,000 DOE teachers and staff will be suspended or terminated on October 1 and that public school children are at risk of imminent harm. Specifically, Plaintiffs claim that requiring teachers to get vaccinated violates their First Amendment rights under the Establishment Clause and the Free Exercise Clause, their

---

[1]     See Declaration of Lora Minicucci ("Minicucci Decl.), Exh. A.  This Order was rescinded and restated in a subsequent Commissioner's Order, dated September 15, 2021, which, as to the DOE Vaccination Mandate, is analogous to its predecessor.  See id., Exh. B, also available at: https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-2.pdf last visited on September 16, 2021.

substantive due process rights and that because of this they will suffer irreparable harm. Plaintiffs now seek an emergency injunction that would overturn the Vaccine Mandate which is already in force and thus allowing them all other unvaccinated DOE teachers and paraprofessionals, to have direct, repeated and lengthy contact, within a school setting, with students who are themselves unable or ineligible to be vaccinated.

Plaintiffs meet none of the requirements for a preliminary injunction. Namely, they cannot establish an irreparable harm, a likelihood of success on the merits of their claims or that the balance of equities tips in their favor. Most plainly too, plaintiffs cannot show that acting to enjoin a vaccination requirement for school staff would be in the public interest. The COH Order itself makes this entirely clear. This mandate is founded on public health officials' expertise, sound science and studies, and, with millions now fully vaccinated, abundant empirical data proving efficacy and safety. Plaintiffs' application for a preliminary injunction must be denied in its entirety. [3]

## **STATEMENT OF FACTS**

### **COVID-19 Pandemic and Impact on Schools and School-Aged Children**

On March 12, 2020, Mayor Bill de Blasio issued Emergency Executive Order No. 98, declaring a state of emergency in the City of New York ("the City") to address the threat posed by COVID-19 to the health and welfare of City residents, and this order remains in effect today. See Minicucci Decl., Exh. C at p. 1. Thereafter, on March 25, 2020, the New York City Commissioner of Health and Mental Hygiene declared the existence of a public health emergency within the City to address the continuing threat posed by COVID-19 to the health and

---

[3] The Court directed plaintiffs to serve a copy of its Order, providing for this response and scheduling a hearing for tomorrow, at 9 a.m., by email by 2:45 p.m. today. Plaintiff did not email the Court's Order until 3:38 p.m.

welfare of City residents, and recently declared that the public health emergency continues to be in effect.  Id.

Indeed, the CDC now reports that new variants of COVID-19, identified as "variants of concern," have emerged in the United States, and some of these new variants which currently account for the majority of COVID-19 cases sequenced in New York City, are more transmissible than earlier variants.  See id.  In light of this, the CDC has recommended that school teachers and staff be "vaccinated as soon as possible" because vaccination is "the most critical strategy to help schools safely resume full operations"  and is "the leading public health prevention strategy to end the COVID-19 pandemic."  Id.

Critically, considering that aim, the DOE serves approximately one million students across the City, including students in the communities that have been disproportionately affected by the COVID-19 pandemic and students who are too young to be eligible to be vaccinated.  See Minicucci Decl., Exh. C, at p. 2.  Given this, and the CDC's judgment, DOHMH has determined that a system of vaccination for individuals working in school settings or other DOE buildings will potentially save lives, protect public health, and promote public safety. Id.

On August 23, 2021, Mayor de Blasio and the New York City Commissioner of Health and Mental Hygiene, David A. Chokshi, announced that workforces in DOE buildings would be subject to a "vaccine only" mandate, as described thereafter in the COH Order.  See Minicucci Decl. Exhs. B and C.  Under this policy, by September 27, 2021, DOE employees must submit proof that they are fully vaccinated, or have received a single dose vaccine or the second dose of a two-dose vaccine, or received the first dose of a two-dose vaccine, with the additional requirement to provide proof of the second dose thereafter.  Id.

**September 10, 2021 Impact Arbitration Decision**

On September 1, 2021, the United Federation of Teachers filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") over the impact of the COH Order.  See Minicucci Decl., Exh. D (September 10, 2021 Arbitration Award Decision in *Board of Education of the City School District of the City of New York and the United Federation of Teachers, Local 2, AFT, AFL-CIO* (hereafter "Impact Arbitration Decision"), at 4.  PERB appointed an arbitrator and several days of discussions were held.  Id.  On September 10, 2021, the arbitrator issued a decision, which establishes a process for exemptions, accommodation requests, and the appeals process for teachers subject to the DOE Vaccination Mandate. Id. at 6-13.

The process established by the Impact Arbitration Decision applies to medical and religious exemptions as well as accommodations for those who, having received a full course of vaccination, remain unable to mount an immune response.  See Minicucci Decl., Exh. D at 6-13. It also sets forth that employees who have not requested an exemption, or whose request was denied, may be placed on leave without pay by the DOE starting September 28, 2021[4].  See id. at 13.  While on leave without pay, employees will continue to be eligible for health insurance and will be prohibited from engaging in gainful employment.  Id. at 15. An employee who submits proof of vaccination before November 30, 2021, will be eligible to return to their school within a week of submitting their documentation to the DOE.  Id. At 14.

The decision also sets forth a process for separation from employment or extension  of leave without pay. See Minicucci Decl. Exh. D at 14. DOE employees covered by the Impact Arbitration Decision who have not complied with the DOE Vaccination Mandated by October 29, 2021 can opt to be separated from employment and continue to be eligible for health

---

[4] Pursuant to the DOHMH order dated September 28, 2021 the Vaccination Mandate was delayed until October 1, 2021 at 5 p.m.

insurance through September 5, 2022, unless they are eligible for health insurance from another source. Id. at 16. The employee can also opt to have his or her leave without pay extended to September 5, 2022, and maintain health coverage. Id. at 17. To the extent that those employees who have chosen to extent their leave without pay do not comply with the DOE vaccination mandate by the end of the period they will be deemed to have voluntarily resigned. Id. On December 1, 2021, DOE will unilaterally separate employees who remain out of compliance with the DOE Vaccination Mandate and have not applied for either extended leave or separation. Id. Doe will pursue separate of those employees pursuant to the governing collective bargaining agreements.

**Previous Litigation**

This is not the first legal challenge to the legality of the COH Order brought by DOE teachers and paraprofessionals.   In two other cases--Maniscalco v. N.Y. City Dept. of Educ., No.  21-cv-5055  (E.D.N.Y.)  and The New York City Municipal Labor Committee ("MLC"), et al. v. The City of New York, et al., Index No. 158368/2021 (N.Y. Sup., N.Y. Cnty.), DOE employees, either directly or through their union, have alleged that the COH Order was unconstitutional. In both cases, the Courts disagreed and denied plaintiffs' applications.

Specifically, in Maniscalco, by Memorandum Decision and Order dated September 23, 2021, Judge Brian M. Cogan denied plaintiffs' motion for a preliminary injunction. See 2021 U.S. Dist. LEXIS 184971, at *8. Relying on Jacobson v. Massachusetts, 197 U.S. 11, 26-27 (1905), in which, as stated by Judge Cogan, "the Supreme Court held that a vaccine mandate enacted by state of Massachusetts without any exceptions for adults – **including for medical or religious reasons** – was constitutional, and not a deprivation of any right secured by the U.S. Constitution," 2021 LEXIS 184971, at *8 (emphasis added), Judge

Cogan held that plaintiffs were unlikely to succeed on the merits.  Judge Cogan concluded that whereas "[r]equiring that DOE employees take a dose of ivermectin as a condition of employment might qualify as 'a plain, palpable invasion' of [plaintiff's substantive due process] rights, not having any real relation to the public health crisis, . . . mandating a vaccine approved by the FDA does not." Id. Judge Cogan also found for the City on the balance of equities and public interest elements of the preliminary injunction standard. Id. at *9-11.  On September 22, 2021, the Court in the MLC case similarly denied petitioner's application for an Order to Show Cause seeking to have the COH Order enjoined, and ultimately dismissed the petition on September 29.  See NYCEF Dkt. No. 38.

Plaintiffs in Maniscalco appealed Judge Cogan's decision the same day.  Initially, on September 24, 2021, the Second Circuit entered a temporary injunction pending review by a three-judge panel.  See 21-cv-5055 at Dkt. No. 18.  However, on September 27, 2021, the three-judge panel dissolved the September 24 Order and denied the motion for an injunction pending appeal.  Id. At Dkt. No. 19; see also USCA # 21-2343.  The plaintiffs then appealed to the Supreme Court for further review on September 30, 2021, and the Supreme Court again denied their application.  See Supreme Crt. Dkt. No. 21A50.

---

## THE COURT'S OCTOBER 4, 2021 ORDER

The Court's October 4, 2021 Order stated that "the parties should address when, if, and how Plaintiffs' employment with the Department of Education could be terminated under the relevant orders and agreements if Plaintiffs are not able to secure an exemption to the vaccination mandate."  As such, Defendants address these issues in advance of turning to the substance of plaintiffs' motion.

Arbitrator Martin Scheinman set forth the following process for members of the United Federation of Teachers ("UFT") (September 10, 2021) and members of the Counsel of Supervisors and Administrators ("CSA") (September 15, 2021) to apply for medical and religious exemptions from the vaccine mandate.  See Minicucci Decl., Exh. D at 6-13.  It also sets forth that employees who have not requested an exemption, or whose request was denied, may be placed on leave without pay by the DOE starting September 28, 2021.  See id. at 13.  On September 24, 2021 the Second Circuit Court of Appeals granted a temporary injunction, postponing the implementation of the September 15, 2021 COH Order. See Minicucci Decl., Exh. B. On September 27 that order was dissolved, resulting in the DOHMH issuing a further order dated September 28, 2021 postponing the deadline for DOE employees to show proof of vaccination to October 1, 2021 at 5 p.m.. See Minicucci Decl., Exh. C.

Starting on October 4, 2021 employees who did not submit proof of vaccination and did not have a pending request for an reasonable religious or medical accommodation will be placed on leave without pay. Exh. D at 16. While on leave without pay, employees will continue to be eligible for health insurance and will be prohibited from engaging in gainful employment. Id. at 15. An employee who submits proof of vaccination before November 30, 2021, will be eligible to return to their school within a week of submitting their documentation to the DOE. Id. at 14.

DOE employees who have not complied with the vaccination mandate by October 29, 2021 can choose to be separated from employment and continue to receive their health insurance through September 5, 2022, or they can opt to have their leave without pay extended through September 5, 2022 and continue to maintain their health insurance. Id. at 17.  If the

employees opted for the leave without pay option do not comply with the vaccination mandate by September 5, 2022, they will be deemed to have voluntarily resigned from their positions. Id.

Under the arbitration decision, starting December 1, 2021, the DOE can move to unilaterally separate employees who have not applied for leave or separation under the framework set forth by the arbitrator. Id. So far, none of the Plaintiffs have indicated whether they have applied for either of the leave without pay options. See Plaintiffs' Declarations ECF Dkt 20-28. According to their declarations, Plaintiffs have applied for either medical and religious exemptions, many have applied for both. Plaintiffs Block, Clark, Chu, Dillion, Gladding, Nwaifejokwu have had their requests for religious accommodations and appeals denied. See ECF. Dkt. 22, 23, 24, 25, 26, and 28. Should these Plaintiffs decline to get vaccinated, they will have to apply for one of the aforementioned leaves without pay or risk dismissal by the DOE on December 1, 2021. Of note, some of the Plaintiffs claim they are also eligible for medical exemptions but either have not submitted they required documentation to the DOE (Plaintiff Chu) or have refused to receive the required test (Plaintiff Clark). See ECF. Dkt. 22 and 25. The remaining Plaintiffs, Castro and Kane, are awaiting the decisions on their appeals, and to the extent those are denied, then, they too will have to apply for one of the leaves without pay or face dismissal starting December 1, 2021.

As set forth in the Declaration of Vicki Bernstein, DOE's Chief Human Capital Officer, dated October 4, 2021, plaintiffs have grossly inflated both the overall number of DOE employees not in compliance with the vaccination mandate, as well as the impact on their respective schools, for those plaintiffs who are teachers, where only a handful of teachers have yet to meet the mandate. See Bernstein Decl. annexed hereto as Exhibit J.

## ARGUMENT

In order to justify a preliminary injunction, plaintiffs must demonstrate: 1) irreparable harm absent injunctive relief; 2) a likelihood of success on the merits; 3) the balance of equities tips decidedly in their favor; and 4) that the public interest weighs in favor of granting an injunction.   See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24-25 (2008); Almontaser v. N.Y. City Dep't of Educ., 519 F.3d 505, 508 (2d Cir. 2008).   An injunction is unwarranted because plaintiffs cannot demonstrate any of these requirements.

### A.    PLAINTIFFS CANNOT SHOW IRREPARABLE HARM

"[I]rreparable harm is the 'single most important prerequisite for the issuance of a preliminary injunction.'"  Impax Media Inc. v. Northeast Adver. Corp., No. 17 Civ. 8272, 2018 U.S. Dist. LEXIS 4940 at *10 (S.D.N.Y. Jan. 10, 2018) (quoting Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009).  In making a showing of irreparable harm, plaintiffs must demonstrate that there is a threat of actual injury for which available legal remedies are inadequate. See Score, Inc. v. Cap Cities/ABC, Inc., 724 F. Supp. 194, 198 (S.D.N.Y. 1989).   In addition, an irreparable injury is one "for which a monetary award cannot be adequate compensation."  Dexter 345 Inc. v. Cuomo, 663 F.3d 59, 63 (2d Cir. 2011).

In their Memorandum, Plaintiffs briefly and summarily contend that any time a party alleges that constitutional right may be violated, a preliminary injunction must follow.  Not so.  Plaintiffs are evidently under the misimpression that they can satisfy their burden of showing that they will suffer irreparable harm by their mere allegations, without offering any evidence, that defendants actually violated their First Amendment rights by enforcing COH Order.  This is simply not the law.

To be sure, the Supreme Court has observed that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod

v. Burns, 427 U.S. 347, 373 (1976).   However, "[e]ven when a complaint alleges First Amendment injuries, . . . irreparable harm is not presumed and must still be shown."  Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir. 2008).  Plaintiffs are still required to present evidence that they, in fact, have sustained a loss of their First Amendment freedoms, and will suffer another loss of such freedoms if the injunction is not granted.  A showing of theoretical or conjectural harm is insufficient. See Latino Officers Association v. Safir, 170 F.3d 167, 171 (2d Cir. 1999).

Thus, plaintiffs' ability to establish irreparable harm turns on whether they can demonstrate that defendants have impaired their Free Exercise rights by implementing the COH Order.  In other words, "[b]ecause the violation of a constitutional right is the irreparable harm asserted here, the two prongs of the preliminary injunction threshold merge into one: in order to show irreparable injury, plaintiff must show a likelihood of success on the merits."  Turley v. Giuliani, 86 F. Supp. 2d 291, 295 (S.D.N.Y. 2000).

## B.   PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS

### 1.   Plaintiffs Are Unlikely to Succeed on their First Amendment Claims

#### a.   Free Exercise

"In order to prevail on a Free Exercise Clause claim, a plaintiff generally must establish that 'the object of [the challenged] law is to infringe upon or restrict practices because of their religious motivation,' or that its 'purpose . . . is the suppression of religion or religious conduct.'" Okwedy v. Molinari, 69 Fed. Appx. 482, 484 (2d Cir. 2003) (citing Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 533 (1993)).  "It is not a violation of the Free Exercise Clause to enforce a generally applicable rule, policy or statute that burdens a religious practice as long as the government can 'demonstrate a rational basis for [the] enforcement' of the rule, policy or statute, and the burden is only an incidental effect, rather than the object, of the law."  Id.; see also Employment Div. v. Smith, 494 U.S. 872, 879 (1990) ("the

right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)")(internal quotations omitted).  As such, "[w]here the government seeks to enforce a law that is neutral and of general applicability . . . it need only demonstrate a rational basis for its enforcement."  Fifth Ave. Presbyterian Church v. City of New York, 293 F.3d 570, 574 (2d Cir. 2002); see also Smith, 494 at 879.

Crucial to the instant case is the Supreme Court's holding that when the government acts as an employer, it has more leeway in regulating its employees and curtailing their rights than it does when it acts as a sovereign.  See Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 598-600 (2008) ("[T]here is a crucial difference, with respect to constitutional analysis, between the government exercising 'the power to regulate or license, as lawmaker,' and the government acting 'as proprietor, to manage [its] internal operation.'")(citations omitted).

To begin with, the gravamen of plaintiffs' complaint is that certain – but not all – plaintiffs have been denied their preferred religious accommodation, namely to allow unvaccinated DOE teachers and paraprofessionals, to have direct, repeated and lengthy contact, within a school setting, with students who are themselves unable or ineligible to be vaccinated, and that this denial constitutes a First Amendment violation.  This logic is entirely inconsistent with Free Exercise jurisprudence.

An employee is not entitled to the accommodation of his or her choice.  Cosme v. Henderson, 287 F.3d 152, 158 (2d Cir. 2002).  The Second Circuit holds that "when an employee has a genuine religious practice that conflicts with a requirement of employment, his or her employer, once notified, must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship."  Id.  Further, courts have declined to find an employer's "failure to accommodate" an employee's religious activity,

without more, to constitutes a violation of the Free Exercise clause.  See Smith, 494 U.S. at 879-880.

In any event, the policy at issue here, namely the COH Order, applies equally to all DOE employees.  As such, the relevant inquiry is whether there is a rational basis for the enforcement of the COH Order.   As explained above, the CDC has recommended that school teachers and staff be "vaccinated as soon as possible" because vaccination is "the most critical strategy to help schools safely resume full operations" and is "the leading public health prevention strategy to end the COVID-19 pandemic."  See Minicucci Decl., Exhs, C, at p. 2. Indeed, even plaintiffs' own expert agrees that "[t]hose who choose not to get vaccinated may be making a poor health decision . . ." See ECF Dkt. No. 19 at P. 8.  Thus, the COH Order requires DOE employees to submit proof that they are fully vaccinated, or have received a single dose vaccine or the second dose of a two-dose vaccine, or received the first dose of a two-dose vaccine, with the additional requirement to provide proof of the second dose thereafter.  Id. Notably, the COH Order itself allows for both religious and medical accommodations.  Id.

Despite this, plaintiffs argue that the COH Order is not "neutral law" and therefore strict scrutiny applies.  Plaintiffs are incorrect.  "[W]here the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason." Smith, 494 U.S. at 884.  Accordingly, "[a] law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny."  Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 532 (1993).  Under strict judicial scrutiny, a law is unconstitutional unless the government can show that it is necessary to achieve a compelling interest.  See Miller v. Johnson, 515 U.S. 900, 920 (1995).  However, as noted above, the COH Order is applicable to all DOE employees and is

facially neutral.  As such, the obligation to comply with these standards does not invoke the strict scrutiny standard.  See Fifth Ave. Presbyterian Church, 293 F.3d at 574.

Plaintiffs' argument that the COH Order is not facially neutral because it "eliminates the right to opt out of vaccination," see Plaintiffs' Memorandum at 18, is factually incorrect.  The COH Order specifically states that medical and religious accommodations are permitted.  Further, a policy is facially neutral unless it is "specifically directed at [a] religious practice."  See Employment Div., Dep't of Human Resources of Oregon v. Smith, 494 U.S. 872, 878 (1990).  The COH Order is facially neutral because it makes no mention of religious practices.  Indeed, "prohibiting the exercise of religion . . . is not the object of [COH ORder] but [is] merely the incidental effect of a generally applicable and otherwise valid provision."  Smith, 494 U.S. 878.  Thus, strict scrutiny does not apply.

Next, plaintiffs contend that the COH Order is not of "generally applicability" because it does not apply to students.  This argument too misses the mark.  The COH Order is of generally applicability because it applies equally to all DOE employees.  The Supreme Court jurisprudence permits the government – when it acts as an employer – more leeway in regulating and curtailing the rights of employees than when implementing policies that apply to non-employees.  See Engquist, 553 U.S. at 598-600.  Thus, the COH Order may be limited to just DOE employees.

Finally, plaintiffs also appear to argue that strict scrutiny applies because the COH Order allows non-DOE employees to opt out of the vaccine mandate through weekly COVID-19 testing.  However, in the context of constitutional claims arising from public employment, plaintiffs are required to demonstrate that any alleged treatment that is different from other similarly situated employees was based on membership in a specific class that has been granted legal protection.  See Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 605 (2008); see also

Analytical Diagnostic Lab, Inc. v. Kusel, 626 F.3d 135, 140 (2d Cir. 2010) ("The Supreme Court's decision in Engquist ... eliminated class-of-one claims for government employees."); Staskowski v. Cty. of Nassau, 410 F. App'x 420 (2d Cir. 2011) (summary order); Conyers v. Rossides, 558 F.3d 137, 151–52 (2d Cir. 2009); Massi v. Flynn, 353 Fed. Appx. 658, 660 (2d Cir. 2009) (summary order); Porr v. Daman, 299 Fed. Appx. 84, 86 (2d Cir. 2008).

In reading this requirement into the equal protection clause, the Supreme Court specifically ruled out equal protection claims challenging different applications of discretion to different employees because permitting such would serve to constitutionalize all decisions by a public employer concerning its employees:

> [If] plaintiffs need not claim discrimination on the basis of membership in some class or group, but rather may argue only that they were treated by their employers worse than other employees similarly situated, any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for a federal constitutional claim.

Engquist, 553 U.S. 607-608.  Plaintiffs here are attempting to do *precisely* what the Supreme Court said they cannot.  They are attempting to constitutionalize the discretionary decisions of the executive branch.

Nevertheless, even applying the rational basis test to plaintiffs' argument, their claim would nonetheless fail because the City has articulated a rational basis for treating plaintiffs differently than other similarly-situated City employees.  Unlike non-DOE City employees, inarguably, DOE employees maintain close indoor contact with children, in congregate settings, and many of those children are presently ineligible or unable themselves to get vaccinated.  Moreover, it is improper to compare plaintiffs to City employees who do not work in the DOE because of categorical differences that exist between the positions.  Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005) (explaining that to satisfy the "similarly situated"

element of an equal protection claim, "the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high").

Accordingly, plaintiffs' Free Exercise Claim will not succeed on the merits.

### b.  Establishment Clause

To survive an Establishment Clause challenge, Defendants' conduct in issuing the COH Order: (1) must have a secular purpose; (2) must neither advance nor inhibit religion as its primary effect, and (3) must not foster an excessive government entanglement with religions.  Lemon v. Kurtzman, 403 U.S. 602, 612-13, 91 S. Ct. 2105, 29 L. Ed. 2d 745 (1971).  Here, defendants can demonstrate all three.  First, it is clear that the purpose of the COH Order is secular in nature.  Second, as indicated above, the COH Order does not have the primary effect of advancing or inhibiting religion.  Indeed, the COH Order permits for religious accommodation and therefore it cannot be said to inhibit the practice of any religion.  Finally, the COH Order does not foster government entanglement with religions in that it allows for religious accommodations without reference to or preference for one religion over another.  In so doing, the COH Order does not favor one religion over another nor does it accommodate the needs of some religions without extending accommodations to other religions.  For these reasons, plaintiffs' Establishment Clause claim will likely not succeed

### 2.     Plaintiffs Have Not Stated a Substantive Due Process Claim

Courts have ruled time and again that compulsory vaccination is constitutional.  See Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11 (1905); see also Phillips v. City of N.Y., 775 F.3d 538, 542-43 (2d Cir. 2015); V.D. v. New York, 403 F. Supp. 3d 76 (E.D.N.Y. 2019) (challenges to vaccination mandates for children to attend school upheld).  Here, in connection with the DOE Vaccination Mandate, plaintiffs, via the Impact Arbitration Decision, are receiving more due process than is required by the Constitution, and, as a result, their

substantive due process claim is entirely unavailing, and would be subject to dismissal upon motion, if not *sua sponte*.  See Marino v. Town of Branford, No. 17-CV-1828 (MPS), 2018 U.S. Dist. LEXIS 17285, at *45 (D. Conn. Feb. 2, 2018) (dismissing claim where the plaintiff did "not include any allegations or present any evidence suggesting that his medical certificate or license would be revoked or his employment terminated without the full due process hearing he requests").

Indeed, the COH Order has been found to pass constitutional muster in connection with multiple substantive due process challenges.  In two other cases--Maniscalco v. N.Y. City Dept. of Educ., No. 21-cv-5055 (E.D.N.Y.) and The New York City Municipal Labor Committee ("MLC"), et al. v. The City of New York, et al., Index No. 158368/2021 (N.Y. Sup., N.Y. Cnty.), DOE employees, either directly or through their union, have alleged that the COH Order was unconstitutional.  In both cases, the Courts disagreed and denied plaintiffs' applications.

Specifically, in Maniscalco, by Memorandum Decision and Order dated September 23, 2021, Judge Brian M. Cogan denied plaintiffs' motion for a preliminary injunction.  See 2021 U.S. Dist. LEXIS 184971, at *8.  Relying on Jacobson v. Massachusetts, 197 U.S. 11, 26-27 (1905), in which, as stated by Judge Cogan, "the Supreme Court held that a vaccine mandate enacted by state of Massachusetts without any exceptions for adults – including for medical or religious reasons – was constitutional, and not a deprivation of any right secured by the U.S. Constitution," 2021 Dist. LEXIS 184971, at *8 (emphasis added), Judge Cogan held that plaintiffs were unlikely to succeed on the merits.   Judge Cogan concluded that whereas "[r]equiring that DOE employees take a dose of ivermectin as a condition of employment might qualify as 'a plain, palpable invasion' of [plaintiff's substantive due process] rights, not having any real relation to the public health crisis, . . . mandating a vaccine approved by the FDA does not."  Id.  Judge Cogan also found for the City on the balance of equities and public interest

elements of the preliminary injunction standard.  Id. at *9-11.  A few days later, on September

29, 2021, the Court in the MLC case similarly denied petitioner's application for an Order to

Show Cause seeking to have the COH Order enjoined.  See Dkt. No. 38.

Plaintiffs in Maniscalco appealed Judge Cogan's decision the same day.  Initially,

on September 24, 2021, the Second Circuit entered a temporary injunction pending review by a

three-judge panel.  See 21-cv-5055 at Dkt. No. 18.  However, on September 27, 2021, the three-

judge panel dissolved the September 24 Order and denied the motion for an injunction pending

appeal.  Id. At Dkt. No. 19; see also USCA # 21-2343.  The plaintiffs then appealed to the

Supreme Court for further review on September 30, 2021, and **the Supreme Court again

denied their application.**  See Supreme Crt. Dkt. No. 21A50.

Thus, the constitutionality of the COH Order – as it pertains to plaintiffs'

substantive due process claims – has already been litigated and decided.  Both the Second Circuit

and the Supreme Court has determined that the COH Order does not implicate any substantive

due process rights so as to warrant the issuance of a preliminary injunction.  As such, plaintiffs

will not succeed on this claim.[5]

---

[5] While not specifically argued in Plaintiff's memorandum, any argument that Plaintiffs were
somehow denied accommodations rights under Title VII or the ADA equally fails because
permitting unvaccinated teachers to work in DOE schools presents a direct threat that need not
be accommodated. Plaintiffs assert that they pose no threat to unvaccinated students.  That claim
is flatly contradicted by the CDC's recommendation that school teachers and staff be vaccinated
and, moreover, by the Equal Employment Opportunity Commission's determination that the
COVID-19 pandemic meets the "direct threat" standard.[5]  It cannot reasonably be disputed that,
during the pandemic, unvaccinated teachers within indoor and congregant settings pose a direct
threat to unvaccinated children.  Ameliorating the risk to children, not yet eligible for
vaccination, from exposure to unvaccinated adults is based on sound medical science, reasoned
governmental policy, and vital public interest.  Indeed, employers may impose a vaccination
requirement to ensure employees do not pose a "direct threat" to the health or safety of
individuals in the workplace. A direct threat is one that poses a "significant risk of substantial
harm to the health or safety of the individual or others that cannot be eliminated or reduced by
reasonable accommodation."  See 29 CFR 1630.2(r).  In determining whether a particular
employment situation presents a "direct threat," the employer must evaluate "the individual's
present ability to safely perform the essential functions of the job' as well as "(1) the duration of

### C.      THE BALANCE OF EQUITIES DOES NOT TIP IN FAVOR OF PLAINTIFFS

Even if plaintiffs could prove irreparable harm and demonstrate a likelihood of success on the merits – which they cannot – they would, nonetheless, be unable to prove that the balance of hardship tips decidedly in their favor.  Trump v. Deutsche Bank AG, 943 F.3d 627, 640 (2d Cir. 2019), rev'd on other grounds, __U.S.__, 140 S.Ct. 2019 (2020).   To balance the equities in each case, courts must balance the competing claims of injury on each party of either granting or withholding the requested relief.  Winter v. NRDC, Inc., 555 U.S. 7, at 24 (2008) (citing Amoco Production Co., 480 U.S. 531, 542 (1987)). In exercising their sound discretion, courts should pay particular regard to the public consequences in employing the extraordinary remedy of injunction.  Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982).

Here, the balance of equities clearly tips in the favor of defendants. In the midst of a public health crisis, in which 659,000 people have lost their lives in the United States alone, with 34,000 of those deaths in New York City, and countless others have become severely ill, plaintiffs have made the personal decision to decline a vaccination that has full FDA approval.

Against this, defendants present the compelling – indeed, overwhelming – public interest in limiting the spread of COVID-19 in schools for the safety of children, other school employees, and the community at large.  Moreover, mandating vaccination for pedagogues supports, if not ensures, that in-person schooling may continue, uninterrupted, for as many children as possible. This is a critical juncture for requiring vaccination against COVID-19.  In the United States, in localities where the school year began six weeks ago, in early August, we

---

the risk; (2) the nature and severity of the potential harm; (3) the likelihood that the potential harm will occur; and (4) the imminence of the potential harm."[5]  The imposition of a vaccination requirement to ensure DOE employees do not pose a "direct threat" to the health or safety of children in schools is plainly met here.[5]

have now seen distressing and corresponding increases in pediatric COVID-19 cases in states with low vaccination rates.[6] The American Academy of Pediatrics reported that, in the two weeks preceding September 9, 2021, the number of children who tested positive for COVID-19 has increased "exponentially," with nearly 500,000 pediatric cases being reported.[7]

A reckless assertion exists at the heart of plaintiffs' application.  Plaintiffs seek to upend an already implemented mandate that DOE employees be vaccinated against COVID-19. They contend that they, and other unvaccinated school teachers, should be permitted to continue to teach in person, with a largely unvaccinated student population.  They claim – callously – that "a few more weeks … will not hurt anyone."  That is horrific.  A pandemic continues to exist. No less than the U.S. Centers for Disease Control has recommended that school teachers and staff be "vaccinated as soon as possible" because vaccination is "the most critical strategy to help schools safely resume full operations" and is "the leading public health prevention strategy to end the COVID-19 pandemic."  Against this, plaintiffs press their own selected science and supposed experts.  But "where good faith arguments can be made on both sides of the many issues raised by the pandemic," the decision is for the municipality, "not the courts, to balance the competing public health and business interests."  Columbus Ale House, Inc. v. Cuomo, 495 F. Supp. 3d 88, 95 (E.D.N.Y. 2020).

Here, any purported abstract harm to plaintiffs that could result from receiving the COVID-19 vaccine, or refusing to get the vaccine despite not having an exemption, does not

---

[6]  See Minicucci Decl. Exhs. F and G, also available at: https://www.wsj.com/articles/child-covid-19-cases-rise-in-states-where-schools-opened-earliest-11630834201                               and https://www.usnews.com/news/health-news/articles/2021-09-03/covid-cases-rise-sharply-among-kids-as-school-year-starts, last viewed on September 14, 2021.

[7]  See Minicucci Decl. Exh. H, also available at: https://www.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/children-and-covid-19-state-level-data-report/, lasted viewed on September 14, 2021.

*decidedly* outweigh the defendants' interest in limiting the spread of COVID-19 to unvaccinated children and their families.   See Trump, 943 F.3d at 674 ("Even if the balance of these hardships/equities tips in favor of Appellants, which is debatable, it does not do so 'decidedly'") (citations omitted).   Therefore, plaintiffs' motion must be denied.

### D.       AN INJUNCTION IS NOT IN THE PUBLIC INTEREST

Courts must also consider whether the granting of the requested relief contravenes the public interest.   Brown & Williamson Tobacco Corp. v. Engman, 527 F.2d 1115 (2d Cir. 1975).   The Supreme Court has recognized that stemming the spread of COVID-19 is a compelling public interest. Roman Catholic Diocese v. Cuomo, 141 S. Ct. 63, 67 (2020).   The CDC has also recommended that school teachers and staff be "vaccinated as soon as possible" because vaccination is "the most critical strategy to help schools safely resume] full operations... [and] is the leading public health prevention strategy to end the COVID-19 pandemic."   See Minicucci Exh. C at p. 1.   Nevertheless, plaintiffs ask this court to grant the injunction to preserve their private interest in continuing to receive salary and benefits from the DOE and choosing not to be vaccinated, while ignoring the public interest in mandating vaccination against COVID-19 to reduce its spread. Plaintiffs thus elect to place their own salary, benefits, and personal views about vaccination in the public interest and, therefore, deserving of protection.   Such vainglorious prioritization maliciously ignores a central tenet of the COH Order and the DOE Vaccination Mandate.   It is the health and safety of the children who will be in teachers' care, and the broader goals of stemming the illness and death that continue to result from the spread of COVID-19, that is in the public interest.   If granted, an injunction would altogether vitiate that public interest, by permitting unvaccinated teachers and school staff to possibly endanger, through the unchecked spread of COVID-19, the very children they are

charged with educating and further promote the spread of a particularly virulent strain of the virus.

Teachers and paraprofessionals like plaintiffs who decline to be vaccinated are afforded the framework set forth in the Impact Arbitration Decision.  DOE students, and their families, deserve a learning environment as safe from the harms of COVID-19 as can possibly be provided. There can be no question as to the public interest that should, and indeed must, be safeguarded here.

## **CONCLUSION**

For the foregoing reasons, plaintiffs' motion for a preliminary injunction should be denied.

Dated:      New York, New York
            October 4, 2021

                        GEORGIA M. PESTANA
                        Corporation Counsel of the
                            City of New York
                        Attorney for Defendants
                        100 Church Street
                        New York, New York 10007
                        212-356-4074
                        lminicuc@law.nyc.gov


                  By:      _____/s/_____
                        Amanda C. Croushore / Lora Minicucci
                        Assistant Corporation Counsels