21-2678-cv; 21-2711-cv
*Kane v. de Blasio; Keil v. City of New York*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/28/2021

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2021

(Argued: November 22, 2021     Decided: November 28, 2021)

No. 21-2678

———————————————————

MICHAEL KANE, WILLIAM CASTRO, MARGARET CHU, HEATHER CLARK, STEPHANIE
DI CAPUA, ROBERT GLADDING, NWAKAEGO NWAIFEJOKWU, INGRID ROMERO,
TRINIDAD SMITH, AMARYLLIS RUIZ-TORO,

*Plaintiffs-Appellants,*

-v.-

BILL DE BLASIO, in his official capacity as Mayor of the City of New York, DAVID
CHOKSHI, in his official capacity of Health Commissioner of the City of New
York, NEW YORK CITY DEPARTMENT OF EDUCATION,

*Defendants-Appellees.*

———————————————————

No. 21-2711

MATTHEW KEIL, JOHN DE LUCA, SASHA DELGADO, DENNIS STRK, SARAH BUZAGLO,

*Plaintiffs-Appellants,*

-v.-

CERTIFIED COPY ISSUED ON 11/28/2021

THE CITY OF NEW YORK, BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF NEW YORK, DAVID CHOKSHI, in his official capacity of Health Commissioner of the City of New York, MEISHA PORTER, in her official capacity as Chancellor of the New York City Department of Education,

*Defendants-Appellees.*

———————————————————

Before:     LIVINGSTON, *Chief Judge*, KEARSE, and LEE, *Circuit Judges*.

In these two cases on appeal, fifteen teachers and school administrators challenge the denial of motions to preliminarily enjoin the enforcement of an order issued by the New York City Commissioner of Health and Mental Hygiene mandating that individuals who work in New York City schools be vaccinated against the COVID-19 virus ("Vaccine Mandate"). Plaintiffs-Appellants challenge the Vaccine Mandate on religious-freedom grounds and principally contend (1) that it is facially infirm under the First Amendment; and (2) that the procedures by which their religious accommodation claims were considered are unconstitutional as applied to them. We reject the Plaintiffs-Appellants' facial challenge but agree that they have established an entitlement to preliminary relief on their as-applied claim. Accordingly, the judgment of the district court is **VACATED** and the case **REMANDED** for further proceedings. Interim relief

ordered by the motions panel pending appeal is continued, with the consent of Defendant-Appellee the City of New York.

FOR PLAINTIFFS-APPELLANTS:      In No. 21-2678: SUJATA SIDHU GIBSON, The Gibson Law Firm, Ithaca, NY; In No. 21-2711: BARRY BLACK, Sarah Elizabeth Child, and Jonathan R. Nelson, Nelson Madden Black LLP, New York, NY.

FOR DEFENDANTS-APPELLEES:      SUSAN PAULSON, Assistant Corporation Counsel, Richard Paul Dearing, Assistant Corporation Counsel, and Devin Slack, New York City Law Department, New York, NY.

PER CURIAM:

These two cases on appeal, which we heard in tandem, concern the denial of preliminary injunctive relief in connection with an order issued by the New York City Commissioner of Health and Mental Hygiene (the "Commissioner"), mandating that individuals who work in New York City schools be vaccinated against the COVID-19 virus (the "Vaccine Mandate" or "Mandate"). Plaintiffs-Appellants ("Plaintiffs") are fifteen teachers and school administrators who object to receiving the COVID-19 vaccine on religious grounds. Plaintiffs sought, but were denied, religious accommodations. They have sued the City of New York (the "City"), certain officials, and the New York City Department of Education

(collectively, the "Defendants"), challenging both the Vaccine Mandate on its face and the process by which their requests for religious accommodations were denied.   The United States District Court for the Southern District of New York (Caproni, *J.*) denied motions for preliminary injunctions in both cases, but a motions panel of this Court, with the consent of the City, thereafter granted Plaintiffs substantial provisional relief pending appeal.

For the reasons set forth herein, we conclude that the Vaccine Mandate does not violate the First Amendment on its face, and we thus agree with the district court to this extent.   We nevertheless vacate the district court's orders of October 12 and 28, 2021, denying preliminary relief, and we concur with and continue the interim relief granted by the motions panel as to these fifteen individuals.   For the present, Plaintiffs have established their entitlement to preliminary relief on the narrow ground that the procedures employed to assess their religious accommodation claims were likely constitutionally infirm as applied to them. We remand for further proceedings consistent with this opinion.

## BACKGROUND

## I.    Factual Background

On August 24, 2021, the Commissioner issued an order requiring generally that Department of Education ("DOE") and/or City employees or contractors who

work in DOE schools or DOE buildings be vaccinated against the COVID-19 virus.

The Vaccine Mandate provides, in pertinent part, as follows:

> 1. No later than September 27, 2021 or prior to beginning employment, all DOE staff must provide proof to the DOE that:
>
> a. they have been fully vaccinated; or
>
> b. they have received a single dose vaccine, even if two weeks have not passed since they received the vaccine; or
>
> c. they have received the first dose of a two-dose vaccine, and they must additionally provide proof that they have received the second dose of that vaccine within 45 days after receipt of the first dose.[1]
>
> …
>
> 5. For the purposes of this Order:
>
> a. "DOE staff" means (i) full or part-time employees of the DOE, and (ii) DOE interns (including student teachers) and volunteers.
>
> b. "Fully vaccinated" means at least two weeks have passed after a person received a single dose of a one-dose series, or the second dose of a two-dose series, of a COVID-19 vaccine approved or authorized for use by the Food and Drug Administration or World Health Organization.
>
> c. "DOE school setting" includes any indoor location, including but not limited to DOE buildings, where instruction is provided to DOE

---

[1] The Vaccine Mandate applies the same requirements to "City employees who work in-person in a DOE school setting or DOE building," "[a]ll staff of contractors of DOE and the City who work in-person in a DOE school setting or DOE building, including individuals who provide services to DOE students," and "[a]ll employees of any school serving students up to grade 12 and any [Universal Pre-Kindergarten-3 or -4] program that is located in a DOE building who work in-person, and all contractors hired by such schools or programs to work in-person in a DOE building."

students in public school kindergarten through grade 12, including residences of pupils receiving home instruction and places where care for children is provided through DOE's [Living for the Young Family Through Education] program.

d. "Staff of contractors of DOE and the City" means a full or part-time employee, intern or volunteer of a contractor of DOE or another City agency who works in-person in a DOE school setting or other DOE building, and includes individuals working as independent contractors.

e. "Works in-person" means an individual spends any portion of their work time physically present in a DOE school setting or other DOE building.  It does not include individuals who enter a DOE school setting or other DOE location only to deliver or pickup items, unless the individual is otherwise subject to this Order.  It also does not include individuals present in DOE school settings or DOE buildings to make repairs at times when students are not present in the building, unless the individual is otherwise subject to this Order.

Joint App'x 177–79.[2]   DOE serves approximately one million students across the City, and the order was consistent with guidance from the U.S. Centers for Disease Control ("CDC") that school teachers and staff should be vaccinated as soon as possible so as to permit schools to resume normal operations safely.

On September 1, 2021, the United Federation of Teachers ("UFT") filed a formal objection to the Vaccine Mandate on the ground that it fails to provide any medical or religious accommodations.   After failing to resolve their dispute

---

[2]  The "Joint App'x" is the joint appendix filed by the parties in No. 21-2711.

through mediation, the UFT and the City moved to arbitration.   On September

10, an independent arbitrator (the "Arbitrator") issued an award (the "Arbitration

Award") setting forth a process and standards ("Accommodation Standards") for

determining, as relevant to this appeal, religious accommodations to the Vaccine

Mandate.[3]

The Accommodation Standards allowed employees to request a religious

accommodation by submitting a request that is "documented in writing by a

religious official (e.g., clergy)."   Joint App'x 197.   Requests "shall be denied

where the leader of the religious organization has spoken publicly in favor of the

vaccine, where the documentation is readily available (e.g., from an online source),

or where the objection is personal, political, or philosophical in nature."   *Id.*[4]

---

[3] The Arbitration Award also provides standards for determining medical accommodations to the Vaccine Mandate.   Although Plaintiffs challenged these standards below as well, they did not appeal on these issues.

On September 15, the Arbitrator issued a materially identical award resolving a dispute between the City and the Council of Supervisors and Administrators, a labor union for school administrative personnel.   Joint App'x 209.

[4] The meaning of the second clause—"where the documentation is readily available (e.g., from an online source)"—is obscure.   The parties do not address its meaning in their briefs.   The district court and the *Keil* Defendants seem to have interpreted it as a restriction on an employee's ability to meet the Arbitration Award's requirement that a request be "documented in writing by a religious official (e.g., clergy)."   *See* Joint App'x 60–61.   Under this interpretation, it would be inadequate for an employee to produce "readily available" documentation from a religious official corroborating that employee's religious objections to vaccination.   The employee would

The Accommodation Standards further provide that requests "shall be considered for recognized and established religious organizations (e.g., Christian Scientists)." *Id.*

The Arbitration Award establishes a two-step process for resolving a request for a religious accommodation. First, the DOE renders an "initial determination of eligibility for an exemption or accommodation."[5] Joint App'x 197; Defendants Br. 7. Then, if the employee's request is denied, the employee can appeal the DOE's determination to a panel of arbitrators selected by the Arbitrator. The Arbitration Award states that its procedures are to operate "[a]s

---

instead be required to produce documentation such as, for example, a letter from a religious official the employee knows personally. While the text of this provision is ambiguous in our view, we adopt the district court's interpretation for purposes of this opinion. The parties are free to argue for a different interpretation before the district court on remand.

[5] At times, the parties appear to use the terms "exemption" and "accommodation" interchangeably. As we use those terms, however, exemptions are different from accommodations. The Vaccine Mandate includes *exemptions* for certain objectively defined categories of people, like delivery workers. Those who are exempted from the Mandate are not subject to its terms. By contrast, employees who *are* subject to the Mandate can request accommodations under Title VII and analogous state and city law. *See infra* at 43–44 (discussing Title VII's requirement to provide reasonable accommodations); *see also We The Patriots USA, Inc. v. Hochul*, 2021 WL 5276624, at *1 (2d Cir. Nov. 12, 2021).

an alternative to any statutory reasonable accommodation process."[6]   Joint App'x

194–95.   Employees who are granted an accommodation

> shall be permitted the opportunity to remain on payroll, but in no
> event required/permitted to enter a school building while
> unvaccinated, as long as the vaccine mandate is in effect.   Such
> employees may be assigned to work outside of a school building (e.g.,
> at DOE administrative offices) to perform academic or administrative
> functions as determined by the DOE while the exemption and/or
> accommodation is in place.

*Id.* at 200.

In addition to setting forth a process for granting religious accommodations,

the Arbitration Award scheduled a series of deadlines for employees to comply

with the Vaccine Mandate.   First, it provided that as to any unvaccinated

employee denied an accommodation, the DOE could place the employee on "leave

without pay effective September 28, 2021, or upon denial of appeal, whichever

[was] later, through November 30, 2021."   Joint App'x 201.   "During such leave

---

[6] Elsewhere, it asserts:

> The process set forth, herein, shall constitute the exclusive and complete
> administrative process for the review and determination of requests for
> religious and medical exemptions to the mandatory vaccination policy and
> accommodation requests where the requested accommodation is the
> employee not appear at school.

Joint App'x 201.

without pay," employees "shall continue to be eligible for health insurance" but "are prohibited from engaging in gainful employment." *Id.* at 202.

From September 28 through October 29, any employee who was on leave without pay "due to vaccination status" could opt to separate from the DOE. *Id.* at 204. Employees who elected to separate were eligible for certain benefits but were required to file "a waiver of [their] rights to challenge [their] involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process." *Id.* Then, from November 1 through November 30, any employee on leave without pay due to vaccination status could "alternately opt to extend the leave through September 5, 2022," during which time they would remain eligible for health insurance. *Id.* at 205. To extend their leave, however, the employees were required to execute "a waiver of [their] rights to challenge [their] voluntary resignation, including, but not limited to, through a contractual or statutory disciplinary process." *Id.* "Employees who have not returned by September 5, 2022, shall be deemed to have voluntarily resigned." *Id.* "Beginning December 1, 2021, the DOE shall seek to unilaterally separate employees who have not opted into separation . . . ." *Id.*

On September 15, the Vaccine Mandate was amended to provide: "Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law."[7] Joint App'x 184. The amended Vaccine Mandate also requires "all visitors to a DOE school building" to show proof that they have received at least the first dose of a two-dose vaccine prior to entering any DOE building. *Id.* at 183. The amended Mandate excludes certain groups from the definition of a "visitor," including students, parents (in certain circumstances), deliverymen, repairmen, emergency responders, "[i]ndividuals entering for the purpose of COVID-19 vaccination," "[i]ndividuals who are not eligible to receive a COVID-19 vaccine because of their age," voters, and certain election-related personnel. *Id.* at 184.

## II.   Procedural History

On September 21 and October 27, 2021, Plaintiffs, fifteen DOE teachers or school administrators who sought and were denied religious accommodations

---

[7] We observe that this additional language is superfluous as a legal matter, at least as to religious accommodation under Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e, *et seq.* The Commissioner, a City official, could not override Title VII, a federal law requiring employers to offer reasonable accommodations that do not result in undue hardship on the employer. *See* U.S. CONST. art. VI, cl. 2 (Supremacy Clause). Thus, even under the original Vaccine Mandate, DOE employees were legally entitled to request accommodations.

11

pursuant to the process outlined herein, filed these two lawsuits, *Kane*, 21-cv-7863, and *Keil*, 21-cv-8773. Plaintiffs allege, *inter alia*, the violation of their First Amendment rights. On October 12, the district court denied the *Kane* Plaintiffs' request for a preliminary injunction, ruling principally that Plaintiffs were unlikely to prevail on their claim that the Vaccine Mandate was unconstitutional on its face.[8] On October 28, the district court denied a similar request for a preliminary injunction by the Plaintiffs in *Keil* "[f]or the same reasons discussed in" *Kane* on the ground that the two cases "raise[] many of the same claims . . . ." Joint App'x 8.

On October 25 and 28, 2021, Plaintiffs appealed the district court's denial of their requests for a preliminary injunction and requested an emergency injunction pending appeal. A motions panel heard oral argument on November 10, during which the City conceded that the Accommodation Standards are "constitutionally suspect." The panel then solicited supplemental letter briefing. Each party

---

[8] A district court in this Circuit denied a preliminary injunction in a different case in which different plaintiffs challenged the same Vaccine Mandate on substantive due process and equal protection grounds. *See Maniscalco v. New York City Dep't of Educ.*, 2021 WL 4344267 (E.D.N.Y. Sept. 23, 2021). A different panel of this Court denied an injunction pending appeal, 2021 WL 4437700 (2d Cir. Sept. 27, 2021), and subsequently affirmed the district court's decision, 2021 WL 4814767 (2d Cir. Oct. 15, 2021) (summary order).

attached to its letter brief a proposed order for relief pending appeal.   ECF No. 53 in No. 21-2678, at 5–6; ECF No. 65 in No. 21-2711, at 10–13.

On November 15, 2021, the motions panel issued an order ("Motions Panel Order") largely tracking the City's proposed order and referring the matter to this merits panel.[9]   The Motions Panel Order provides:   "Pending further order by the merits panel . . . Plaintiffs shall receive fresh consideration of their requests for a religious accommodation."   Motions Panel Order ¶ 1.   The Order sets forth a process pursuant to which Plaintiffs' requests will be promptly adjudicated "by a central citywide panel," which will adhere to the standards of, *inter alia*, Title VII of the Civil Rights Act of 1964, rather than "the challenged criteria set forth in . . . the arbitration award . . . ."   *Id.* ¶ 2.   The Motions Panel Order also stays the deadline for Plaintiffs to opt into the extended leave program with any required waiver.   *Id.* ¶ 4.   It also provides that if a plaintiff's request for religious accommodation is granted by the citywide panel, the plaintiff will receive backpay running from the date the plaintiff was placed on leave without pay.   *Id.* ¶ 5.

We heard oral argument on November 22, 2021 and now vacate the district court's decision denying Plaintiffs preliminary injunctive relief.   We leave in

---

[9] The Motions Panel Order is set forth in an Appendix to this Opinion.

place all interim relief ordered by the Motions Panel, thus enjoining the City from terminating Plaintiffs or requiring them to opt into the extended leave program while they are afforded the opportunity to have their religious accommodation requests reconsidered.   We remand the case for further proceedings consistent with this opinion.

## DISCUSSION

"When a preliminary injunction will affect government action taken in the public interest pursuant to a statute or regulatory scheme, the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction."   *Agudath Isr. of Am. v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020); *see also We The Patriots USA, Inc. v. Hochul*, No. 21-2179, 2021 WL 5121983, at \*20 (2d Cir. Nov. 4, 2021) ("When the government is a party to the suit, our inquiries into the public interest and the balance of the equities merge."), *opinion clarified*, 2021 WL 5276624 (2d Cir. Nov. 12, 2021), *application for injunctive relief filed*, No. 21A125 (U.S. Nov. 2, 2021).[10]   "We review a district court's denial of a preliminary injunction

---

[10]   Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

for abuse of discretion, but must assess de novo whether the court proceeded on

the basis of an erroneous view of the applicable law." *Agudath*, 983 F.3d at 631.[11]

The "purpose" of a preliminary injunction "is not to award the movant the

ultimate relief sought in the suit but is only to preserve the status quo by

preventing during the pendency of the suit the occurrence of that irreparable sort

of harm which the movant fears will occur." *New York v. Nuclear Regulatory

Comm'n*, 550 F.2d 745, 754 (2d Cir. 1977); *see also* 11A CHARLES ALAN WRIGHT,

ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE, § 2947

(3d ed. Apr. 2021 update) ("[A] preliminary injunction is an injunction that is

issued to protect plaintiff from irreparable injury and to preserve the court's power

to render a meaningful decision after a trial on the merits."). "Crafting a

preliminary injunction is an exercise of discretion and judgment, often dependent

as much on the equities of a given case as the substance of the legal issues it

presents." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017).

---

[11] The parties dispute the applicable legal standard. Defendants argue that
Plaintiffs seek "to modify the status quo by virtue of a *mandatory* preliminary injunction
(as opposed to seeking a *prohibitory* preliminary injunction to maintain the status quo)."
*A.H. v. French*, 985 F.3d 165, 176 (2d Cir. 2021). "In this circumstance, the movant must
also make a strong showing of irreparable harm and demonstrate a clear or substantial
likelihood of success on the merits." *Id.* We need not resolve this dispute because our
conclusions would be the same under either standard.

## I.   Likelihood of Success on the Merits

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. CONST., amend. I; *see Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (incorporating the Free Exercise Clause against the states).   "The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires."   *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 877 (1990).   The Free Exercise Clause thus protects an individual's private right to religious belief, as well as "the performance of (or abstention from) physical acts that constitute the free exercise of religion."   *Cent. Rabbinical Cong. of U.S. & Can. v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014) (quoting *Smith*, 494 U.S. at 877).

This protection, however, "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability."   *Smith*, 494 U.S. at 879.   Neutral and generally applicable laws are subject only to rational-basis review.   *Cent. Rabbinical Cong.*, 763 F.3d at 193.   Laws and government policies that are either non-neutral or not generally applicable, however, are subject to "strict scrutiny," meaning that they must be "narrowly tailored" to serve a

"compelling" state interest. *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020); *see Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1881 (2021) ("A government policy can survive strict scrutiny under the First Amendment's Free Exercise Clause only if it advances interests of the highest order and is narrowly tailored to achieve those interests.").

Here, Plaintiffs make two principal claims: (1) that the Vaccine Mandate is facially unconstitutional; and (2) that even assuming that the Vaccine Mandate is *not* facially unconstitutional, their First Amendment rights were violated by virtue of the procedures set forth in the Arbitration Award, which were used in the evaluation of their accommodation requests. We conclude that Plaintiffs have not shown a likelihood of success on their facial challenge to the Vaccine Mandate. At this juncture, however, they have demonstrated a likelihood of success on their as-applied challenge to the proceedings used in assessing their accommodation requests.

## A. Vaccine Mandate

### 1. Neutrality

The Vaccine Mandate, in all its iterations, is neutral and generally applicable. To determine neutrality, we begin by examining the Mandate's text, "for the minimum requirement of neutrality is that a law not discriminate on its

face." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993). Facial neutrality alone, however, is not enough. A law that is facially neutral will still run afoul of the neutrality principle if it "targets religious conduct for distinctive treatment." *Id.* at 534, 546. We thus also consider whether there are "subtle departures" from religious neutrality, as well as "the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decision-making body." *Id.* at 534, 540.

The Vaccine Mandate is neutral on its face. It applies to "all DOE staff," as well as City employees and contractors of DOE and the City who work in DOE school settings. Thus, the Mandate does not single out employees who decline vaccination on religious grounds. Its restrictions apply equally to those who choose to remain unvaccinated for any reason.[12]

---

[12] The Vaccine Mandate permits both medical and religious accommodations. In that respect, this case is factually different from recent challenges to other vaccine mandates. *See, e.g.*, *We The Patriots*, 2021 WL 5121983, at *1; *Does 1-6 v. Mills*, 16 F.4th 20, 30 (1st Cir. 2021), *application for injunctive relief denied sub nom. Does 1-3 v. Mills*, 2021 WL 5027177 (U.S. Oct. 29, 2021).

Nor do New York City Mayor Bill de Blasio's statements to the media render the Vaccine Mandate non-neutral.    Plaintiffs seize on statements the Mayor made at a press conference suggesting that religious adherents should be vaccinated because the Pope supports vaccination and that accommodations to the Mandate will only be afforded to religions with long-standing objections to vaccination. But these statements reflect nothing more than the Mayor's personal belief that religious accommodations will be rare, as well as "general support for religious principles that [he] believes guide community members to care for one another by receiving the COVID-19 vaccine."    *We The Patriots*, 2021 WL 5121983, at *10; *see also id.* ("Governor Hochul's expression of her own religious belief as a moral imperative to become vaccinated cannot reasonably be understood to imply an intent on the part of the State to target those with religious beliefs contrary to hers; otherwise, politicians' frequent use of religious rhetoric to support their positions would render many government actions non-neutral . . . ."). [13]    And even

---

[13] While Mayor de Blasio said that only Christian Scientists and Jehovah's Witnesses could receive religious accommodations, the City has granted accommodations to members of many other faiths.   *See* Defendants Br. 12 (noting that "over 100 religious exemptions [have] been granted to employees of more than 20 different faiths[] . . . and individuals whose specific religion is not identifiable" (citing Joint App'x in No. 21-2678, at 758–59)).

19

assuming, *arguendo*, that the Mayor's statements reflect religious animus, the Mayor did not have a meaningful role in establishing or implementing the Mandate's accommodations process, which was implemented by DOE staff, and later, the Arbitrator.   *See id.* ("Governor Hochul's expression of her own religious belief as a moral imperative to become vaccinated cannot reasonably be understood to imply an intent on the part of the State to target those with religious beliefs contrary to hers; otherwise, politicians' frequent use of religious rhetoric to support their positions would render many government actions non-neutral . . . ."); *cf. Trump v. Hawaii*, 138 S. Ct. 2392, 2417–23 (2018) (rejecting Establishment Clause challenge to facially neutral policy based on statements by the president that arguably reflected religious animus).

### 2.  General Applicability

The Vaccine Mandate is also generally applicable.   A law may not be generally applicable under *Smith* for either of two reasons: first, "if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions"; or, second, "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way."   *Fulton*, 141 S. Ct. at 1877.   Plaintiffs argue

that the Vaccine Mandate is not generally applicable on its face because it does not apply to the general public.   We disagree.

"[A]n exemption is not individualized simply because it contains express exceptions for objectively defined categories of persons."   *We The Patriots*, 2021 WL 5121983, at *14 (quoting *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1187 (10th Cir. 2021)).   Rather, there must be some showing that the exemption procedures allow secularly motivated conduct to be favored over religiously motivated conduct. *Id.*   Plaintiffs have made no such showing.   Instead, as in *We The Patriots*, the Vaccine Mandate provides for objectively defined categories of exemptions — such as those for individuals entering DOE buildings to receive a COVID-19 vaccination or to respond to an emergency — that do not "'invite[]' the government to decide which reasons for not complying with the policy are worthy of solicitude."   *Fulton*, 141 S. Ct. at 1879 (quoting *Smith*, 494 U.S. at 884); *see also We The Patriots*, 2021 WL 5121983, at *14.

Nor do these exemptions treat secular conduct more favorably than comparable religious conduct.   "[G]overnment regulations are not neutral and generally applicable . . . whenever they treat any comparable secular activity more favorably than religious exercise."   *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021).

21

"[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Id.* Plaintiffs argue that the Vaccine Mandate violates these principles because it exempts certain groups of people (for example, emergency responders). But that argument is unavailing. Viewed through the lens of the City's asserted interest in stemming the spread of COVID-19, these groups are not comparable to the categories of people that the Mandate embraces. While the exempt groups do not come into prolonged daily contact with large groups of students (most of whom are unvaccinated), the covered groups (for example, teachers) inevitably do.

Plaintiffs finally argue that the Vaccine Mandate is not generally applicable because it applies only to DOE employees and contractors. But neither the Supreme Court, our court, nor any other court of which we are aware has ever hinted that a law must apply to all people, everywhere, at all times, to be "generally applicable." As counsel conceded at oral argument, a law can be generally applicable when, as here, it applies to an entire *class* of people. Plaintiffs have not explained why DOE employees and other comparable

employees are not such a class, so we reject their arguments that the law is not generally applicable.

### 3. Rational Basis Review

Because Plaintiffs have not established, at this stage, that they are likely to succeed in showing that the Vaccine Mandate is not neutral or generally applicable on its face, rational basis review applies. *Cent. Rabbinical Cong.*, 763 F.3d at 193; *see also Fulton*, 141 S. Ct. at 1876 (citing *Smith*, 494 U.S. at 878–82). Rational basis review requires the City to have chosen a means for addressing a legitimate goal that is rationally related to achieving that goal. *See Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third and Fourth Dep'ts, App. Div. of the Sup. Ct. of N.Y.*, 852 F.3d 178, 191 (2d Cir. 2017).

The Vaccine Mandate plainly satisfies this standard. Attempting to safely reopen schools amid a pandemic that has hit New York City particularly hard, the City decided, in accordance with CDC guidance, to require vaccination for all DOE staff as an emergency measure. This was a reasonable exercise of the State's power to act to protect the public health. *See We The Patriots*, 2021 WL 5121983, at *15; *see also Phillips v. City of New York*, 775 F.3d 538, 542–43 (2d Cir. 2015) (holding that New York could constitutionally require all children to be vaccinated

in order to attend school); *Does 1-6*, 16 F.4th at 32 (holding that the vaccine mandate challenged in that case "easily satisfies rational basis review").[14]

## B. Arbitration Award and Accommodation Standards

Plaintiffs also contend that the Vaccine Mandate is unconstitutional as applied to them through the Arbitration Award. The City concedes that the Arbitration Award, as applied to Plaintiffs, "may" have been "constitutionally suspect," Defendants Br. 37–38, and its defense of that process is half-hearted at

---

[14] Plaintiffs raise a potpourri of other constitutional challenges against the Vaccine Mandate. None is persuasive. The *Kane* Plaintiffs argue that the Mandate violates the Fourteenth Amendment's Equal Protection Clause. "When a free exercise challenge fails, any equal protection claims brought on the same grounds are subject only to rational-basis review." *Does 1-6*, 16 F.4th at 35 (citing, *inter alia*, *Locke v. Davey*, 540 U.S. 712, 720 n.3 (2004)). Plaintiffs' Equal Protection Clause challenge to the Mandate fares no better than their First Amendment challenge.

The *Kane* Plaintiffs also contend that the Mandate violates the Supremacy Clause because it prohibits reasonable accommodations under Title VII. They are unlikely to succeed on this claim. *See We The Patriots*, 2021 WL 5121983, at *17 (noting that the law at issue there did not violate Title VII because it did "not *bar* an employer from providing an employee with a reasonable accommodation" (emphasis added)); *Does 1-6*, 16 F.4th at 35 (similar).

For their part, the *Keil* Plaintiffs argue that the Mandate violates their procedural due process rights because it does not offer meaningful standards against which their requests for religious accommodations will be measured. But Plaintiffs' requests will be governed by Title VII and analogous state and city law, and the standards for those claims are well established. *See, e.g.*, *Cosme v. Henderson*, 287 F.3d 152, 157-58 (2d Cir. 2002); *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985); *White v. Andy Frain Servs., Inc.*, 629 F. App'x 131, 134 (2d Cir. 2015); *infra* at 43–44. Plaintiffs have therefore failed to demonstrate a likelihood of success on the merits of this claim, too.

best.   Indeed, it offers no real defense of the Accommodation Standards at all. The City has also consented to the relief ordered by the Motions Panel, under which the Arbitration Award and its results will be set aside and Plaintiffs will receive *de novo* consideration of their accommodation requests.

We confirm the City's "susp[icion]" that the Arbitration Award procedures likely violated the First Amendment as applied to these Plaintiffs.   We emphasize, however, that this determination is exceedingly narrow – simply that Plaintiffs, at this juncture, have sufficiently established a likelihood of success so as to meet this prong of the preliminary injunction standard.   Given the City's concessions, and in the interest of providing timely guidance to the parties, we need not and do not address any other constitutional objection to the Arbitration Award that Plaintiffs raise.[15]

---

[15] Nor do we address certain arguments made by Defendants.   In a single sentence in their brief, Defendants suggest that Plaintiffs do not "have standing to launch a direct attack on the terms of awards arising out of arbitrations initiated by their own unions without first alleging a breach of the duty of fair representation."   Defendants Br. 35 (citing *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 260 (2009)).   But Defendants have not identified any provision in the relevant collective bargaining agreements that "clearly and unmistakably" requires union members, including Plaintiffs, to arbitrate their constitutional claims.   *Pyett*, 556 U.S. at 274; *see Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 360 (S.D.N.Y. 2016); *see also Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 744 (1981); *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 79–80 (1998).   In another single-sentence argument, Defendants suggest that Plaintiffs' unions may be "necessary parties" under Federal Rule of Civil Procedure 19(a)(1)(B)(i).   Defendants Br.

## 1. Neutrality

We conclude, first, that the procedures specified in the Arbitration Award and applied to Plaintiffs are not neutral.   The Supreme Court has explained that "the government, if it is to respect the Constitution's guarantee of free exercise, cannot impose regulations that are hostile to the religious beliefs of affected citizens and cannot act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices."   *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1731 (2018).

We have grave doubts about whether the Accommodation Standards are consistent with this bedrock First Amendment principle.   They provide that "[e]xemption requests shall be considered for recognized and established religious organizations" and that "requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation

---

35.   Defendants, however, failed to raise this argument below and fail to explain *why* the unions would be necessary parties in their brief in this Court.

Given both the City's consent to the interim relief afforded here and the failure to develop these arguments before this Court, we decline to affirm on either ground.   *See United States v. Morton*, 993 F.3d 198, 204 n.10 (3d Cir. 2021) ("[J]udges are not like pigs, hunting for truffles buried in the record.").   Defendants are free to raise these arguments before the district court on remand, however, given that the procedural context in which this case arises may prove relevant on the merits at a later stage in the proceeding.

is readily available (e.g., from an online source), or where the objection is personal,

political, or philosophical in nature."   Joint App'x 197.[16]   Moreover, Plaintiffs

have offered evidence that arbitrators applied the Accommodation Standards to

their applications by, for example, telling Plaintiff Keil that his religious beliefs

"were merely personal, [because] there are other Orthodox Christians who choose

to get vaccinated."[17]   *Id.* at 376.

Denying an individual a religious accommodation based on someone else's

publicly expressed religious views — even the leader of her faith —runs afoul of

the Supreme Court's teaching that "[i]t is not within the judicial ken to question

the centrality of particular beliefs or practices to a faith, *or the validity of particular*

---

[16] As noted above, we find the second clause ambiguous but have adopted the district court's interpretation for purposes of this opinion.   *See supra* note 4.

[17] Plaintiffs offered substantial evidence that arbitrators referenced the Accommodation Standards in their hearings.   For example, during another hearing, an arbitrator declared that, because a DOE employee's congregation was not opposed to the vaccine, the employee's objection was "personal and not religion-based."   Joint App'x 338.   The City notes that hearings were not recorded and that given the need to render determinations expeditiously, such determinations were issued without full written opinions to explain them.   It cautions that "the record casts serious doubt on plaintiffs' contentions that the challenged criteria in the arbitration awards were controlling in the administrative appeals."   Defendants Br. 11.   To be clear, it may be that after further factual development, some or even all of Plaintiffs' Free Exercise Clause claims fail on the merits.   But at this stage, based on the terms of the Arbitration Award and the numerous affidavits submitted by these fifteen individuals in support of their claims, we conclude that Plaintiffs have established a sufficient likelihood of success on the merits.

*litigants' interpretations of those creeds.*"  *Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989) (emphasis added); *see also Frazee v. Illinois Dep't of Emp. Sec.*, 489 U.S. 829, 833 (1989) (noting that "disagreement among sect members" over whether work was prohibited on the Sabbath had not prevented the Court from finding a free exercise violation based on the claimant's "unquestionably . . . sincere belief that his religion prevented" him from working (citing *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 714 (1981)).  Accordingly, we conclude that based on the record developed to date, the Accommodation Standards as applied here were not neutral, triggering the application of strict scrutiny.

## 2.  General Applicability

Nor does it appear that such procedures were generally applicable to all those seeking religious accommodation.  In *Smith*, the Supreme Court held that an unemployment compensation system with discretionary, individualized exemptions "lent itself to individualized government assessment of the reasons for the relevant conduct" and was thus not generally applicable.  494 U.S. at 884. So too here.

Plaintiffs have offered evidence that the arbitrators reviewing their requests for religious accommodations had substantial discretion over whether to grant

28

those requests.   Sometimes, arbitrators strictly adhered to the Accommodation Standards.   Other times, arbitrators apparently ignored them, such as by granting an exemption to an applicant who identified as a Roman Catholic, even though the Pope has expressed support for vaccination.   *Cf. We The Patriots*, 2021 WL 5121983, at *14 (denying a motion for a preliminary injunction where medical exemptions were granted exclusively in accordance with a uniform certification process).   In our view, and based on the record to date, Plaintiffs have thus shown that they are likely to succeed on their claim that the Arbitration Award procedures as applied to them were not generally applicable.

### 3.  Strict Scrutiny

Because the accommodation procedures here were neither neutral nor generally applicable, as applied, we apply strict scrutiny at this stage of the proceeding.   Under such scrutiny, these procedures are constitutional as applied only if "'narrowly tailored' to serve a 'compelling' state interest."   *Roman Cath. Diocese*, 141 S. Ct. at 67 (quoting *Lukumi*, 508 U.S. at 546); *see also Tandon*, 141 S. Ct. at 1296 ("[T]he government has the burden to establish that the challenged law satisfies strict scrutiny.").   The Supreme Court has recognized that "[s]temming

the spread of COVID-19" qualifies as "a compelling interest." *Roman Cath. Diocese*, 141 S. Ct. at 67.

The question is thus whether the Arbitration Award's procedures, as implemented and applied to Plaintiffs, were narrowly tailored to serve the government's interest. Narrow tailoring requires the government to demonstrate that a policy is the "least restrictive means" of achieving its objective. *Thomas*, 450 U.S. at 718.

These procedures cannot survive strict scrutiny because denying religious accommodations based on the criteria outlined in the Accommodation Standards, such as whether an applicant can produce a letter from a religious official, is not narrowly tailored to serve the government's interest in preventing the spread of COVID-19. The City offers no meaningful argument otherwise.

## II. Irreparable Harm

### A. Motions Panel Order

Plaintiffs have also shown that they would suffer irreparable harm absent the relief ordered by the Motions Panel. They have demonstrated that they were denied religious accommodations — pursuant to what the City has conceded was a "constitutionally suspect" process — and were consequently threatened with imminent termination if they did not waive their right to sue. This is sufficient

to show irreparable harm. *See Am. Postal Workers Union v. United States Postal Serv.*, 766 F.2d 715, 722 (2d Cir. 1985) (noting that "the threat of permanent discharge" can cause irreparable harm in the First Amendment context).[18]

## B. Plaintiffs' Request for Broader Relief

Plaintiffs contend that this interim relief does not go far enough. They argue that they are entitled to an injunction immediately reinstating them and

---

[18] We do not cast doubt on the well-established principle that "loss of employment 'does not *usually* constitute irreparable injury.'" *Does 1-6*, 16 F.4th at 36 (emphasis added) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)); *see We The Patriots*, 2021 WL 5121983, at *19; *see also, e.g.*, *Plata v. Newsom*, 2021 WL 5410608, at *3 (N.D. Cal. Nov. 17, 2021) (collecting cases in which district courts have concluded that the "choice" between "maintaining . . . employment or taking a vaccine that [employees] do not want . . . does not [cause employees to suffer] irreparable harm that warrants enjoining a vaccine mandate"). *But see BST Holdings, L.L.C. v. OSHA*, 2021 WL 5279381, at *8 (5th Cir. Nov. 12, 2021) (finding irreparable harm where "reluctant individual recipients [were] put to a choice between their job(s) and their jab(s)").

This is an unusual case for two reasons. First, Plaintiffs have demonstrated a likely violation of their First Amendment rights resulting from the manner in which their religious accommodation claims were considered. *Cf. Does 1-3*, 2021 WL 5027177, at *1, *4 (Gorsuch, *J.*, dissenting from the denial of application for injunctive relief) (finding irreparable harm where healthcare workers raised a First Amendment claim and faced termination if they did not comply with vaccine mandate). Second, these very procedures require Plaintiffs to forgo suit to avoid harm and the City has consented to the entry of an injunction which, among other things, will provide for these claims to be promptly reconsidered pursuant to procedures that are not constitutionally infirm. *Cf. Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 512 n.6 (2d Cir. 2005) (noting "particularly stringent standard for irreparable harm" in government personnel cases and observing that preliminary relief is inappropriate where harm could not be vitiated by an interim injunction). Given these facts and the City's concessions, we need not intimate a view as to whether Plaintiffs could show irreparable harm in different circumstances.

granting them backpay pending *de novo* consideration of their requests for religious accommodations. Because Plaintiffs have not shown that they would suffer irreparable harm absent this broader relief, we are not persuaded.

At the outset, we clarify what is at stake at this point in the litigation. The City has committed to providing "fresh consideration" and prompt resolution of Plaintiffs' requests for religious accommodation. Motions Panel Order ¶ 1. Under the Motions Panel Order, the City must adjudicate these requests within two weeks of Plaintiffs' submission of any documents they are permitted (but not required) to submit in support of their accommodation requests. *Id.* ¶ 3. The City may not terminate Plaintiffs or require them to opt-in to the extended leave program (and thereby waive their right to sue) while their requests are pending. *Id.* ¶ 4. The City has also affirmed that Plaintiffs who receive accommodations will be reinstated and receive all back pay and other benefits to which they are entitled. The question before us is thus whether *additional* preliminary relief is required until the City can decide Plaintiffs' renewed requests for a religious accommodation over the next few weeks.

We conclude that no such relief is required. Plaintiffs contend that they will be irreparably harmed if we do not reinstate them during this period. We

disagree.   Though Plaintiffs will continue to be on leave without pay while the City reconsiders their requests for religious accommodations, they have not shown that this amounts to an *irreparable* harm in the circumstances here.   "In government personnel cases," like this one, "we 'apply a particularly stringent standard for irreparable injury' and pay special attention to whether the interim relief will remedy any irreparable harm that is found."   *Mullins v. City of N.Y.*, 307 F. App'x 585, 587–88 (2d Cir. 2009) (quoting *Moore*, 409 F.3d at 512 n.6, in turn quoting *Am. Postal*, 766 F.2d at 721).   Thus, we have held that when irreparable harm arises "not from [an] interim discharge but from the threat of permanent discharge" a preliminary injunction is inappropriate because harm would not be "vitiated by an interim injunction."   *Moore*, 409 F.3d at 512 n.6 (quoting *Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988)).

Applying these principles here, Plaintiffs are not entitled to reinstatement while the City reconsiders their requests for religious accommodations.   In *Savage*, we held that even an "interim discharge" is insufficient to show irreparable harm in the government employment context.   850 F.2d at 68.   It follows that the City's decision to require Plaintiffs to remain on leave without pay for a few additional weeks is inadequate to justify an injunction reinstating them pending

redetermination of their requests for religious accommodations.[19]   And under the Motions Panel Order, Plaintiffs will receive backpay if their requests for religious accommodations are granted.   Motions Panel Order ¶ 5; s*ee Sampson*, 415 U.S. at 91 (holding that possibility of backpay obviates risk of irreparable harm).

In support of their argument that they are entitled to broader relief, Plaintiffs contend that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."   *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion).   *But cf. Does 1-6*, 16 F.4th at 37 ("Even if, arguendo, these claims [including a First Amendment claim] presumptively cause irreparable harm, we think the state has overcome any such presumption."); *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 349 (2d Cir. 2003) ("[W]e have not consistently presumed irreparable harm in cases involving allegations of the abridgement of First Amendment rights.").

We do not gainsay the principle that those who are unable to exercise their First Amendment rights are irreparably injured *per se*.   But this principle is not applicable to the present case.   The City is not threatening to vaccinate Plaintiffs

---

[19]   This case does not require us to address whether an employer's decision to place its employees on leave without pay for an extended period — *i.e.*, longer than the few weeks required by the Motions Panel Order — could inflict irreparable harm.

against their will and despite their religious beliefs, which would unquestionably constitute irreparable harm. Plaintiffs instead face economic harms, principally a loss of income, while the City reconsiders their request for religious accommodations. "It is well settled, however, that adverse employment consequences," like the loss of income accompanying a suspension without pay, "are not the type of harm that usually warrants injunctive relief because economic harm resulting from employment actions is typically compensable with money damages." *We The Patriots*, 2021 WL 5121983, at *19 (citing *Sampson*, 415 U.S. at 91–92; *Savage*, 850 F.2d at 68). Because those harms "could be remedied with money damages, and reinstatement is a possible remedy as well," *id.*, they do not justify an injunction reinstating Plaintiffs. *See Savage*, 850 F.2d at 68 ("Since reinstatement and money damages could make appellees whole for any loss suffered during this period, their injury is plainly reparable and appellees have not demonstrated the type of harm entitling them to injunctive relief."); *cf. A.H.*, 985 F.3d at 176 ("In cases alleging constitutional injury, a strong showing of a constitutional deprivation *that results in noncompensable damages* ordinarily warrants a finding of irreparable harm." (emphasis added)).

For that reason, this case is different from other pandemic-era cases that have found irreparable harm based on First Amendment violations.  *See, e.g., Roman Cath. Diocese*, 141 S. Ct. at 67–68; *Agudath*, 983 F.3d at 636–37.  Those cases involved restrictions on worshippers' rights to attend religious services and so directly prohibited them from freely exercising their religion.  *See Agudath*, 983 F.3d at 636 ("The Free Exercise Clause protects both an individual's private right to religious belief and the performance of (or abstention from) physical acts that constitute the free exercise of religion, including assembling with others for a worship service.").

Not so here.  Plaintiffs are not required to perform or abstain from any action that violates their religious beliefs.   Because Plaintiffs have refused to get vaccinated, they are on leave without pay.   The resulting loss of income undoubtedly harms Plaintiffs, but that harm is not irreparable.  *See Sampson*, 415 U.S. at 91, 92 n.68 ("[L]oss of income[,] . . . an insufficiency of savings or difficulties in immediately obtaining other employment . . . will not [ordinarily] support a finding of irreparable injury, however severely they may affect a particular individual.").[20]

---

[20]  Plaintiffs' request for backpay fails for an additional reason.   Preliminary

### III.   Public Interest

We briefly address the remaining preliminary injunction factor, the public interest.   The public interest weighs in favor of the relief granted by the Motions Panel.   To the extent Plaintiffs were denied religious accommodations pursuant to a concededly "constitutionally suspect" process, the public interest favors affording them an opportunity for reconsideration.   *See Agudath*, 983 F.3d at 637 ("No public interest is served by maintaining an unconstitutional policy when constitutional alternatives are available to achieve the same goal.").   Indeed, the City has not objected to providing that relief, fortifying our conclusion that it serves the public interest.   In sum, the relief afforded by the Motions Panel appropriately balances the equities by ensuring that Plaintiffs are not terminated or forced to waive their right to sue as the City reconsiders their requests for religious accommodation while, at the same time, the Vaccine Mandate, which is designed to further the compelling objective of permitting schools fully to reopen, continues in effect.

---

injunctions are appropriate only to prevent *prospective* harm until the trial court can decide the case on the merits.   Plaintiffs' request for backpay is (as the term *backpay* suggests) entirely retrospective.   We would thus deny Plaintiffs' request for backpay at this stage even if Plaintiffs had shown that their economic harms were irreparable.

## IV.   Plaintiffs' Remaining Arguments

### A. "Similarly Situated" Individuals

Plaintiffs also argue that we should order sweeping injunctive relief that extends to thousands of supposedly "similarly situated" nonparties to this litigation.   We disagree.   To start, the City has represented that it "is making an opportunity for fresh consideration available more broadly to Department of Education employees who unsuccessfully sought religious [accommodations] pursuant to the arbitration award's appeal process."   Defendants Br. 27.   "Those employees will be granted the same opportunity" as Plaintiffs "to have their religious accommodation requests considered by the central citywide panel."   *Id.* at 27–28.   The City also represents that "[w]hile their appeals are pending, these employees will remain on leave-without-pay status and will have seven days after their new appeals are resolved to apply for an extension of this status."   *Id.* at 18–19.   The City will therefore afford substantially the same relief to these nonparties as has already been ordered by the Motions Panel as regards Plaintiffs.

In any event, we would not grant Plaintiffs' request for sweeping injunctive relief even if this were not the case because as a "general rule, . . . injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."   *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 765

(1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)); *accord New York Legal Assistance Grp. v. BIA*, 987 F.3d 207, 225 (2d Cir. 2021); *see also United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 478 (1995) (teaching that courts should not "provide relief to nonparties when a narrower remedy will fully protect the litigants"); *United States v. Raines*, 362 U.S. 17, 21 (1960) (noting that the judicial power is limited to "adjudg[ing] the legal rights of litigants in actual controversies"); *Hawaii*, 138 S. Ct. at 2427 (Thomas, *J.*, concurring) ("[A]s a general rule, American courts of equity did not provide relief beyond the parties to the case. . . .   American courts' tradition of providing equitable relief only to parties was consistent with their view of the nature of judicial power.").[21]

Plaintiffs repeatedly emphasize that they have raised "facial" challenges as if that permits them to obtain class wide relief without obtaining class certification. But we have rejected Plaintiffs' facial challenge to the Vaccine Mandate.   We also

---

[21] *Cf. Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, *J.*, concurring in the grant of stay) ("Equitable remedies, like remedies in general, are meant to redress the injuries sustained by a particular plaintiff in a particular lawsuit.   When a district court orders the government not to enforce a rule against the plaintiffs in the case before it, the court redresses the injury that gives rise to its jurisdiction in the first place. But when a court goes further than that, ordering the government to take (or not take) some action with respect to those who are strangers to the suit, it is hard to see how the court could still be acting in the judicial role of resolving cases and controversies."); *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018) ("[S]tanding is not dispensed in gross:   A plaintiff's remedy must be tailored to redress the plaintiff's particular injury.").

reject Plaintiffs' attempt to transform their garden-variety "as applied" claims into what are effectively claims on behalf of a class simply by styling them as "facial" challenges. Indeed, Plaintiffs' challenge is an end run around the rules governing class certification. Why, after all, would plaintiffs go to the trouble of demonstrating "numerosity, commonality, typicality, and adequa[cy]" if they can obtain classwide relief as Plaintiffs now propose? *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).

Relatedly, we do not reject Plaintiffs' theory because they failed to use the words "class action" in the title of their complaint. Rather, Plaintiffs *never moved for class certification*, so no class has been certified. And the rule that injunctive relief should be narrowly tailored to prevent harm to the parties before the court "applies with special force where," as here, "there is no class certification." *California v. Azar*, 911 F.3d 558, 582–83 (9th Cir. 2018); *see id.* ("Injunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification."); *see also Sharpe v. Cureton*, 319 F.3d 259, 273 (6th Cir. 2003) ("While district courts are not categorically prohibited from granting injunctive relief benefitting an entire class in an *individual suit*, such broad relief is rarely justified because injunctive relief should be no more burdensome to the defendant

40

than necessary to provide complete relief to the plaintiffs." (citing *Yamasaki*, 442 U.S. at 702)); *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 171 (3d Cir. 2011) (collecting cases in which courts have "found injunctions to be overbroad where their relief amounted to class-wide relief and no class was certified").

Moreover, "[f]acial challenges are disfavored." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008). The Supreme Court has "strong[ly] admon[ished] that a court should adjudicate the merits of an as-applied challenge before reaching a facial challenge to the same statute." *Commodity Trend Serv. v. CFTC*, 149 F.3d 679, 683 (7th Cir. 1998) (citing *Bd. of Trs. of State Univ. of New York v. Fox*, 492 U.S. 469, 484–86 (1989)); *see also Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 502 (1985) (refusing to facially invalidate statute because "a federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it"); *see, e.g., United States v. Grace*, 461 U.S. 171, 175 (1983) (limiting review to the question of whether a statute was unconstitutional "as applied" in certain contexts, even though plaintiffs raised a facial challenge under the First Amendment). Thus, "it is a proper exercise of judicial restraint for courts to adjudicate as-applied challenges before facial ones in an effort to decide constitutional attacks on the narrowest possible grounds and

to avoid reaching unnecessary constitutional issues."   *Commodity Trend Serv.*, 149

F.3d at 690 n.5; *see Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 346–47 (1936)

(Brandeis, *J.*, concurring) (articulating these foundational principles of judicial

restraint).   Consistent with these well-established principles, we decline to

expand the relief ordered by the Motions Panel to cover nonparties to this

litigation.[22]

## B.  Conflict of Interest and Title VII

Plaintiffs finally contend that the interim relief afforded by the Motions

Panel is inadequate for two additional reasons.   Neither is persuasive.

First, Plaintiffs contend that including lawyers from the Office of the

Corporation Counsel on the citywide panel is improper because the Corporation

Counsel has a conflict of interest due to its participation in this litigation.   We

reject this argument.   The attorneys are advocates, not parties-in-interest.   *See,*

*e.g.*, *MFS Sec. Corp. v. SEC*, 380 F.3d 611, 619 (2d Cir. 2004) (rejecting the argument

that an agency's "role as [the petitioners'] adversary in litigation prevented it from

---

[22]   The *Kane* Plaintiffs have filed an amended class action complaint in the district court, and the *Keil* Plaintiffs have requested permission to file such a complaint. Without expressing a view as to these amended complaints, we note that remand will permit the district court to consider these complaints in the first instance.

being an impartial administrative adjudicator in the petitioners' administrative action" (citing *Blinder, Robinson & Co. v. SEC*, 837 F.2d 1099, 1104 (D.C. Cir. 1988)).

Second, the *Keil* Plaintiffs object to the Motions Panel Order's statement that consideration by the citywide panel must comport with Title VII and other applicable state and City law. They argue that the citywide panel must follow the First Amendment. It is, of course, true that the citywide panel must abide by the First Amendment. By ordering the citywide panel's proceedings to abide by other applicable law, the Motions Panel Order does not (and could not) suggest that the First Amendment is somehow inapplicable to those proceedings.

We conclude by noting that while the *Keil* Plaintiffs do not invoke Title VII in their lawsuit, that statute will be highly relevant to their renewed requests for religious accommodations. Under the Supreme Court's decision in *Smith*, the First Amendment likely does not require any religious accommodations whatsoever to neutral and generally applicable laws. *See Shrum v. City of Coweta*, 449 F.3d 1132, 1143 (10th Cir. 2006) (McConnell, *J.*) ("[T]he mere failure of a government employer to accommodate the religious needs of an employee, where the need for accommodation arises from a conflict with a neutral and generally

applicable employment requirement, does not violate the Free Exercise Clause, as that Clause was interpreted in *Smith*.").

In contrast, Title VII requires employers to offer reasonable religious accommodations in certain circumstances. *See We The Patriots*, 2021 WL 5121983, at \*17. *See generally* U.S. Equal Employment Opportunity Comm'n, *What You Should Know about COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* § L *Vaccinations – Title VII and Religious Objections to COVID-19 Vaccine Mandates* (last updated Oct. 28, 2021). Title VII does not, however,

> require covered entities to provide the accommodation that [an employee] prefer[s]—in this case, a blanket religious exemption allowing them to continue working at their current positions unvaccinated. To avoid Title VII liability for religious discrimination, . . . an employer must offer a reasonable accommodation that does not cause the employer an undue hardship. Once any reasonable accommodation is provided, the statutory inquiry ends.

*We The Patriots*, 2021 WL 5121983, at \*17. In providing religious accommodations, a government employer must abide by the First Amendment.

As we have explained, and based only on the record developed to date, Plaintiffs have demonstrated a likelihood of success on their claim that as applied to them, the City's process for implementing the Vaccine Mandate via the Arbitration Award offended the First Amendment. But we do not suggest that

44

Plaintiffs are in fact entitled to their preferred religious accommodations — or *any* religious accommodation, for that matter — under Title VII (or the First Amendment). Our decision is narrow. We conclude only that the interim relief put in place by the Motions Panel should continue so that Plaintiffs, with the consent of the City, are afforded an opportunity to have their accommodation requests promptly reconsidered.

To the extent Plaintiffs raise other objections to the process by which their requests for accommodations will be adjudicated by the citywide panel, those objections are best addressed by the district court on remand. Plaintiffs are free to renew their First Amendment (and other) objections before the district court.

## CONCLUSION

For the foregoing reasons, we VACATE the district court's order denying preliminary injunctive relief. Further, we ENJOIN Defendants consistent with the terms of the Motions Panel Order. This injunction will remain in place during reconsideration of Plaintiffs' renewed requests for religious accommodations. Within two weeks of the conclusion of Plaintiffs' proceedings before the citywide panel, the parties shall inform the district court (rather than this merits panel) of the result of those proceedings and advise of any further relief being sought.

Finally, we REMAND the case to the district court for further proceedings consistent with this opinion, making clear that the district court may alter the terms of the preliminary relief we have ordered or set them aside, as circumstances and further development of the record may require.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

46

**APPENDIX**

# United States Court of Appeals

FOR THE
SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of November, two thousand twenty-one.

Before:     Pierre N. Leval,
            José A. Cabranes,
            Denny Chin,
                    *Circuit Judges*.

---

Michael Kane, William Castro, Margaret Chu, Heather Clark, Stephanie Di Capua, Robert Gladding, Nwakaego Nwaifejokwu, Ingrid Romero, Trinidad Smith, Amaryllis Ruiz-Toro,

|  |  |
|---|---|
| *Plaintiffs-Appellants*, | **ORDER** |
| v. | 21-2678-cv |

Bill de Blasio, in his official capacity as Mayor of the City of New York, David Chokshi, in his official capacity of Health Commissioner of the City of New York, New York City Department of Education,

*Defendants-Appellees*.

---

Matthew Keil, John De Luca, Sasha Delgado, Dennis Strk, Sarah Buzaglo,

|  |  |
|---|---|
| *Plaintiffs-Appellants*, | |
| v. | 21-2711-cv |

The City of New York, Board of Education of the City School District of New York, David Chokshi, in his Official Capacity of Health Commissioner of the City of New York, Meisha Porter, in her Official

47

Capacity as Chancellor of the New York City
Department of Education,

*Defendants-Appellees*.

_____

        The motions of Plaintiffs-Appellants ("Plaintiffs") for an injunction pending appeal
having been heard at oral argument on November 10, 2021, and Defendants-Appellees
("Defendants") having represented to this Court that "the City is working toward making an
opportunity for reconsideration available more broadly to DOE employee[s] who unsuccessfully
sought religious exemptions pursuant to the arbitration award's appeal process," it is hereby

        **ORDERED** that this appeal is expedited and will be heard by a merits panel sitting on
November 22, 2021 (the "merits panel"). Pending further order by the merits panel,

1. Plaintiffs shall receive fresh consideration of their requests for a religious
   accommodation by a central citywide panel consisting of representatives of the
   Department of Citywide Administrative Services, the City Commission on Human
   Rights, and the Office of the Corporation Counsel.
2. Such consideration shall adhere to the standards established by Title VII of the Civil
   Rights Act of 1964, the New York State Human Rights Law, and the New York City
   Human Rights Law. Such consideration shall not be governed by the challenged criteria
   set forth in Section IC of the arbitration award for United Federation of Teachers
   members. Accommodations will be considered for all sincerely held religious
   observances, practices, and beliefs.
3. Plaintiffs shall submit to the citywide panel any materials or information they wish to be
   considered within two weeks of entry of this order. The citywide panel shall issue a
   determination on each request no later than two weeks after a plaintiff has submitted such
   information and materials. Within two business days of the entry of this order,
   Defendants shall inform plaintiffs' counsel how such information and materials should be
   transmitted to the citywide panel.
4. The deadline to opt-in to the extended leave program and execute any accompanying
   waiver shall be stayed for Plaintiffs, and no steps will be taken to terminate the plaintiff's
   employment for noncompliance with the vaccination requirement.
5. If a plaintiff's request is granted by the citywide panel, the plaintiff will receive backpay
   running from the date they were placed on leave without pay.
6. This order is intended only to provide for temporary interim relief until the matter is
   considered by the merits panel of this court, which panel may entirely supersede these
   provisions for interim relief, and the parties are at liberty to advocate to the merits panel
   for alteration of these provisions. Unless the merits panel has previously entered a
   superseding order, within two weeks of the conclusion of Plaintiffs' proceedings before
   the citywide panel, the parties shall inform the merits panel of the result of those
   proceedings and advise of any further relief being sought.

                                        FOR THE COURT:
                                        Catherine O'Hagan Wolfe, Clerk