**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

Kane, et al.,

                Plaintiffs,

    vs.

de Blasio, et al.,

                Defendants.

CASE NO. 1:21-cv-7863

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**

DATED this 9th day of December 2021.

Gibson Law Firm, PLLC

*/s/ Sujata S. Gibson*

**Sujata S. Gibson,**
*Attorney for Plaintiffs*
Gibson Law Firm, PLLC
408 W Martin Luther King, Jr. St.
Ithaca, NY 14850
(607) 327-4125
sujata@gibsonfirm.law

Michael H. Sussman
Sussman & Associates
PO Box 1005
Goshen, NY 10924
(845)-294-3991
Sussman1@sussman.law

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 2

   I.    STANDARD OF REVIEW ....................................................................... 2

   II.   THE PROPOSED CLASS SATISFIES THE NUMEROSITY, COMMONALITY,
TYPICALITY AND ADEQUACY REQUIREMENTS SET FORTH IN RULE 23(a) ............ 2

      A.   The proposed Class is sufficiently numerous. .............................................. 3

      B.   There are many questions of law and fact common to the Class. ................... 3

      C.   Plaintiffs' claims are typical of the Class. ................................................... 4

      D.   The proposed Class representatives will fairly and adequately represent the Class. ...... 5

   III.    CERTIFICATION UNDER RULE 23(b)(2) IS WARRANTED FOR A FINDING OF
LIABILITY AND INJUNCTIVE RELIEF ............................................................. 7

   IV.    CERTIFICATION UNDER RULE 23(b)(3) IS WARRANTED FOR LIABILITY
AND MONETARY DAMAGES .......................................................................... 8

      A.   Common issues predominate over individual issues ..................................... 8

      B.   A class action is superior to other available methods for the fair and efficient
adjudication of the case ........................................................................... 10

      C.   Addressing the issue of individualized damages ........................................ 12

CONCLUSION.................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) ........................................... 7

*Ansournana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001) ....................... 11

*Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) .................................................. 9

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ............................... 3

*Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) ................................... 6

*Easterling v. Conn. Dep't of Corr.*, 278 F.R.D. 41 (D. Conn. 2011) ...................................... 8, 13

*EEOC v. Sheet Metal Workers' Int'l Ass'n*, 532 F.2d 821, 832 (2d Cir. 1976) ............................ 8

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ................................................ 2

*Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 539 (N.D. Cal. 2012) .................................. 13

*Gulino v. Bd. of Educ.*, 96 CV 8414 (KMW), at *20 (S.D.N.Y. Aug. 29, 2013) ......................... 13

*Houser v. Pritzker*, 28 F. Supp. 3d 222 (S.D.N.Y. 2014) ................................................ 13

*In re Libor-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 545 (S.D.N.Y. 2018) ........................................................................................... 11

*In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) .................................................................................................. 6

*In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 363 (S.D.N.Y. 2016) ....................................... 11

*In re U.S. Foodserv. Inc. Pricing Litig.*, No. 07-1894, 2011 WL 6013551, at *16, *aff'd*, 729 F.3d 108 (2d Cir. 2013) ..................................................................... 9

*Int'l Bd. of Teamsters v. United States*, 431 U.S. 324 (1977) ........................................... 12

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ....................................... 9

*Marisol A. by Forbes v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ....................................... 3, 5

*Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 260 (S.D.N.Y. 1998) ................................. 12

*Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) ....................................... 9

*Romano v. SLS Residential Inc.*, 246 F.R.D. 432 (S.D.N.Y. 2007) ..................................... 7

*Schear v. Food Scope Am.*, Inc., 297 F.R.D. 114, 126 (S.D.N.Y. 2014) ........................................ 9

*Simpson v. New York State Department of Civil Service*, No. 03 Civ. 9433 (LAP)
(S.D.N.Y. Sep. 30, 2004) ........................................................................................ 7

*Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015) ................................ 9

*United States v. City of New York*, 276 F.R.D. 22 (E.D.N.Y. 2011) ........................................ 12

*United States v. Yonkers Bd. of Educ.*, 837 F.2d 1181 (2d Cir. 1987) ................................ 6

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........................................................ *passim*

## STATUTES

Fed. R. Civ. P. 23(a). .................................................................................................. 2, 3

Fed. R. Civ. P. 23(a)(1) ................................................................................................ 3

Fed. R. Civ. P. 23(a)(2) ................................................................................................ 3

Fed. R. Civ. P. 23(a)(3) ................................................................................................ 5

Fed. R. Civ. P. 23(a)(4) ................................................................................................ 6

Fed. R. Civ. P. 23(b). .................................................................................................. 2

Fed. R. Civ. P. 23(b)(2) ................................................................................................ 7

Fed. R. Civ. P. 23(b)(3) ........................................................................................... 8, 10

Fed. R. Civ. P. 23(b)(3)(A) ......................................................................................... 10

Fed. R. Civ. P. 23(b)(3)(B) ......................................................................................... 10

Fed. R. Civ. P. 23(b)(3)(C) ......................................................................................... 11

Fed. R. Civ. R. 23(b)(3)(D) ......................................................................................... 12

"If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *Board of Education v. Barnette*, 319 U.S. 624, 642 (1943).

## INTRODUCTION

Representative Plaintiffs Michael Kane, William Castro, Margaret Chu, Heather Clark, Stephanie Di Capua, Robert Gladding, Nwakaego Nwaifejokwu, Ingrid Romero, Trinidad Smith and Amaryllis Ruiz-Toro seek to certify a class of New York City Department of Education employees who have religious objections to taking a COVID-19 vaccine and were subjected to Defendants' successfully challenged "Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination for Department of Education Employees, Contractors, and Others," first promulgated August 24, 2021 (the "Vaccine Mandate"), along with amendments and policies adopted in the implementation of the mandate.

Defendant Mayor Bill de Blasio ("Mayor de Blasio"), sued in his official capacity, is the chief executive officer of New York City. He is the architect and proponent of the Vaccine Mandate. Defendant David Chokshi ("Commissioner Chokshi"), sued in his official capacity, is the Commissioner of Health and Mental Hygiene of the City of New York ("DOHMH"). He promulgated the Vaccine Mandate in coordination with Mayor de Blasio's directives. Defendant New York City Department of Education ("NYC DOE") is the department of city government responsible for the management of the New York City School District and the administration of New York City's public schools. For all purposes, the NYC DOE serves as the government or public employer of all persons employed by it. Mayor de Blasio exercises substantial control over the NYC DOE.

Plaintiffs move the Court to certify the following classes pursuant to Fed. R. Civ. P. 23: all persons employed by Defendant NYC DOE at any time between August 24, 2021 and the present

1

who assert sincerely held religious beliefs against taking the available COVID-19 vaccines (the "Class").

## ARGUMENT

Plaintiffs seek certification of their claims for injunctive relief under Federal Rule of Civil Procedure 23(b)(1) and 23(b)(2), certification of their claims for damages under 23(b)(3), and certification of liability under 23(b)(1) through 23(b)(3). For the reasons set forth below, this Court should grant this relief.

### I.    STANDARD OF REVIEW

Rule 23 of the Federal Rules of Civil Procedure governs when members of a class may bring suit as representative parties on behalf of all members.  To certify a class under Rule 23, a party must satisfy the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). The party seeking certification must also qualify under one of the three criteria set forth in Rule 23(b). Fed. R. Civ. P. 23(b). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

Plaintiffs' claims raise common questions of law and fact, the answers to which will drive the resolution of this litigation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Thus, class certification is appropriate and necessary for the uniform, efficient and just resolution of the Class claims.

### II.    THE PROPOSED CLASS SATISFIES THE NUMEROSITY, COMMONALITY, TYPICALITY AND ADEQUACY REQUIREMENTS SET FORTH IN RULE 23(a)

Rule 23(a) requires that:

2

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

### A. The proposed Class is sufficiently numerous.

Rule 23(a)(1) requires Plaintiffs to show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the class is comprised of thousands of NYC DOE employees who have sincerely held religious beliefs to COVID-19 vaccination. Therefore, the numerosity requirement is unquestionably met. *See*, *e.g.*, *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (presuming numerosity at 40 class members).

### B. There are many questions of law and fact common to the Class.

To satisfy 23(a)(2) commonality, class members' claims must share common questions of fact or law that are "capable of class wide resolution," meaning that determination of their "truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Commonality poses a limited burden because "even a single common question" is enough to satisfy Rule 23(a). *Id*. at 359 (internal quotation marks, citation, and alteration omitted); *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (affirming class certification commonality finding where district court found plaintiffs' "injuries derive[d] from a unitary course of conduct by a single system"). The question posed is whether the proposed class has "suffered the same injury" based on a "common contention—for example, the assertion of discriminatory bias." *Dukes*, 564 U.S. at 350 (internal citations omitted).

In *Dukes*, the Supreme Court held that Plaintiffs meet the standard for commonality if they sufficiently allege that the employer used a "biased testing procedure to evaluate" applicants, in

3

which case "a class action on behalf of every applicant or employee who might have been prejudiced by the test clearly would satisfy the commonality and typicality requirement of Rule 23(a)." *Id* at 353. Similarly, where there is "significant proof that an employer operated under a general policy of discrimination" class action certification of all persons who could have been subjected to that policy is appropriate. *Id.*

This case precisely meets both tests. As the NYC DOE itself acknowledges, and the Second Circuit affirmed, the policies the NYC DOE officially adopted to evaluate religious exemptions from the Vaccine Mandate are discriminatory and unconstitutional. Thus, a class of all NYC DOE employees with religious objections to the COVID-19 vaccine is appropriate as all members were subjected to and likely prejudiced by the biased policy. As Plaintiffs repeatedly stress, this is not a case about individual or random acts of discrimination. This is a case involving an official written policy that facially requires discrimination. All persons with religious objections to the Vaccine Mandate who were employed by DOE were impacted and have been similarly injured by this blatant discriminatory policy. Class certification is appropriate on this basis alone.

Moreover, Plaintiffs challenge the Vaccine Mandate as a whole, asserting that the mandate violates their rights secured under the First and Fourteenth Amendments to the United States Constitution. The City's decision to implement the mandate through a facially discriminatory policy has triggered strict scrutiny of the Vaccine Mandate as a whole. A class-wide determination that Defendants' Vaccine Mandate and policies do not survive strict scrutiny review would allow the Court to efficiently determine the validity of each Class member's Title VII and constitutional claims in "one stroke." This is part of the relief sought.

### C. Plaintiffs' claims are typical of the Class.

4

Rule 23(a)(3) requires that the claims of the representative plaintiffs be typical of those of the class. The typicality rule is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (citations and internal quotation marks omitted). "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, each putative class member's claim arises from Defendants' promulgation and enforcement of the Vaccine Mandate. Each class member challenges the Vaccine Mandate and associated employment policies as violative of their religious rights secured by the First and Fourteenth Amendment. The typicality of defendants' unlawful conduct, which is uniformly directed at all class members, outweighs any minor variations in the underlying claims, such as the particulars of a Plaintiff's exact job title or religious beliefs. Furthermore, Defendants have not challenged the sincerity of Plaintiffs' religious beliefs. Defendants' conduct and policies, which are uniformly directed at every class member, are at issue in the case, and necessary to its resolution. The putative class includes Plaintiffs who were accepted, but still face harassment and discrimination, and object to having been subjected to unlawful and unconstitutional processes regardless of the outcome, Plaintiffs who refused to submit to the process though they have sincere religious beliefs, and Plaintiffs who have sincere religious beliefs, but were denied relief after being subjected to the unlawful and discriminatory evaluation criteria.

### D.  The proposed Class representatives will fairly and adequately represent the Class.

To determine adequacy under 23(a)(4), the Court must find that the Proposed Representative Plaintiffs (1) "have an interest in vigorously pursuing the claims of the class"; and

5

(2) "have no interests antagonistic to the interests of the other class members." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)). Here, neither the Representative Plaintiffs nor their counsel have any conflicts of interest with the Class; to the contrary, their interests in remedying the religious discrimination perpetuated by Defendants are directly aligned with the interests of the Class. Also, the Representative Plaintiffs and counsel have demonstrated that they will vigorously prosecute this action on behalf of the Class. The Representative Plaintiffs have demonstrated their commitment to the Class throughout this litigation by answering document requests and serving as advisers to counsel. Counsel for Plaintiffs have also prosecuted this action vigorously by, for example, litigating motions and appeals for a preliminary injunction, and securing a continuance of interim relief. Counsel have demonstrated their dedication to the Class, and counsel will continue to do so.

Plaintiff's counsel is competent and has sufficient experience to represent this class. Sujata Gibson teaches part time at Cornell Law School, specializing in Constitutional law, and mass defense. She is lead counsel in another federal class action lawsuit pending before the Second Circuit, Doe v. Zucker. Mary Holland has participated in multiple class action lawsuits as counsel of record and advisory counsel, and was a full Professor of Law at Columbia Law School and New York University Law School for the last several decades prior to retiring from academia to pursue impact litigation. Further, attorney Michael Sussman just joined the case as co-counsel. As his attached declaration describes, Attorney Sussman has extensive experience litigating class action lawsuits. For example, Mr. Sussman successfully represented a class of 40,000 individuals aggrieved by housing and school segregation in Yonkers. *United States. v. Yonkers Bd. of Educ.*, 837 F.2d 1181 (2d Cir. 1987). He also successfully represented a class of more than 4700 state

employees who complained of discriminatory promotion test protocols as well as a class of hundreds subjected to discrimination based on disability status by SLS. *Simpson v. New York State Department of Civil Service*, No. 03 Civ. 9433 (LAP) (S.D.N.Y. Sep. 30, 2004); see also *Romano v. SLS Residential Inc.*, 246 F.R.D. 432 (S.D.N.Y. 2007) (Sussman represented class of disabled plaintiffs through settlement of the case in 2012). Counsel for the Plaintiffs will continue to vigorously and competently represent the interests of the class if certification is granted.

### III.    CERTIFICATION UNDER RULE 23(b)(2) IS WARRANTED FOR A FINDING OF LIABILITY AND INJUNCTIVE RELIEF

"Rule 23(b)(2) permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.' Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (citations omitted).

In *Dukes*, the Supreme Court explained:

> The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them. In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant.

564 U.S. at 360 (quotation marks and citation omitted).

Here, Plaintiffs seek a declaration that Defendant's Vaccine Mandate and related employment policies are unlawful, and an order enjoining Defendant from enforcing the discriminatory implementing policies or and remedying the discrimination that was already inflicted on *all* DOE employees with religious objections to COVID-19 vaccination. The parties agree that the official policies adopted by the City to administer the Vaccine Mandate and decide

7

religious exemptions were facially unconstitutional. Thus, they can only be unlawful "as to all of the class members or as to none of them." It is the height of injustice to allow relief for only fifteen.

Moreover, Plaintiffs allege that the Vaccine Mandate, which was applied through a discriminatory process and must thus survive strict scrutiny, unconstitutionally infringes the rights of all similarly situated people secured by the First and Fourteenth Amendments.

All Class members have been subjected to, and prejudiced by, the Vaccine Mandate, and an order pronouncing the Mandate and policies based on it unlawful and preventing their further use would provide relief to the Class as a whole. Not only would it stop the use of a discriminatory practice, but it would also entitle all Class members to a presumption of make-whole relief in the damages phase of the case. *Easterling v. Conn. Dep't of Corr.*, 278 F.R.D. 41, 49 n.5 (D. Conn. 2011) ("The court notes that there is a strong presumption in favor of granting back-pay awards to plaintiffs who have established that they were victims of unlawful discrimination."); *see also EEOC v. Sheet Metal Workers' Int'l Ass'n*, 532 F.2d 821, 832 (2d Cir. 1976) ("The Supreme Court has made clear that back pay is to be the rule rather than the exception under Title VII . . . ."); *See generally Dukes*, 564 U.S. at 352 n.7.

### IV.    CERTIFICATION UNDER RULE 23(b)(3) IS WARRANTED FOR LIABILITY AND MONETARY DAMAGES

Both injunctive relief and damages are appropriately litigated as a class in this matter. According to the Supreme Court, "individualized monetary claims belong in Rule 23(b)(3)." *Dukes*, 564 U.S. at 362. Monetary damages are appropriate, so long as common issues predominate over individual damages calculations, and that a class action be superior to other available methods for the fair and efficient adjudication of the case. Fed. R. Civ. P. 23(b)(3).

#### A.   *Common issues predominate over individual issues*

"Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (emphasis added) (internal quotation marks omitted).

Although every Title VII and constitutional case presents some individualized questions with respect to class member entitlement to relief, courts have long held that individualized damages issues do not defeat predominance. *See, e.g.*, *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015) ("[I]ndividual questions need not be absent," and "[t]he text of Rule 23(b)(3) itself contemplates that such individual questions will be present," "requir[ing] only that those questions not predominate over the common questions affecting the class as a whole."); *City of N.Y.*, 276 F.R.D. at 48 ("[T]he resolution of these individual questions [at the remedial phase] is of relatively minimal significance to the litigation as a whole."); *Schear v. Food Scope Am.*, Inc., 297 F.R.D. 114, 126 (S.D.N.Y. 2014) ("[T]he Second Circuit has found that individualized calculations of damages do not defeat the predominance requirement."); *see also In re U.S. Foodserv. Inc. Pricing Litig.*, No. 07-1894, 2011 WL 6013551, at *16 (D. Conn. Nov. 29, 2011) ("It is a rare case where computation of each individual's damages is so complex, fact-specific, and difficult that the burden on the court is intolerable."), *aff'd*, 729 F.3d 108 (2d Cir. 2013); *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("The amount of damages is invariably an individual question and does not defeat class action treatment.") (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)).

This litigation primarily raises Constitutional claims, not individualized Title VII claims. Common questions of liability and damages predominate over individual issues relating to

9

entitlement to or amount of damages. With respect to Plaintiffs' religious discrimination claims, whether the Vaccine Mandate as implemented through the discriminatory policy can survive strict scrutiny, and whether alternative less burdensome options exist, are common issues which will be proved or disproved using evidence common to class members. These common questions predominate over any individual questions that may be present, because, regardless of proposed class members' individual circumstances, they have all been subjected to a singular discriminatory set of policies by Defendants, the legality of which is an issue far more substantial than any issues subject to individualized proof. Thus, predominance is satisfied in this case.

### B. A class action is superior to other available methods for the fair and efficient adjudication of the case

The "superiority" inquiry directs the Court to consider four factors—the class members' interests in controlling litigation, the nature and extent of litigation, the desirability of concentrating the litigation of the claims, and the manageability of the case as a class action. Fed. R. Civ. P. 23(b)(3).

The first superiority factor relates to Class members' interests in individually controlling the prosecution of separate actions. Fed. R. Civ. P. 23(b)(3)(A). As to this factor, the following establish that a collective prosecution here is far superior to individual suits: the harm sustained in this case to livelihood, earnings, emotional and spiritual well-being, and the deterrent effect on protected religious activity coupled with the existence of liability issues common to all Class members. The predominant need of Class members is a speedy and efficient resolution of the loss of their livelihoods, and to go back to work serving communities that need them—not to get bogged down in the weeds of litigation.

The second superiority factor focuses upon the extent and nature of any litigation concerning the controversy already commenced by class members. Fed. R. Civ. P. 23(b)(3)(B).

Here, any individually instituted suits previously filed by putative Class members stemming from challenged policies in this case are not a barrier to class certification with respect to the putative Class members. In fact, the "extent and nature of any litigation already begun by class members weighs in favor of superiority" where a case has been going on for some time and "journeyed up and down the appellate ladder." *In re Libor-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 545 (S.D.N.Y. 2018); *see also In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 363 (S.D.N.Y. 2016) ("the volume of actions brought by individual plaintiffs . . . demonstrates the need for a class action in these circumstances. Otherwise, the Court risks the present stream of individual actions growing into an unmanageable flood.") Most importantly, class certification will create a single forum to resolve the constitutional religious discrimination for both Plaintiffs and the Class. Accordingly, such certification will serve the goals of judicial economy and reduce the possibility of a vast array of other cases. *See Ansournana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001).

The third superiority factor requires review of the desirability of concentrating the litigation in a particular forum. Fed. R. Civ. P. 23(b)(3)(C). Jurisdiction is proper in this Court and there is nothing to suggest that this action should not be maintained in this forum. Further, where, as here, there is a "large number of plaintiffs making similar claims, consolidated litigation conserves judicial and party resources." *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 260 (S.D.N.Y. 1998). The alternatives to class litigation—(1) either thousands of individual proceedings on the same subject, inefficiently expending Court resources; or (2) given the enormous expense and difficulty that bringing a federal lawsuit imposes on working class people, potentially no cases challenging systemic religious discrimination—are not superior alternatives at all. Class members' interests are better served by a single suit with access to substantially more evidence. In fact, "the larger the

number of victims of . . . discrimination, the greater the economies of scale achieved by adjudicating common claims in a class proceeding." *United States v. City of New York*, 276 F.R.D. 22, 48 (E.D.N.Y. 2011). Without class adjudication, the litigation costs could overwhelm the dollar value of each plaintiff's claim. The potential for such negative value claims is elevated here where Defendants are state actors that possess substantially greater means and power than any single Plaintiff. Class adjudication also promotes efficiency because Plaintiffs have already conducted litigation in this forum. It would be far more efficient and convenient to continue litigating common questions here. Indeed, this Court already proposed that similar cases be joined, which counsels in favor of class certification.

Fourth, the court is directed to consider any difficulties likely to be encountered in the management of the class action. Fed. R. Civ. R. 23(b)(3)(D). In this regard, Plaintiffs respectfully submit that this Court has, and will continue to, efficiently manage this class action, and that any difficulties that may be encountered are significantly outweighed by the problems that would attend any other management device chosen. *See Ansournana*, 201 F.R.D. at 89. *See also supra* II.D.

Accordingly, because Plaintiffs' and the Class' claims raise common question of fact and law which predominate over any questions affecting individual class members, and because a class action is, by far, the most superior and effective means to resolve the claims of Plaintiffs and the Class and ensure that Defendants take steps both to undo the damage they have inflicted and adopt new policies and practices which eliminate religious discrimination, certification of damages and liability under Rule 23(b)(3) is appropriate in this case.

### C.  *Addressing the issue of individualized damages*

The Court may address damages issues in one of at least two recognized ways. First, the Court may employ the framework established by *Int'l Bd. of Teamsters v. United States*, whereby individual class members will present their eligibility for relief in a second phase of trial if liability is established. 431 U.S. 324, 361-362 (1977). Importantly, these individualized hearings that may be conducted in the second phase of the trial "are narrow in scope and significance when compared to the threshold, class-wide issues subject to generalized proof," *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 539 (N.D. Cal. 2012), and "the Court could appoint a special master to preside over" them. *Houser v. Pritzker*, 28 F. Supp. 3d 222 (S.D.N.Y. 2014).

Alternatively, the Court may choose to certify both liability and damages for class treatment based on the common issues presented with respect to damages, which may include class-wide calculation of total aggregate damages, class-wide calculation of baseline backpay, class-wide determination on how to calculate compensation for lost alternative employment opportunities, class-wide establishment of what nondiscriminatory bases Defendants may use to claim a Plaintiff's religious beliefs cannot be accommodated; and a class-wide process to collect information from plaintiffs regarding mitigation. *See Gulino v. Bd. of Educ.*, 96 CV 8414 (KMW), at *20 (S.D.N.Y. Aug. 29, 2013) (certifying liability and damages in disparate impact case under 23(b)(3) and identifying potential common methods of damages calculations, where "resolving common issues with respect to damages at a class-wide proceeding will save substantial time and prevent the re-litigation of common claims"). Such class adjudication may allow for a streamlined process "managed by a special master" aimed at dividing a total damages award. *Id*. at *13. *See also Easterling*, 278 F.R.D. at 48-49 (certifying liability and damages in disparate impact case under 23(b)(3) because common issues as to damages, including total amount of class back pay,

predominated over individual issues, such as each member's eligibility or qualification for position).

## **CONCLUSION**

Plaintiffs have successfully pled the required elements for class certification of their claims for injunctive relief, damages, and liability under Fed. R. Civ. P. 23(a), 23(b)(1),(2) and (3), and pray this Court grants the same.

Dated: December 9, 2021                          Respectfully Submitted,

                                                 /s/ *Sujata S. Gibson*

                                                 Sujata S. Gibson, Esq.
                                                 Gibson Law Firm, PLLC
                                                 408 W Martin Luther King, Jr. St
                                                 Ithaca, NY 14850
                                                 Tel: (607) 327-4125
                                                 sujata@gibsonfirm.law

Michael H. Sussman
Sussman & Associates
PO Box 1005
Goshen, NY 10924
(845)-294-3991
Sussman1@sussman.law

Mary Holland, Esq.
Children's Health Defen

14