21 Civ. 7863 (VEC) (Lead Case)  | 21 Civ. 8773 (VEC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL KANE, et al.,

                                                    Plaintiffs,

                        -against-

BILL DE BLASIO, et al.,

                                                    Defendants.

MATTHEW KEIL, et al.,

                                                    Plaintiffs,

                        -against-

THE CITY OF NEW YORK, et al.,

                                                    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION AMENDED COMPLAINT

### GEORGIA M. PESTANA

*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-315
New York, New York 10007-2601

*Of Counsel*: Lora Minicucci and Amanda C. Croushore
Tel.:  (212) 356-2078

Matter No.: 2021-028116

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 3

ARGUMENT ...................................................................................................................... 6

POINT I: PLAINTIFFS' CONSTITUTIONAL CLAIMS FAIL .................................................. 6

    A.        PLAINTIFFS' FREE EXERCISE CLAIM FAILS BECAUSE A RATIONAL BASIS EXISTS FOR ENFORCEMENT OF THE MANDATE ................. 6

    B.        PLAINTIFFS' ESTABLISHMENT CLAUSE CLAIM FAILS BECAUSE THE MANDATE HAS SECULAR PURPOSE, DOES NOT INHIBIT RELIGION, AND DOES NOT FOSTER GOVERNMENT ENTANGLEMENT WITH RELIGION ........ 11

    C.        PLAINTIFFS' PROCEDURAL DUE PROCESS RIGHTS HAVE NOT BEEN VIOLATED ..................................................................................... 14

    D.        PLAINTIFFS HAVE FAILED TO PLAUSIBLY ALLEGE A SUBSTANTIVE DUE PROCESS VIOLATION ........................................... 18

    E.        PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS FOR THE SAME REASONS AS THEIR SUBSTANTIVE DUE PROCESS CLAIM ............................... 21

    F.        PLAINTIFFS' SUPREMACY CLAUSE / EMERGENCY USE AUTHORIZATION CLAIM IS FACTUALLY INACCURATE AND LEGALLY INSUFFICIENT ................................................................................... 24

        1.        The Pfizer BioNTech and Moderna COVID-19 Vaccines are Both Fully-Approved Under their Respective Brand Names, "Comirnaty" and "Spikevax." ...................................... 24

        2.        The Vaccine Mandate Does Not Violate Federal Regulations Regarding Informed Consent or Human Test Subjects ........................................................................ 26

POINT II: PLAINTIFFS' AS-APPLIED CHALLENGES        (CAUSES OF ACTION 7-27) ALSO FAIL ................................................................................................. 28

    A.        THE COVID-19 VACCINATION IS A CONDITION FOR EMPLOYMENT ........................................................................................ 28

    B.        PLAINTIFFS' AS-APPLIED CHALLENGES SHOULD BE BROUGHT AS ARTICLE 78 PROCEEDINGS ................................................................. 31

POINT III: PLAINTIFFS' SECTION 1983 CLAIM MUST BE DISMISSED ......................... 32

POINT IV: PLAINTIFFS HAVE FAILED TO STATE CLAIMS UNDER THE SHRL OR CHRL ........................................................................................................................ 32

POINT V: PLAINTIFFS' CONSOLIDATED CLASS ACTION AMENDED COMPLAINT VIOLATES FED. R. CIV. P. 8 ............................................................................................ 34

CONCLUSION ........................................................................................................................ 35

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AMSAT Cable Ltd. v. Cablevision of Conn.*, 6 F.3d 867 (2d Cir. 1993) ..................................... 29

*Analytical Diagnostic Lab, Inc. v. Kusel*, 626 F.3d 135 (2d Cir. 2010) ...................................... 11

*Arroyo v. Dept. of Educ.*, 19 Civ. 7416 (ER), 2020 U.S. Dist. LEXIS 141426 (S.D.N.Y. Aug. 6, 2020) ...................................................................................................................................... 15

*Baker v. Home Depot*, 445 F3d 541 (2d Cir. 2006) .................................................................... 17

*Baker v. The Home Depot*, 445 F.3d 541 (2d Cir. 2006) ............................................................ 30

*Berkowitz v. E. Ramapo Cent. Sch. Dist.*, 932 F. Supp. 2d 513 (S.D.N.Y. 2013) ................. 11, 12

*Berrios v. State Univ. of N.Y.*, 518 F.Supp.2d 409 (E.D.N.Y. 2007) .......................................... 15

*Biehner v. City of NY*, No. 19-CV-9646 (JGK), 2021 U.S. Dist. LEXIS 44003 (S.D.N.Y. Mar. 9, 2021) ...................................................................................................................................... 15

*Brevil v. County of Rockland*, No. 15 CV 5103 (VB), 2017 U.S. Dist. LEXIS 177644 (S.D.N.Y. Oct. 25, 2017) ......................................................................................................................... 33

*Broecker v. New York Dept. of Educ.*, No. 21-CV-6387 (KAM) (LRM), 2022 U.S. Dist. LEXIS 25104 (E.D.N.Y. Feb. 11, 2022) ................................................................................. 28

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) .................... 7, 9

*Ciambriello v. County of Nassau*, 292 F.3d 307 (2d Cir. 2002) ................................................. 15

*Columbus Ale House, Inc. v. Cuomo*, 495 F. Supp. 3d 88 (E.D.N.Y. 2020) .............................. 20

*Conyers v. Rossides*, 558 F.3d 137 (2d Cir. 2009) ..................................................................... 11

*Cosme v. Henderson*, 287 F.3d 152 (2d Cir. 2002) .......................................................... 8, 17, 29

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010) ................................................... 4

*Draper v. U.S. Pipe & Foundry Co.*, 527 F.2d 515 (6th Cir. 1975) ............................................ 18

*Employment Div. v. Smith*, 494 U.S. 872 (1990) ................................................................... 7, 8, 9

*Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008) ..................................................... 7, 11, 23

*Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570 (2d Cir. 2002) ................. 7, 9

*Foster v. New York*, 157 A.D.2d 516 (1st Dep't 1990) ............................................................... 31

*Fuca v. City of New York*, 15 Misc. 3d 86 (2d Dep't, 2007) .......................................................... 32

*Gagliardi v. Village of Pawling*, 18 F.3d 188 (2d Cir. 1994) ....................................................... 22

*Garland v. N.Y.C. Fire Dep't*, No. 21-cv-6586 (KAM)(CLP), 2021 U.S. Dist. LEXIS 233142 (E.D.N.Y. Dec. 6, 2021) ............................................................................................................ 30

*Garland v. New York City Fire Department*, 2021 LRRM (BNA) 464267 (E.D.N.Y. 2021)...... 28

*Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206 (2d Cir. 2003).................................... 16

*Hu v. City of New York*, 927 F.3d 81 (2d Cir. 2019) .................................................................... 19

*Hudson v. Related Mgt. Co. LP*, 2013 N.Y. Misc. LEXIS 4288, *5, 2013 NY Slip Op 32270(U) (Sup. Ct., N.Y. Co. 2013 ........................................................................................................... 33

*Hughey v. Metropolitan Transp. Auth.*, 159 A.D.3d 596 (1st Dep't, 2018) ................................ 31

*Hurd v. Fredenburgh*, 984 F.3d 1075 (2d Cir. 2021) ...................................................... 18, 19, 20

*Jacobson v. Massachusetts*, 197 U.S. 11 (1905)........................................................................... 20

*Jadoo v. City of N.Y.*, No. 95-CV-3540, 1997 U.S. Dist. LEXIS 14950 (E.D.N.Y. Sep. 29, 1997) ...................................................................................................................................................... 4

*Johnson v. Brown*, No. 3:21-cv-1494-SI, 2021 U.S. Dist. LEXIS 200159 (D. Or. Oct. 18, 2021) .................................................................................................................................................... 24

*Johnson v. Lefkowitz*, 566 F.2d 866 (2d Cir. 1977) ..................................................................... 17

*Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450 (1988)............................................................... 21

*Kalsi v. N.Y. City Tr. Auth.*, 62 F Supp 2d 745 (E.D.N.Y. 1998) .......................................... 18, 29

*Kaluczky v. City of White Plains*, 57 F.3d 202 (2d Cir. 1995)..................................................... 19

*Kane v. De Blasio*, 19 F.4th 152 (2d Cir. 2021) .................................................................... 6, 8, 9

*Laface v. Eastern Suffolk BOCES*, 349 F. Supp. 3d 126 (E.D.N.Y. 2018).................................. 32

*Lynch v. Donnelly*, 465 U.S. 668, 680 (1984)........................................................................ 11, 12

*Maniscalco v. N.Y. City Dept. of Educ.*, 2021 U.S. Dist. LEXIS 184971 (E.D.N.Y. Sep. 23, 2021) ............................................................................................................................................. passim

*Massi v. Flynn*, 353 Fed. Appx. 658 (2d Cir. 2009) .................................................................... 11

*Miller v. Johnson*, 515 U.S. 900 (1995)......................................................................................... 9

*Miner v. Clinton County*, 541 F.3d 464 (2d Cir. 2008) ................................................................ 21

*Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682 (2d Cir. 2013) ........................................ 29

Neilson v. D'Angelis, 409 F.3d 100 (2d Cir. 2005) .............................................................. 22, 23

*Novak v. N.Y. State Elec. & Gas Corp.*, 2006 U.S. Dist. LEXIS 73031 at *7-8 (N.D.N.Y. 2006) ............................................................................................................................................... 35

*Okwedy v. Molinari*, 69 Fed. Appx. 482 (2d Cir. 2003) ............................................................ 7

*O'Reilly v. Bd. of Educ.*, Index No. 161040/2021, 2022 NY Slip Op 30173[U] (N.Y. Sup. Ct., N.Y. Cnty Jan. 20, 2022) ........................................................................................................... 28

*Palmer v. Ticcione*, 576 F.2d 459 (2d Cir 1978) ...................................................................... 17

*Parsons v. Pond*, 126 F. Supp. 2d 205 (D. Conn. 2000) .......................................................... 19

*Porr v. Daman*, 299 Fed. Appx. 84 (2d Cir. 2008) .................................................................. 11

*Purcell v. City of New York*, 110 A.D.3d 535 (1st Dep't 2013) ............................................... 31

*Rosa R. v. Connelly*, 889 F.2d 435 (2d Cir. 1989) ................................................................... 32

*Schiller v. Duthie*, 2017 U.S. Dist. LEXIS 137937 at *32-33 (S.D.N.Y. Aug. 28, 2017) ........... 35

*Sindone v. Kelly*, 439 F. Supp. 2d 268 (S.D.N.Y. 2006) .......................................................... 31

*Southerland v. City of New York*, 680 F.3d 127 (2d Cir. 2012) ........................................... 18, 19

*Staskowski v. Cty. of Nassau*, 410 F. App'x 420 (2d Cir. 2011) .............................................. 11

*Thomas v. Union Carbide Agric. Prods. Co.* 473 U.S. 568 (1985) ........................................... 29

*Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977) ................................................... 17

*Trans World Airlines, Inc. v. Hardison*, 97 S. Ct. 2264 (1977) ............................................... 30

*U.S. Navy Seals 1-26 v. Biden*, No. 4:21-CV-1236, 2022 U.S. Dist. LEXIS 2268 (N.D. Tex. Jan. 3, 2022) .................................................................................................................................... 10

*Washington v. Glucksberg*, 521 U.S. 702 (1997) .................................................................... 19

*We the Patriots, USA, Inc. v. Hochul*, 17 F.4d 266 (2d Cir. 2021) ........................................... 28

*Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338 (2d Cir. 2007) ........................... 12

*White Plains Towing Corp. v. Patterson*, 991 F.2d 1049 (2d Cir. 1993) .................................. 15

*Xiang v. Eagle Enters., LLC*, No. 19-CV-1752 (PAE), 2020 U.S. Dist. LEXIS 7909 (S.D.N.Y. Jan. 16, 2020) .................................................................................................................. 33

*Zinermon v. Burch*, 494 U.S. 113 (1990) ................................................................................. 15

**Statutes**

21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III) ................................................................................ 26, 27

NYC Admin. Code § 8-107(31)(c)(3)(b)(i) .............................................................................. 33

**Federal Rules of Evidence**

Fed. R. Evid. 201(b)(3) ............................................................................................................. 4

## PRELIMINARY STATEMENT

On August 24, 2021—the day after the U.S. Food and Drug Administration ("FDA") fully approved the Pfizer COVID-19 vaccine—the Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH"), David A. Chokshi, issued a Commissioner's Order requiring all New York City Department of Education ("DOE") employees to show proof of at least one dose of vaccination against COVID-19 by September 27, 2021 (the "Mandate").[1]  The Mandate's preliminary paragraphs provide a salient and unassailable predicate for its establishment and enforcement, including that the U.S. Centers for Disease Control and Prevention ("CDC") extols vaccination as the primary strategy to stop the spread of COVID-19 and thus recommends teachers be vaccinated as soon as possible to help schools safely resume full operations.  Further, DOE is the largest school district in the country, with around one million students, hundreds of thousands of whom have not been vaccinated.  Thus, the Mandate is fully premised on potentially saving lives, protecting public health, and promoting public safety.

Yet, the plaintiffs in this case—who seek to represent a class of "all persons employed directly or indirectly by DOE who assert religious objections to the Mandate" (Am. Compl. Para 50)—argue that the Mandate violates their constitutional rights and discriminates against DOE employees with religious objections to vaccination.  They are wrong.  As demonstrated herein, plaintiffs fail to state a claim under any of the Constitutional or legal provisions they cite.

---

[1]     *See* Declaration of Lora Minicucci ("Minicucci Decl.), Exh. B.  This Order was rescinded and restated in a subsequent Commissioner's Order, dated September 15, 2021, which, as to the DOE Vaccination Mandate, is analogous to its predecessor.  *See id.*, Exh. C, also available at: https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-2.pdf last visited on February 14, 2022.

First, plaintiffs' Constitutional claims fail for many reasons, including: the existence of a rational basis for the Mandate; the Mandate has a primarily secular purpose; it applies to all DOE employees—regardless of their religion—equally; it has procedural safeguards; and the plaintiffs' Emergency Use Authorization arguments are without basis, given that at least two of the vaccines have received full FDA approval. These reasons are further supported by the fact that the Second Circuit Court of Appeals found the Mandate to be constitutional on its face. Second, because plaintiffs' Constitutional claims fail, their Section 1983 claim must fail as well. Third, the named plaintiffs' as-applied challenges fail for several reasons—namely, some plaintiffs were accommodated; some plaintiffs never completed the steps necessary to seek an accommodation; all plaintiffs were given the due process they are owed and; in any event, this Court is an improper forum for the as-applied challenges, which should have been brought in State Court as Article 78 proceedings instead. Furthermore, plaintiffs' State and City Human Rights Law ("SHRL" and "CHRL" respectively) claims are insufficient as a matter of law because, by virtue of refusing to get vaccinated, plaintiffs and the class they seek to represent are no longer qualified for their positions, a prerequisite to liability under both the SHRL and CHRL. In addition, as explained by the Citywide Panel, accommodating those plaintiffs who were classroom teachers would cause an undue hardship on DOE. Finally, plaintiffs' Amended Complaint should also be dismissed for the simple reason that it does not contain a "short and plain statement" of their claims, in violation of Fed. R. Civ. P. 8.

Accordingly, plaintiffs have failed to state a claim and their complaint is improper, warranting dismissal of this case with prejudice.

**STATEMENT OF FACTS**[2]

On August 23, 2021, Mayor de Blasio and the New York City Commissioner of Health and Mental Hygiene, David A. Chokshi, announced that DOE employees were required to receive at least an initial COVID-19 vaccination by September 27, 2021. Am. Compl. ¶ 62. On August 24, 2021, Commissioner Chokshi promulgated a Health Commissioner's order requiring vaccination for DOE employees, as well as others in DOE buildings, which did not explicitly include language regarding accommodations. *Id*. ¶ 63.[3] On September 10, 2021, following an impasse arbitration hearing between the United Federation of Teachers, Local 2, AFT, AFL-CIO ("UFT") and the City, the assigned arbitrator issued an order that included a process for reviewing and determining requests for religious exemptions to the vaccine mandate. *Id*. ¶ 67.

Plaintiffs initiated this lawsuit on October 4, 2021, and sought injunctive relief. Am. Compl. ¶ 124. The Court denied plaintiffs' application for an injunction, and plaintiffs appealed. *Id*. ¶124, 126, 130. By decision dated November 28, 2021, the Second Circuit merits panel found the mandate constitutional on its face, vacated and remanded the denial of injunctive relief as to named plaintiffs only. *Id*. ¶¶ 131-32. The Second Circuit merits panel further ordered that the named plaintiffs receive "fresh consideration of their requests for a religious accommodation by a central citywide panel consisting of representatives of the Department of Citywide Administrative Services, the City Commission on Human Rights, and the Office of the Corporation Counsel," and that that panel adhere to "standards established by Title VII of the Civil

---

[2]   This Statement of Facts is derived from the allegations in the Amended Complaint. The material allegations set forth therein are assumed to be true for purposes of this motion to dismiss only. A copy of the Amended Complaint is attached as Exhibit A to the Minicucci Declaration.

[3] The subsequent September 15, 2021 Order states, "Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law." *See* Exh. C.

Rights Act of 1964, the New York Human Rights Law, and the New York City Human Rights Law." *Id*. ¶ 132.

Consistent with the Second Circuit panel's Order, the Citywide Panel[4] reviewed the named plaintiffs' applications for religious exemptions from vaccination. *Id*. ¶ 133. DOE went further than what was ordered by allowing *all* of its employees who had applied for a religious exemption and been denied through the arbitration award and appeal process to reapply through the Citywide Panel. *Id*. ¶134. The Citywide Panel reviewed all of the applications submitted to it by the named plaintiffs within two weeks, consistent with the Second Circuit's Order, and rendered decisions to each of the named plaintiffs. *Id*. ¶¶146-47. The Citywide Panel granted one of the named plaintiffs' accommodation requests, and denied the remainder of named plaintiffs' applications. *Id*. ¶147. The Citywide Panel issued explanations for their decisions regarding each of the named plaintiffs. *See generally id*. ¶¶155, 158; *see also* Dkt. 92-1.[5] The one named plaintiff whose application was granted, William Castro, is an administrator who is able—and now

---

[4]     The Citywide Panel was created in response to the DOHMH Commissioner's October 20, 2021 Order requiring all City employees to show proof of at least one dose of a COVID-19 vaccine by 5:00 p.m. on October 29, 2021. The Citywide Panel considers appeals filed by employees whose accommodation requests have been denied by the City agency for which they work.

[5]     The Court may take judicial notice of the Citywide Panel's explanations regarding its decisions with respect to the named plaintiffs' accommodation requests because they are "not subject to reasonable dispute" in that they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(3). Moreover, the Citywide Panel's explanations are incorporated by reference in, and are integral to, the Amended Complaint and may be considered for that reason as well. *See Jadoo v. City of N.Y.*, No. 95-CV-3540, 1997 U.S. Dist. LEXIS 14950, at *6 (E.D.N.Y. Sep. 29, 1997) (considering plaintiff's termination letter on a 12(b)(6) motion because it was incorporated by reference); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (Even "[w]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint") (internal quotation marks omitted). Indeed, plaintiffs filed the Citywide Panel's explanations on the docket (at Dkt. 92-1) and they directly quote from them throughout the Amended Complaint. *See*, *e.g.*, Am. Compl. ¶¶ 512, 536, 569, 592, 626.

required—to perform work remotely without entering a DOE building.  Am. Compl. ¶¶ 248-50, 281; Dkt. 92-1.  With just one exception,[6] in each instance in which a named plaintiffs' request was denied,[7] the Citywide Panel explained that regardless of the particular individual's religious beliefs, granting the request would pose an "undue hardship" on DOE.  Am. Compl. ¶ 158; Dkt. 92-1.  As the Citywide Panel explained, each of these individuals was a classroom teacher who "could not physically be in the classroom while unvaccinated without presenting a risk to the vulnerable and still primarily unvaccinated student population".  Dkt. 92-1; *see also* Am. Compl. ¶¶ 218, 229 (Kane); ¶ 284 (Chu); ¶ 326 (Di Capa); ¶ 354 (Gladding); ¶ 375 (Nwaifejokwu); ¶ 396 (Romero); ¶ 417 (Smith); ¶ 448 (Solon);[8] ¶ 512 (Keil); ¶¶ 516, 536 (De Luca); ¶¶ 540, 569 (Delgado); ¶¶ 574, 592 (Strk); ¶¶ 599, 626 (Buzaglo); ¶ 633 (Weber).

The named plaintiffs whose applications were denied by the Citywide Panel were informed that they had until December 28, 2021 to opt to extend their leave without pay with health

---

[6]     With respect to Plaintiff Clark, the Citywide Panel voted to affirm DOE's denial of plaintiff's accommodation request because it determined that plaintiff's religious beliefs, which the panel "d[id] not question," were "not preventing [her] from vaccination," rather, Plaintiff Clark's "decision not to vaccinate [came] from non-religious sources," and "[s]upplemental questions further support[ed] the conclusion, at bottom, that [Plaintiff Clark] [made] fact-based choices about foods and medicines."  Dkt. 92-1 at p. 3. The panel further indicated that "[o]ne panel member would also [have] den[ied] the reasonable accommodation on the grounds of undue hardship," and "[o]ne panel member . . . would vote to grant the accommodation sought." *Id.*

[7]     Plaintiff Ruiz-Toro's appeal was granted by the arbitrator, so there was no Citywide Panel appeal for her.  Am. Compl. ¶ 488.  Plaintiff Grimando did not appeal DOE's denial of her accommodation request to the arbitrator, so her request was not subject to the arbitrator appeal process and she was thus not eligible to submit an application to the Citywide Panel. *Id.* ¶¶ 680-81.  Plaintiff Bryan was not among the original named plaintiffs; her application remains pending before the Citywide Panel.  *Id.* ¶¶ 727-28.  Plaintiff Giammarino did not submit an application through DOE's online portal, despite having the opportunity to do so. *Id.* ¶ 750. Plaintiff LoParrino also did not submit an application through DOE's online portal, despite having the opportunity to do so.  *Id.* ¶ 778.

[8]     According to DOE records, plaintiff Solon has since been vaccinated and has returned to active status.

benefits, or submit proof of vaccination and state their intent to return to work.[9]  Am. Compl. ¶ 162.  They were told that if they did neither, the would be subject to termination *Id*. ¶¶ 162, 201. Consistent with DOE's Chancellor's Regulation C-603(6) (which predates the COVID-19 pandemic), individuals on unpaid leave—who continue to receive their benefits from DOE—are not permitted to obtain gainful employment from another employer while on leave.  *Id*. ¶ 202; Dkt. 106-3.

## ARGUMENT

Plaintiffs bring thirty causes of action, including six constitutional claims, under the Free Exercise, Establishment, Procedural Due Process, Substantive Due Process, Equal Protection and Supremacy clauses of the United States Constitution; twenty-one as-applied challenge causes of action—one for each named plaintiff; a Section 1983 cause of action; and causes of action for alleged violations of the New York City Human Rights Law and New York State Human Rights Law.  For the reasons provided herein, each of plaintiffs' claims fails as a matter of law.

## POINT I

## PLAINTIFFS' CONSTITUTIONAL CLAIMS FAIL

### A.     Plaintiffs' Free Exercise Claim Fails Because a Rational Basis Exists for Enforcement of the Mandate

As an initial matter, the Second Circuit Court of Appeals found the Mandate to be constitutional on its face.  *Kane v. De Blasio*, 19 F.4th 152, 166 (2d Cir. Nov. 28 2021).  "In order to prevail on a Free Exercise Clause claim, a plaintiff generally must establish that 'the object of

---

[9]     The December 28, 2021 deadline was temporarily stayed by a single judge of the Court of Appeals until a full motions panel considered the case and denied the requested injunction. Plaintiffs have now been notified that their employment will be terminated by February 18, 2022.

[the challenged] law is to infringe upon or restrict practices because of their religious motivation,' or that its 'purpose . . . is the suppression of religion or religious conduct.'" *Okwedy v. Molinari*, 69 Fed. Appx. 482, 484 (2d Cir. 2003) (*citing Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993)). "It is not a violation of the Free Exercise Clause to enforce a generally applicable rule, policy or statute that burdens a religious practice as long as the government can 'demonstrate a rational basis for [the] enforcement' of the rule, policy or statute, and the burden is only an incidental effect, rather than the object, of the law." *Id.*; *see also Employment Div. v. Smith*, 494 U.S. 872, 879 (1990) ("the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)") (internal quotations omitted). As such, "[w]here the government seeks to enforce a law that is neutral and of general applicability . . . it need only demonstrate a rational basis for its enforcement." *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002); *see also Smith*, 494 at 879.

Crucial to the instant case is the Supreme Court's holding that when the government acts as an employer, it has more leeway in regulating its employees and curtailing their rights than it does when it acts as a sovereign. *See Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 598-600 (2008) ("[T]here is a crucial difference, with respect to constitutional analysis, between the government exercising 'the power to regulate or license, as lawmaker,' and the government acting 'as proprietor, to manage [its] internal operation.'") (citations omitted).

To begin with, the gravamen of plaintiffs' Amended Complaint is that plaintiffs have been denied their preferred religious accommodation, which would allow them, as unvaccinated DOE teachers and paraprofessionals, to have direct, repeated and lengthy contact,

within a school setting, with students, many of whom are themselves unvaccinated.  They contend that this denial constitutes a First Amendment violation but their logic is entirely inconsistent with Free Exercise jurisprudence.

First, an employee is not entitled to the accommodation of his or her choice.  *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002).  The Second Circuit holds that "when an employee has a genuine religious practice that conflicts with a requirement of employment, his or her employer, once notified, must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship."  *Id*.  Further, courts have declined to find an employer's "failure to accommodate" an employee's religious activity, without more, to constitute a violation of the Free Exercise clause.  *See Smith*, 494 U.S. at 879-880.

In any event, the policy at issue here—the Mandate—applies equally to all DOE employees.  As such, the relevant inquiry is whether there is a rational basis for the enforcement of the Mandate.  That hurdle is easily met.  The CDC has recommended that school teachers and staff be "vaccinated as soon as possible" because vaccination is "the most critical strategy to help schools safely resume full operations".  *See* Minicucci Decl., Exh. D.[10]  Thus, the Mandate easily meets the rational basis requirement, as the Second Circuit has found. *See Kane v. De Blasio*, 19 F.4th 152, 166 (2d Cir. 2021).  Notably, the Mandate itself allows for both religious and medical accommodations.  *Id*.

Despite this, plaintiffs argue that the Mandate is "not neutral or generally applicable" and therefore strict scrutiny applies.  Am. Compl. ⁋ 792.  Plaintiffs are incorrect.  First,

---

[10]  *See  Id*.  Exh.  D  also  available  at:  https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html last visited on February 14, 2022.

as the Second Circuit in *this* case has already noted, "[t]he Vaccine Mandate, in all its iterations, is neutral and generally applicable." *Kane v. De Blasio*, 19 F.4th 152, 166 (2d Cir. 2021).

It is well established that "where the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason." *Smith*, 494 U.S. at 884. Accordingly, "[a] law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993). Under strict judicial scrutiny, a law is unconstitutional unless the government can show that it is necessary to achieve a compelling interest. *See Miller v. Johnson*, 515 U.S. 900, 920 (1995). However, as noted above, the Mandate is applicable to all DOE employees and is facially neutral. As such, the obligation to comply with these standards does not invoke the strict scrutiny standard. *See Fifth Ave. Presbyterian Church*, 293 F.3d at 574.

Moreover, plaintiffs' argument that the Mandate is not facially neutral because it "eliminates the right to opt out of vaccination," *see* Am. Compl. ⁋ 792, is factually incorrect. The Mandate specifically states that medical and religious accommodations are permitted. Further, a policy is facially neutral unless it is "specifically directed at [a] religious practice." *See Employment Div. v. Smith*, 494 U.S. 872, 878 (1990). The Mandate is facially neutral because it makes no mention of religious practices. Indeed, "if prohibiting the exercise of religion . . . is not the object . . . but merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended." (*Employment. Div. v. Smith*, 494 US 872, 878 (1990)). Thus, strict scrutiny does not apply.[11]

---

[11]    Plaintiffs spend several paragraphs complaining about what they term the "Exemption Standards," *see* Am. Compl. ⁋⁋ 800-804, 813, which appears to refer to provisions included in the Impasse Arbitrator's decision regarding application of religious accommodation requests.

The case cited by plaintiffs in the Amended Complaint, *U.S. Navy Seals 1-26 v. Biden*, No. 4:21-CV-1236, 2022 U.S. Dist. LEXIS 2268 (N.D. Tex. Jan. 3, 2022), is readily distinguishable, pending in a different district, and currently on appeal (*see* 5th Cir. Dkt. 22-10077).  First, in that case, the Court held that the vaccine mandate imposed by the U.S. Navy was not "generally applicable" in part because the individuals seeking religious exemptions were treated less favorably than those seeking medical exemptions, in that the "medically exempt, unvaccinated servicemembers [were] immediately deployable while unvaccinated servicemembers with religious objections [were] not." *Id*. at *31.  The same is not true here—teachers granted medical exemptions to the vaccine Mandate are also not permitted into DOE school buildings, just like those with religious exemptions, pursuant to the Mandate.  Moreover, the vaccine mandate at issue *U.S. Navy Seals 1-26* was implemented via a six-phase, fifty-step process that involved among other things, the use of a "prepared disapproval template" from which the administrator worked, and zero religious accommodation applications were granted. *Id*. *6-7.  The same cannot be said of the Citywide Panel process here, which involves a panel of three individuals, as noted by the Second Circuit, who consider each application and the materials submitted, and which has granted those applications that that met the standards for a religious accommodation under Title VII.

Finally, plaintiffs also argue that the Mandate is unconstitutional because it requires that all DOE employees be vaccinated, regardless of work location whereas it requires vaccination of non-DOE employees only if they work in person.  Am. Compl. ¶ 795.  However, in the context

---

However, as plaintiffs admit, each of the named plaintiffs—and all DOE employees who were denied accommodation by the arbitrator process and on appeal—were permitted to reapply for accommodations through the Citywide Panel.  Am. Compl. ¶¶ 133-34, 146-47.  Thus, plaintiffs' discussion of the so-called "Exemption Standards" is moot and should be ignored.

of constitutional claims arising from public employment, plaintiffs are required to demonstrate that any alleged treatment that is different from other similarly situated employees was *based on membership in a specific class that has been granted legal protection.  See Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 605 (2008); *see also Analytical Diagnostic Lab, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) ("The Supreme Court's decision in *Engquist* ... eliminated class-of-one claims for government employees."); *Staskowski v. Cty. of Nassau*, 410 F. App'x 420 (2d Cir. 2011) (summary order); *Conyers v. Rossides*, 558 F.3d 137, 151–52 (2d Cir. 2009); *Massi v. Flynn*, 353 Fed. Appx. 658, 660 (2d Cir. 2009) (summary order); *Porr v. Daman*, 299 Fed. Appx. 84, 86 (2d Cir. 2008).  Plaintiffs have failed to do so here—they admit that they are subject to the Mandate, just as all DOE employees are.  *See also infra* pp. 22-23.

Accordingly, plaintiffs' Free Exercise Claim must be dismissed.

### B. Plaintiffs' Establishment Clause Claim Fails Because the Mandate Has Secular Purpose, Does Not Inhibit Religion, and Does Not Foster Government Entanglement with Religion

To survive an Establishment Clause challenge, defendants' conduct in issuing the Mandate: (1) must have a secular purpose; (2) must neither advance nor inhibit religion as its primary effect, and (3) must not foster an excessive government entanglement with religions.  *Lemon v. Kurtzman*, 403 U.S. 602, 612-13, 91 S. Ct. 2105, 29 L. Ed. 2d 745 (1971).

Here, the Mandate adheres to all three of these requirements.

First, it is clear that the purpose of the Mandate is secular in nature.  Importantly, "[a] governmental action will only be found to lack a secular purpose where 'there [is] no question that the statute or activity was motivated wholly by religious considerations.'" *Berkowitz v. E. Ramapo Cent. Sch. Dist.*, 932 F. Supp. 2d 513, 523 (S.D.N.Y. 2013) (quoting *Lynch v. Donnelly*, 465 U.S. 668, 680 (1984)).  Here, there can be no legitimate dispute that the Mandate was created to address the enormous public health concern posed by COVID-19 to school children, consistent

11

with federal, state and local guidance, and not motivated by religious considerations in any way, much less "wholly" so.

Second, the Mandate does not have the primary effect of advancing or inhibiting religion. "In reviewing the effect of a challenged law or policy, courts consider whether the government practice has 'the effect of communicating a message of government endorsement or disapproval of religion.'" *Berkowitz*, 932 F. Supp. 2d at 524 (quoting *Lynch*, 465 U.S. at 692 (O'Connor, J., concurring)). Here, again, the effect of the Mandate is indisputably to communicate a public health measure, consistent with federal, state and local policy, that vaccination is the best way to ensure the health and safety of New York City school children. Moreover, the Mandate expressly permits religious accommodations. It therefore cannot be said to have the effect of communicating a message of either government endorsement or disapproval of religion or advancing or inhibiting the practice of any religion.

Finally, "[t]he third prong of the *Lemon* test asks whether the policy or law 'foster[s] intolerable levels of interaction between church and state or the continuing involvement of one in the affairs of the other.'" *Berkawitz* at 525 (quoting *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 355 (2d Cir. 2007)). "Entanglement only becomes 'excessive' when it 'advances or inhibits religion.'" *Id*. Here, plaintiffs argue that under the Mandate, "adherents to the Christian Science faith and individuals whose individual anti-vaccination beliefs accord with the orthodox statements of clergy in a hierarchical faith receive a government-created advantage in . . . receiving religious exemptions" whereas "[o]thers are disfavored." Am. Compl. ⁋ 827. However, plaintiffs are harking back to the decisions made by the now-defunct and moot Arbitration process. The Citywide Panel decisions, which govern, make clear that the Panel did not question any named plaintiffs' sincerely-held religious beliefs. Dkt. 92-1. As a result, it is

inescapable that (a) the Mandate is silent as to religious beliefs and it therefore does not favor one religion over another and (b) the Citywide Panel decisions also did not favor one religion over another, as it did not question the sincerity named plaintiffs' religious beliefs whatsoever, instead basing any denials on undue hardship or the existence, in one plaintiff's case, of underlying non-religious justifications for refusing to be vaccinated.

Finally, plaintiffs argue that because the Citywide Panel includes "attorneys from the Office of the Corporation Counsel, which is the law firm that represents the City of New York and DOE," it "violates the Establishment Clause [because] it involves the Defendants not only in the administrative determination of Plaintiffs' claims to religious exemption and accommodation . . . but also in the process of defending those . . . same denials in adversary judicial proceedings." Am. Compl. ¶ 829.  This is nonsensical.  The City does not dispute that City employees are now making the determinations regarding whether DOE employees who apply for religious exemptions or accommodations from the Mandate receive those exemptions or accommodations. This is logical, as the City is the employer receiving the accommodation requests.  The City is aware of no cases or law suggesting that merely by virtue of the employer making decisions regarding which accommodation requests should be granted, it is in violation of the Establishment Clause.  Such a conclusion would seem to require that all employers outsource accommodation request decisions to some third party—which is neither contemplated by, nor consistent with, the Establishment Clause or its jurisprudence.  Moreover, as plaintiffs themselves admit, the three-member Citywide Panel is not *only* made up of a Corporation Counsel attorney[12]—consistent with the Second

---

[12]     Moreover, the Corporation Counsel attorney representative on the Citywide Panel is not assigned to this litigation.

Circuit's direction, it also includes a member from the Department of Citywide Administrative Services and the Commission on Human Rights.[13]  *See* Am. Compl. ¶ 132.

For these reasons, plaintiffs' Establishment Clause claim fails and must be dismissed.

### C.  Plaintiffs' Procedural Due Process Rights Have Not Been Violated

Plaintiffs allege that their procedural due process rights were violated because the Mandate "denies Plaintiffs and other DOE employees a meaningful right to be heard by leaving them in the position of not knowing what material to present to the adjudicator to make a decision or what the grounds for appeal might be."  Am. Compl. ¶ 832.  Plaintiffs allege that the Citywide Panel "has not cured" the supposed issues identified with respect to the previously used (and now superseded) Arbitrator's review process.  *Id.* ¶ 834.  They allege that the Citywide Panel, among other things, "simply rubber-stamped Defendants' original decisions with no explanation"— despite the fact that, among other things, the Citywide Panel overturned one of DOE determinations—and that the "hasty emails" plaintiffs received revealed that the Citywide Panel allegedly "failed thoroughly to review the applications, applied unconstitutional standards, and failed to provide an opportunity to be heard," *id.* ¶¶ 834, 837, even though the emails strictly follow the requirements of Title VII.  *See* Dkt. 92-1.

Even accepting as true for the purposes of this motion plaintiffs' highly inaccurate and misleading allegations, which are contradicted by their own allegations elsewhere in the Amended Complaint and by the documents they themselves have filed onto the docket, plaintiffs' procedural due process claims still fail to state a claim.

---

[13]    Plaintiffs also suggest that Corporation Counsel attorneys were present during the Zoom arbitration hearings.  That is factually inaccurate—no one from the Office of the Corporation Counsel participated.  Instead, DOE attorneys were involved in those hearings.

"In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).  Thus, "[t]o state a due process violation— procedural or substantive— Plaintiff must first show a deprivation of a constitutionally protected property or liberty interest." *Berrios v. State Univ. of N.Y.*, 518 F.Supp.2d 409, 418 (E.D.N.Y. 2007) (citing *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1061-62 (2d Cir. 1993), *cert. denied*, 510 U.S. 865, 114 S. Ct. 185, 126 L. Ed. 2d 144 (1993). "It is only when such a right is established that the court may turn to a discussion of whether there has been a deprivation of that right without due process." *Id*.

First, it is well established that DOE teachers do not have a property interest in their positions unless they are tenured.  *See Biehner v. City of NY*, No. 19-CV-9646 (JGK), 2021 U.S. Dist. LEXIS 44003, at *2, *9 (S.D.N.Y. Mar. 9, 2021) ("The plaintiff does not have a property interest in her position as a probationary teacher," and earlier defining "probationary teacher" as "meaning she had not been granted tenure."); *cf Arroyo v. Dept. of Educ.*, 19 Civ. 7416 (ER), 2020 U.S. Dist. LEXIS 141426, at *22 (S.D.N.Y. Aug. 6, 2020) ("The Second Circuit has determined that 'employee[s] guaranteed continued employment absent 'just cause' for discharge,' such as tenured teachers, 'ha[ve] a property interest in continued employment.'") (quoting *Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002) and citing other cases).

Here, the Amended Complaint contains allegations that five of the named plaintiffs who are classroom teachers are tenured, *see* Am. Compl. ¶¶ 227 (Kane), 445 (Smith), 495 (Keil), 540 (Delgado), 574 (Strk), but it is silent as to the remaining nine named plaintiff teachers.  As a result, the procedural due process claims of those remaining nine named plaintiff teachers (Chu,

Di Capua, Gladding, Nwaifejokwu, Romero, Solon, De Luca, Buzaglo, Weber), and any putative class members who are non-tenured teachers, must be dismissed on this basis alone.

Second, the Amended Complaint also fails to satisfy the other requirement of a procedural due process claim as to all of the named plaintiffs: it fails to plausibly allege that plaintiffs were deprived the process owed to them.  Plaintiffs' own allegations show that they were given an opportunity to submit materials in support of their accommodation requests to the Citywide Panel; they were given the standards which were being applied as well as an opportunity to respond to additional questions and submit additional materials; those materials and responses were carefully considered by the Citywide Panel; and the Citywide Panel issued written explanations for each of the named plaintiffs, spelling out exactly how it reached the conclusions it did.  *See*, *e.g.*, Am. Compl. ¶¶ 235, 236, 263, 265, 271, 292, 293, 297, 314, 317, 318-19, 328, 335, 362, 367, 368, 382-83, 408-09, 426, 428, 452, 454, 483, 498, 500, 501-03, 511-12, 522-36, 553-69, 582-92, 613-26, 642-52, 669, 680, 693-95, 712-21, 727-28, 750, 769-73, 778-79.  *See Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 213 (2d Cir. 2003) (finding that where plaintiff's CBA provided a "grievance and arbitration procedure" and plaintiff "took advantage of these procedures by filing two grievances that were considered by the Board and by pursuing arbitration," due process was satisfied, and noting that "[c]ourts have held that such post-deprivation procedures, providing for a hearing to contest a challenged employment decision, are sufficient to satisfy due process.") (citations omitted).[14]

---

[14]    To the extent plaintiffs argue that their procedural due process rights were violated merely because the Citywide Panel did not hold additional hearings before evaluating plaintiffs' accommodation requests, that argument also fails.  As the Second Circuit has written, in the context of a school district's across-the-board mandatory retirement age for teachers (which is analogous to an across-the-board vaccine requirement), "we can see no purpose for a hearing if appellant was retired under an across-the-board, mandatory retirement system. And even if a discretionary system was employed, we would be constrained to follow *Johnson*, supra, and deny this claim. In

Finally, as the Second Circuit noted, plaintiffs were entitled to an accommodation process that satisfied Title VII.  *See* Am. Compl. ¶ 132.  It is well established that under Title VII, "when an employee has a genuine religious practice that conflicts with a requirement of employment, his or her employer, once notified, must offer the aggrieved employee a reasonable accommodation, ***unless doing so would cause the employer to suffer an undue hardship***."  *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002).   Pursuant to Title VII case law, "[a]n accommodation is said to cause an undue hardship whenever it results in 'more than a de minimis cost' to the employer." (*Baker v. Home Depot*, 445 F.3d 541, 548 (2d Cir. 2006) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977)).

Here, in virtually each instance[15] in which the Citywide Panel upheld DOE's denial of a named plaintiff's accommodation request, the Panel explained that it was because the accommodation request posed an "undue hardship" on DOE.  Specifically, the Panel explained that each of these individuals was a "classroom teacher" who "could not physically be in the classroom while unvaccinated without presenting a risk to the vulnerable and still primarily unvaccinated student population".  Dkt. 92-1.  It is self-evident that keeping potentially hundreds

_____

*Johnson*, we held that a hearing is not required because the benefits of holding such a hearing are outweighed by the burdens imposed upon the state by requiring a hearing in every case."  *Palmer v. Ticcione*, 576 F.2d 459, 464 (2d Cir 1978) (citing *Johnson v. Lefkowitz*, 566 F.2d 866, 869 (2d Cir. 1977)).  Here, too, there would be significant burdens to requiring a hearing for every religious exemption request submitted by City employees.

[15]     The only named plaintiff whose accommodation request was denied by the Citywide Panel for a reason other than "undue hardship" was Plaintiff Clark, as to whom the Citywide Panel determined that her religious beliefs, which the panel "d[id] not question," were "not preventing [her] from vaccination," rather, Plaintiff Clark's "decision not to vaccinate [came] from non-religious sources." Dkt. 92-1 at p. 3.  In other words, the Panel, applying  the Title VII standards, found that Plaintiff Clark did not satisfy the first prong of a Title VII accommodation claim: she did not show that she had "a genuine religious practice that conflicts with a requirement of employment."  *Cosme*, 287 F.3d at 158.

or thousands of classroom teachers who cannot teach in the classroom on payroll would impose significant, and in any event, far more than "de minimis," cost to DOE.  Moreover, the threat to the health and safety of school children posed by having unvaccinated teachers in the classroom also supports the Citywide Panel's determination that plaintiffs' accommodation request would impose an undue burden.  "Where . . . the proposed accommodation threatens to compromise safety in the workplace, the employer's burden of establishing an undue burden is light indeed."  *Kalsi v. N.Y. City Tr. Auth.*, 62 F Supp 2d 745, 758 (E.D.N.Y. 1998).   Indeed, "[s]afety considerations are highly relevant in determining whether a proposed accommodation would produce an undue hardship . . . ." *Id.* (quoting *Draper v. U.S. Pipe & Foundry Co.*, 527 F.2d 515, 521 (6th Cir. 1975)).  Here, as the Citywide Panel noted in its explanations to the named plaintiffs, permitting unvaccinated teachers to remain in the classroom would put at risk the "vulnerable and still primarily unvaccinated student population" in New York City Schools.  Dkt. 92-1.  This satisfies defendants' undue hardship burden.

Accordingly, plaintiffs' procedural due process claim is insufficient as a matter of law and should be dismissed.

### D.     Plaintiffs Have Failed to Plausibly Allege a Substantive Due Process Violation

"'Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective.'" *Maniscalco v. N.Y. City Dept. of Educ.*, 2021 U.S. Dist. LEXIS 184971, at *4-5 (E.D.N.Y. Sep. 23, 2021) (quoting *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2012)), *aff'd,* 2021 U.S. App. LEXIS 30967, at *1 (2d Cir. Oct. 15, 2021).  "To analyze a claim under substantive due process, courts perform a two-step analysis." *Id.* at *5 (citing *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021)).

18

The first step is "to identify the constitutional right at stake." *Id.* (quoting *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995)). "Not all rights are entitled to protection[;] Only rights that are fundamental or implicit in the concept of ordered liberty are accorded protection under substantive due process." *Id.* (citing *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997); *Hurd*, 984 F.3d at 1088). As the Court in *Maniscalco* held in the context of the same DOE vaccine Mandate at issue here, plaintiffs are "not being denied their fundamental right to pursue their profession."[16]  2021 U.S. Dist. LEXIS 184971, at *7.   That is because "the Supreme Court, [the Second] Circuit, and the other Circuits addressing the issue have all indicated that the right of occupational choice is afforded Due Process protection only when a plaintiff is completely prohibited from engaging in his or her chosen profession." *Id.* (quoting *Hu v. City of New York*, 927 F.3d 81, 102 (2d Cir. 2019)). Here, the Mandate "may ultimately disqualify plaintiffs from employment in their positions at public schools in New York City, but 'the Due Process Clause secures the liberty to pursue a calling or occupation, and not the right to a specific job.'" *Id.* (quoting *Parsons v. Pond*, 126 F. Supp. 2d 205, 207 (D. Conn. 2000)). And "although defendants may render it more difficult for [plaintiffs] to pursue their calling," the plaintiffs "are not absolutely being barred from doing so[,]" because, [f]or example, [they] may pursue teaching or paraprofessional jobs at private schools in New York City, public and private schools outside of New York City, daycares or early childhood education centers, tutoring centers, adult or continuing education centers, virtual institutions, or within home settings." *Id.* at *7-8.

---

[16]    Plaintiffs assert that the right they are seeking to protect is the "right to be free from the forced or coerced administration of medical products, especially medical products that are experimental or could cause them harm."  Am. Compl. ¶ 842.  This assertion is patently invalid, as no one is tying teachers down and administering the vaccine against their will.  Thus, defendants understand plaintiffs to be alluding to the fact that if plaintiffs do not get vaccinated, they risk losing their jobs.

The second step in analyzing a substantive due process claim requires that plaintiffs "'demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience' such that the Due Process Clause 'would not countenance it even were it accompanied by full procedural protection.'" *Maniscalco*, 2021 U.S. Dist. LEXIS 184971, at *7-8 (quoting *Hurd*, 984 F.3d at 1087).   As the Court in *Maniscalco* held, "plaintiffs cannot meet that burden." *Id*. at *8.   That is because vaccine mandates have been held constitutional in prior precedent.  For one, "[i]n *Jacobson v. Massachusetts*, 197 U.S. 11, 26-27, (1905), the Supreme Court held that a vaccine mandate enacted by state of Massachusetts without any exceptions for adults - including for medical or religious reasons - was constitutional, and not a deprivation of any right secured by the U.S. Constitution." *Maniscalco* at *8.  Under *Jacobson*, "'the state may curtail constitutional rights in response to a society-threatening epidemic so long as the measures have at least some 'real or substantial relation' to the public health crisis and are not 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law.'" *Id*. (quoting *Columbus Ale House, Inc. v. Cuomo*, 495 F. Supp. 3d 88, 92 (E.D.N.Y. 2020) (in turn quoting *Jacobson*, 197 U.S. at 38))).  As Judge Cogan noted in *Maniscalco*, "[r]equiring that DOE employees take a dose of ivermectin as a condition of employment might qualify as 'a plain, palpable invasion' of such rights, not having any real relation to the public health crisis[,] . . . [but] mandating a vaccine approved by the FDA does not."[17] *Id*.

Accordingly, plaintiffs' substantive due process claim also fails.

---

[17]    See *infra* Point I(F) addressing plaintiffs' ludicrous argument that the COVID-19 vaccines available in New York City have not been approved.  The Court may take judicial notice that they have been.

E.     **Plaintiffs' Equal Protection Claim Fails for the Same Reasons as Their Substantive Due Process Claim**

""To maintain an equal protection claim," a plaintiff must "show adverse treatment of individuals compared with other similarly situated individuals and that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Miner v. Clinton County*, 541 F.3d 464, 474 (2d Cir. 2008). "Unless a statute or state action provokes 'strict judicial scrutiny because it interferes with a fundamental right or discriminates against a suspect class, it will ordinarily survive an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose.'" *Maniscalco*, 2021 U.S. Dist. LEXIS 184971, at *11 (quoting *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450 (1988)), *aff'd*, 2021 U.S. App. LEXIS 30967, at *1 (2d Cir. Oct. 15, 2021).

Here, plaintiffs allege that the Mandate violates the Equal Protection Clause because it allegedly "discriminates against unvaccinated people who need to exercise their fundamental rights to refuse experimental vaccines that conflict with their sincerely held religious beliefs." Am. Compl. ¶ 859. They further allege that "[a]s applied through the Exemption Standards and other official policy of DOE, the Mandate also discriminates against minority religious viewpoints." *Id*. ¶ 860. However, plaintiffs' Equal Protection claim fails for the simple reason that the Citywide Panel did not deny any of the named plaintiffs' accommodation requests on the basis of plaintiffs' religions or sincerely held religious belief. Instead, the Panel rejected those applications that posed an undue hardship on the City, or in one instance, because it determined that the individual's refusal to be vaccinated was based not on her religion, but on "non-religious sources." *See* Dkt. 92-1. As a result of this fact alone, plaintiffs' equal protection claim fails.

21

In addition, plaintiffs' claim also fails because they fail to identify a legally protected class that defendants treated differently than others.  Plaintiffs identify two potential classes of people: "unvaccinated people who . . . refuse experimental vaccines" and individuals with "minority religious viewpoints."  Am. Compl. ⁋⁋ 859-60.  Putting aside whether either of these could plausibly constitute a protected class, the fact of the matter is that the vaccine Mandate and the religious accommodation process applied equally to all DOE employees, regardless of their religious viewpoint or beliefs about vaccines.  As such, their claim fails for this reason as well. *Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994) ("[I]t  is axiomatic that [to establish an equal protection violation] a plaintiff must allege that similarly situated persons have been treated differently.").  Moreover, it is improper to compare plaintiffs to City employees who do not work in at DOE because of categorical differences that exist between the positions. *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005) (to satisfy the "similarly situated" element of an equal protection claim, "the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high.").  Plaintiffs have alleged not such "similarly situated" persons here.

In fact, the Supreme Court specifically ruled out equal protection claims challenging different applications of discretion to different employees because permitting such would serve to constitutionalize all decisions by a public employer concerning its employees:

> [If] plaintiffs need not claim discrimination on the basis of membership in some class or group, but rather may argue only that they were treated by their employers worse than other employees similarly situated, any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for a federal constitutional claim.

*Engquist*, 553 U.S. 607-608.  Plaintiffs here are attempting to do *precisely* what the Supreme Court said they cannot.  They are attempting to constitutionalize the discretionary decisions of the executive branch.  Fundamentally, they are attempting to argue that they are treated differently than other employees, but ignore that any such disparate treatment is not based on membership in a protected class—i.e., they are arguing that remote workers are treated better than in-person teachers, but remote and in-person are not protected classes.  This simply is not a constitutional violation.

Nevertheless, even applying the rational basis test to plaintiffs' argument, their claim would still fail because the City has articulated a rational basis for treating plaintiffs differently than other similarly-situated City employees.  Unlike non-DOE City employees, inarguably, DOE employees maintain close indoor contact with children, in congregate settings, and many of those children are presently ineligible or unable themselves to get vaccinated.  Moreover, it is improper to compare plaintiffs to City employees who do not work at DOE because of categorical differences that exist between the positions.  *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005) (explaining that to satisfy the "similarly situated" element of an equal protection claim, "the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high").

Plaintiffs' claim fails because even if defendants engaged in impermissible selective treatment—which they did not—plaintiffs have failed to plausibly allege that defendants' conduct was not rationally related to a legitimate governmental purpose.  DOE employees maintain close indoor contact with children, in congregate settings, and many such children are unvaccinated.  *See Maniscalco*, 2021 U.S. Dist. LEXIS 184971, at *14 ("It is not irrational to conclude that such measures would not adequately protect unvaccinated children in a school

setting, especially as some of these children will have preexisting conditions that make them especially vulnerable.").

Accordingly, plaintiffs have failed to state an equal protection claim.

**F.**    **Plaintiffs' Supremacy Clause / Emergency Use Authorization Claim Is Factually Inaccurate and Legally Insufficient**

Plaintiffs allege that the Mandate is "contrary to United States law, and thus preempted and invalid," because it is allegedly inconsistent with the United States Food and Drug Administration's protocol regarding Emergency Use Authorization.  This argument is both factually inaccurate and legally insufficient to state a claim.  First, plaintiffs' contention that the vaccines in question are not fully FDA-approved is flatly wrong.  Second, the vaccine Mandate does not violate any federal law.

**1.**    **The Pfizer BioNTech and Moderna COVID-19 Vaccines are Both Fully-Approved Under their Respective Brand Names, "Comirnaty" and "Spikevax."**

Plaintiffs' allegations regarding the use of "experimental" and/or "unauthorized" products under Emergency Use Authorization (EUA) amount to nothing more than repetition of debunked conspiracy theories concerning the trademarked 'brand name' of the Pfizer BioNTech COVID-19 vaccine, "Comirnaty."  *See* Am. Compl. ¶ 802. In a directly on-point decision, the District Court in *Johnson v. Brown*, No. 3:21-cv-1494-SI, 2021 U.S. Dist. LEXIS 200159 (D. Or. Oct. 18, 2021) examined these claims in depth, and vigorously rejected them. Plaintiffs' misunderstanding apparently arises from the fact that the Pfizer BioNTech COVID-19 vaccine is marketed under the trademarked brand name "Comirnaty." The FDA has clearly stated that "Comirnaty" and "Pfizer BioNTech COVID-19 Vaccine" are the exact same vaccine, with the

same formulation, and they may be used interchangeably, without presenting any safety or effectiveness concerns.[18]

Branding or trademarking names for vaccines is a common industry practice among pharmaceutical companies, and each COVID-19 vaccine available in the U.S. has a distinctive trademarked and/or brand name. Pfizer's COVID-19 vaccine is marketed as "Comirnaty," Moderna's COVID-19 vaccine is marketed under the brand name "Spikevax" and Johnson & Johnson's COVID-19 vaccine is marketed as "Janssen." Accordingly, plaintiffs' claim that Comirnaty and the Pfizer BioNTech COVID-19 vaccine are somehow "different" and "unauthorized" is meritless.[19]

Plaintiff's claim that these vaccines are "experimental" or unauthorized, and that the vaccine mandate violates the supremacy clause, is equally incorrect. The FDA granted full approval for the Pfizer BioNTech COVID-19 vaccine for individuals over the age of 16 almost six months ago, on August 23, 2021. *See* https://www.fda.gov/news-events/press-

---

[18]     *See* Fact Sheet for Healthcare Providers Administering Vaccine (Vaccination Providers), Pfizer fact sheet:

https://www.fda.gov/vaccines-blood-biologics/qa-comirnaty-covid-19-vaccine-mrna#:~:text=%20therefore,%20providers%20can%20use%20doses%20distributed%20under%20eua%20to%20administer%20the%20vaccination%20series%20as%20if%20the%20doses%20were%20the%20licensed%20vaccine.%20for%20purposes%20of%20administration,%20doses%20distributed%20under%20the%20eua%20are%20interchangeable%20with%20the%20licensed%20doses, last accessed February 14, 2022.

[19]     *See* https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/spikevax-and-mode rna-covid-19-vaccine; *see also* https://www.janssencovid19vaccine.com/for-recipients.html, last accessed February 14, 2022.

announcements/fda-approves-first-covid-19-vaccine. The District Court in *Johnson v. Brown*

rejected a supremacy clause challenge to Oregon's vaccine mandate, for this precise reason.

Similarly, Moderna's COVID-19 vaccine, marketed under the brand-name

Spikevax, has now     been     fully-approved by the FDA. *See*https://www.fda.gov/ emergency-

preparedness-and-response/coronavirus-disease-2019-covid-19/spikevax-and   moderna-covid-

19-vaccine.   Plaintiffs therefore have two fully-approved, safe and effective COVID-19

vaccines to choose from to comply with the vaccine mandate. Plaintiffs' claims that

"Comirnaty" and the Pfizer BioNtech COVID-19 vaccine  are 'experimental' are therefore

baseless and their claim that defendants' violated the Supremacy Clause should be dismissed.

Moreover, even if the Pfizer vaccine and Moderna vaccine were not fully-

approved, the FDA's EUA approval for Pfizer's vaccine for adults still followed months of

research indicating that the vaccine is perfectly safe. Pfizer received its first EUA on December

11, 2020.   https://www.fda.gov/news-events/press-announcements/fda-takes-key-action-fight-

against-covid-19-issuing-emergency-use-authorization-first-covid-19. Pfizer renewed that EUA

on December 23, 2020, February 25, 2021, May 10, 2021, June 25, 2021 and August 12, 2021.

For these reasons, as further discussed below, any purportedly "experimental" vaccine with EUA

from the FDA could still be required pursuant to the vaccine mandate.

### 2. The Vaccine Mandate Does Not Violate Federal Regulations Regarding Informed Consent or Human Test Subjects

Plaintiffs mistakenly rely on 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III) in support of

their claim that the vaccine mandate violates federal 'informed consent' regulations. *See* Am.

Compl. ¶ 870. This argument is unavailing, because that provision: (a) only applies to vaccines

administered pursuant to EUAs (Pfizer's and Moderna's vaccines have the FDA's full, rather than

EUA, approval); (b) merely requires the party administering the vaccine (a medical professional)

provide 'informed and voluntary consent' prior to physically administering a shot; and (c) does not prohibit, in any manner, an employer from requiring a vaccine.

21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III) therefore does not apply, by its express terms, and neither preempts nor prohibits a vaccination mandate for a fully-approved vaccine. Plaintiffs' latest citation to 21 C.F.R. § 50.20 in support of their hyperbolic claim of being human "test subjects" is equally specious. *See* Am. Compl. ¶ 874. As set forth above at length, the FDA-approved Pfizer and Moderna vaccines are not "experimental medicine," and this regulation cannot apply here. Furthermore, defendants are not "investigators" as defined in that regulation, and plaintiffs are not being asked to be "test subjects," they are merely being asked to comply with a qualification for continued employment which requires them to receive an FDA-approved vaccine to protect their colleagues, and the children under their care and supervision who they profess to care about.

It bears repeating that plaintiffs are not being forced to receive eitherfully-approved COVID-19 vaccine; they are being given a choice to comply with a condition for employment. 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III) merely requires that, when administering a vaccine pursuant to an EUA, the party receiving that vaccine must be given an 'informed' choice. Although the Pfizer and Moderna vaccines are no longer administered pursuant to an EUA to for the first two doses in adults (and this provision does not apply), plaintiffs still have freedom to choose—they must simply live with the consequences of their decision.

## POINT II

## PLAINTIFFS' AS-APPLIED CHALLENGES (CAUSES OF ACTION 7-27) ALSO FAIL

### A.    The COVID-19 Vaccination Is a Condition for Employment

Since the start of the pandemic, and more specifically, since a COVID-19 vaccine has been in use, courts have found that vaccination could be a condition of employment. *See We the Patriots, USA, Inc. v. Hochul*, 17 F.4d 266, 294 (2d Cir. 2021), *op clarified*, 17 F.4d 368 (2d Cir. 2021) (noting that vaccination is a condition of employment in the healthcare field); *Garland v. New York City Fire Department*, 2021 LRRM (BNA) 464267 (E.D.N.Y. 2021) (concluding that vaccination was a condition of employment under a Health Commissioner Order applicable to City employees and similar to the Mandate at issue here).   Specifically, in the context of DOE employees, vaccination against COVID-19 has been determined a condition of employment, a prerequisite to doing the job in the first place. *See Broecker v. New York Dept. of Educ.*, No. 21-CV-6387 (KAM) (LRM), 2022 U.S. Dist. LEXIS 25104 (E.D.N.Y. Feb. 11, 2022) attached as Minicucci Decl. Exh. E; *O'Reilly v. Bd. of Educ.*, Index No. 161040/2021, 2022 NY Slip Op 30173[U] (N.Y. Sup. Ct., N.Y. Cnty Jan. 20, 2022);  attached as Minicucci Decl. Exh. F.  Here, plaintiffs claim that their sincerely-held religious beliefs prevent them from being vaccinated.  As set forth above, most of the plaintiffs have had their religious accommodation requests reviewed by the Citywide Panel.  Others, who recently joined this action and had not previously applied for a religious accommodation to the vaccine mandate, have not had requests reviewed by the Citywide Panel.  As set forth below, plaintiffs' as-applied challenges to the vaccine mandate and the associated religious accommodation process also fail because their First Amendment rights have not been violated.

First, plaintiffs Toro and Castro have had their religious accommodations granted, and as such their claims should be dismissed.  Ms. Toro's claim was granted under the Arbitration Award and Mr. Castro's was granted by the Citywide Panel.  *See* Am. Compl. ¶¶ 271 and 488. Neither of these plaintiffs is allowed to enter DOE school buildings but they are allowed to work from home, and are entitled to their regular pay and benefits.  Still, they complain that they should be allowed back into school buildings which would permit them to have sustained, close contact with unvaccinated children.  As set forth in Section I.A. *supra*, plaintiffs are not entitled to the accommodation of their choice.  *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002), particularly when such accommodation poses a health or safety risk to others, *Kalsi*, 62 F. Supp. 2d at 757-60

Plaintiffs Toro and Castro also allege that, because their accommodations are set to expire in June 2022, they can still maintain their First Amendment claims, but these purported claims are not ripe for adjudication. "To be justiciable a claim must be ripe – it must present 'a real, substantial controversy, not a mere hypothetical question.'"  *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013)(quoting *AMSAT Cable Ltd. v. Cablevision of Conn.*, 6 F.3d 867, 872 (2d Cir. 1993).  A claim is not ripe if it depends on future events that may not occur as anticipated or not occur at all.  *Thomas v. Union Carbide Agric. Prods. Co.* 473 U.S. 568, 580 (1985). Toro and Castro's accommodations have been granted, there are receiving their full pay and benefits and any speculative allegations about what might happen to their accommodations in the future are not ripe for adjudication and as such should be dismissed.

Second, plaintiffs Grimando, Giammarino, Loparrino, and Weber did not timely apply for a religious exemption in the first instance.  Grimando, despite timely submitting a medical exemption to the Mandate, did not submit a timely religious exemption.  Am. Compl. ¶¶

668-669.  Her untimely religious exemption was denied.  Am. Compl. ¶ 680.  As a result, she

missed the window for appealing her denial under the expedited process.  Am. Compl. ¶ 681.

Plaintiff Giammarino did not apply for a religious exemption through the procedure established

through the Arbitration Award, but instead sent letters to DOE regarding her eligibility for a

religious exemption. Am. Compl.  ¶¶ 733-734.[20]  Plaintiff Loparrino chose not to apply under the

Arbitration Award, but sent a letter to DOE via certified mail.  Am. Compl. ¶ 769.  Plaintiff Weber

did timely apply for an exemption, but did not appeal his denial.  *Id*. ¶¶ 642 and 651.  Grimando,

Giammarino, Loparrino, and Weber have failed to avail themselves of the process to request a

religious exemption, despite having ample notice and time to request one.  They cannot now

circumvent that procedure and claim they were not accommodated in violation of the Constitution,

when they never applied in the first place.  *See, e.g.*, *Garland v. N.Y.C. Fire Dep't*, No. 21-cv-6586

(KAM)(CLP), 2021 U.S. Dist. LEXIS 233142 (E.D.N.Y. Dec. 6, 2021).

Finally, the balance of the plaintiffs were given a "fresh look" by the Citywide

Panel which, pursuant to a decision by the Merits' Panel of the Second Circuit Court of Appeals,

would consider their requests for religious accommodations pursuant to Title VII standards.  *See*

Dkt. 81-1 at 13.  Plaintiffs were also given the opportunity to submit additional information and

evidence relating to their request for a religious accommodation.  Ultimately, these requests were

denied because granting them was found to pose an undue hardship on DOE.  "An accommodation

is said to cause an undue hardship whenever it results in 'more than a de minimis cost' to the

employer."  *Baker v. The Home Depot*, 445 F.3d 541, 548 (2d Cir. 2006) (quoting *Trans World*

*Airlines, Inc. v. Hardison*, 97 S. Ct. 2264, (1977)).  These remaining plaintiffs are all classroom

---

[20]     It should be noted that Plaintiff Giammarino also brought a state court proceeding pursuant
to N.Y. CPLR 7801, Index 160829/2021, where she curiously does not mention any letters or
eligibility for a religious exemption.

teachers, they cannot perform their essential functions from home given that schools have resumed full in-person instruction and, as such, granting them an accommodation would pose an undue hardship.  (*See supra* pp. 17-18 regarding additional "undue hardship" analysis.).

Accordingly, plaintiffs' as-applied challenges fail.

### B.     Plaintiffs' As-Applied Challenges Should be Brought as Article 78 Proceedings

To the extent plaintiffs are challenging the individual final decisions to deny their requests for religious accommodations, these claims should be brought as Article 78 proceedings in New York State Supreme Court, as they involve a challenge to an agency decision.  *See Sindone v. Kelly*, 439 F. Supp. 2d 268, 278 (S.D.N.Y. 2006) ("[T]he Second Circuit has gone to considerable lengths to recognize the adequacy of Article 78 procedures as affording adequate safeguards to satisfy federal procedural due process standards.").  Indeed, a claim's substance determines controlling law.  *Hughey v. Metropolitan Transp. Auth.*, 159 A.D.3d 596, 596 (1st Dep't, 2018) (citing *Foster v. New York*, 157 A.D.2d 516, 517 (1st Dep't 1990) (concluding that "the gravamen of plaintiff's claim . . . presents the classic formulation of an article 78 proceeding")).  Here, plaintiffs' as-applied challenges are seeking to overturn an agency determination—the Citywide Panel's decision to deny their requests for religious accommodations based on undue hardship.  Article 78 is the only vehicle through which to challenge an administrative determination.  *See Hughey*, 159 A.D.3d, at 596 ("the gravamen of plaintiff's claim . . . was a review of the Board's administrative determination . . . . Consequently, the motion court properly concluded that this matter was in the nature of a CPLR article 78 proceeding."); *Purcell v. City of New York*, 110 A.D.3d 535, 535 (1st Dep't 2013) ("The instant action . . . is actually a challenge to the Office of the Public Administrator's administrative determination . . . . The appropriate vehicle for such a challenge is an article 78 proceeding . . . ."); *Fuca v. City of New*

*York*, 15 Misc. 3d 86, 87 (2d Dep't, 2007) ("The proper form and forum" to challenge an administrative determination "is an article 78 proceeding."). Here, plaintiffs' denials of their requests for religious accommodation constitute agency decisions, reviewable under Article 78.

Accordingly, the instant claims should be dismissed.

**POINT III**

**PLAINTIFFS' SECTION 1983 CLAIM MUST
BE DISMISSED**

It is well established that "Section 1983 does not create any independent substantive right, but rather is a vehicle to 'redress . . . the deprivation of [federal] rights established elsewhere.'" *Laface v. Eastern Suffolk BOCES*, 349 F. Supp. 3d 126 (E.D.N.Y. 2018) (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999); also citing *Rosa R. v. Connelly*, 889 F.2d 435, 440 (2d Cir. 1989)).

Here, as explained *supra*, plaintiffs have failed to state any valid constitutional claims. As such, their Section 1983 claim (twenty-eighth cause of action) must also be dismissed.

**POINT IV**

**PLAINTIFFS HAVE FAILED TO STATE
CLAIMS UNDER THE SHRL OR CHRL**

Plaintiffs' SHRL and CHRL claims—their twenty-ninth and thirtieth causes of action—fail for the same reasons their Constitutional claims fail and for at least two additional reasons.

Plaintiffs' allegation that defendants failed to accommodate plaintiffs' religious beliefs in violation of the CHRL fails because their accommodation requests, if granted, would impose an undue hardship on defendants. Plaintiffs assert in their Amended Complaint that the CHRL defines "undue hardship" as "an accommodation requiring significant expense or difficulty," which plaintiffs claim defendants cannot prove. *See* Am. Compl. ¶ 936. However,

32

plaintiffs ignore the portion of the CHRL that states that "an accommodation shall be considered to constitute an undue hardship, for purposes of [the subdivision of the CHRL dealing with religious observance], if it will result in the inability of an employee who is seeking a religious accommodation to perform the essential functions of the position in which the employee is employed." NYC Admin. Code § 8-107(31)(c)(3)(b)(i). Here, contrary to plaintiffs' bald assertions, the plaintiffs whose applications for religious exemptions to the vaccine requirement have been denied are wholly unable to perform an "essential function" of their positions as classroom teachers: in-person teaching.

Finally, plaintiffs state in only cursory manner that they have also been "harassed" and "retaliated against" in violation of the SHRL and CHRL as a result of their religious beliefs and creed (see Am. Compl. ¶¶ 933, 947), but they provide no details of that alleged harassment or retaliation. As such, they have failed to meet their pleading burden and, to the extent asserted, plaintiffs' hostile work environment and retaliation claims must also be dismissed. See Xiang v. Eagle Enters., LLC, No. 19-CV-1752 (PAE), 2020 U.S. Dist. LEXIS 7909, *33, n.3 (S.D.N.Y. Jan. 16, 2020) ("free-floating references" to alleged hostile work environment insufficient to withstand motion to dismiss); Hudson v. Related Mgt. Co. LP, 2013 N.Y. Misc. LEXIS 4288, *5, 2013 NY Slip Op 32270(U), *5, *11 (Sup. Ct., N.Y. Co. 2013) ("if the allegations are not sufficiently particular to give the court and parties notice of . . . the material elements of each cause of action, the cause of action will be dismissed") (internal quotation marks omitted); Brevil v. County of Rockland, No. 15 CV 5103 (VB), 2017 U.S. Dist. LEXIS 177644, at *15 (S.D.N.Y. Oct. 25, 2017) (dismissing hostile work environment claim where plaintiff's complaint made "only generalized assertions against all 'defendants' over broad periods of time" and "lack[ed] any

details about who made [the offending] remarks, when, how frequently, or whether it interfered with [plaintiff's] performance").

## POINT V

### PLAINTIFFS' CONSOLIDATED CLASS ACTION AMENDED COMPLAINT VIOLATES FED. R. CIV. P. 8

Federal Civil Procedure Rule 8 requires, in pertinent part, that:

> A pleading . . . must contain (1) a short and plain statement of the grounds for the court's jurisdiction, . . . [and] (2) a short and plain statement of the claim showing that the pleader is entitled to relief.

Fed. R. Civ. P. 8(a)(1).

The Rule further requires "each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).  Such a statement must simply give the defendant fair notice of what the claim is and the grounds upon which it rests.  *See Conely v. Gibson*, 355 U.S. 41 (1957).  In addition, the "statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1988).  The statement should also be short because "unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Id.*

Here, plaintiffs' Amended Complaint does not comport with the requirements of Fed. R. Civ. P. 8.  In fact, it is the antithesis of a short and plain statement of a claim showing that plaintiffs are entitled to relief.  *See e.g. Novak v. N.Y. State Elec. & Gas Corp.*, 2006 U.S. Dist. LEXIS 73031, *4 (N.D.N.Y 2006).   Rather, plaintiffs' Amended Complaint is a lengthy, voluminous document filled with detailed, repetitive assertions. It is over 955 paragraphs and 186 pages long. Essentially, plaintiffs have written a prolix complaint that attempts to outline every

detail, as if this matter were to be tried on the pleadings. *See Novak v. N.Y. State Elec. & Gas Corp.*, 2006 U.S. Dist. LEXIS 73031 at *7-8 (N.D.N.Y. 2006).   Where courts have declined to dismiss a complaint based upon its prolixity, the courts have noted that the nature of the litigation was complex, or that there were many defendants. *See Schiller v. Duthie*, 2017 U.S. Dist. LEXIS 137937 at *32-33 (S.D.N.Y. Aug. 28, 2017).   Here, the nature of the litigation is not particularly complex, as it involves a single process by which religious exemptions are considered.

Because plaintiffs' pleadings do not provide defendants with a short and plain statement of their claims that establish an entitlement to relief as required under Rule 8, the Amended Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, each of plaintiffs' claims is insufficient as a matter of law and should be dismissed.   Defendants thus respectfully request that their Motion to Dismiss the Consolidated Amended Class Action Complaint be granted, that it be dismissed with prejudice, that the relief requested by plaintiffs be denied in all respects, that judgment be entered for defendants, and that defendants be granted costs, fees, and disbursements together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
February 14, 2022

GEORGIA M. PESTANA
Corporation Counsel of the
   City of New York
Attorney for Defendants
100 Church Street, Room 2-117
New York, New York 10007-2601


By:           */s/ Lora Minicucci*
Lora Minicucci
Assistant Corporation Counsel