21-cv-7863 (VEC) (Lead Case) | 21-cv-8773 (VEC)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MICHAEL KANE, et al.,

Plaintiffs,

-against-

BILL DE BLASIO, et al.,

Defendants.

MATTHEW KEIL, et al.,

Plaintiffs,

-against-

THE CITY OF NEW YORK, et al.,

Defendants.

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

## ORAL ARGUMENT REQUESTED

Sujata S. Gibson
GIBSON LAW FIRM, PLLC
408 W. Martin Luther King, Jr., St.
Ithaca, NY 14850
(607) 327-4125

Barry Black
Jonathan R. Nelson
Sarah E. Child
NELSON MADDEN BLACK LLP
475 Park Avenue S., Suite 2800
New York, NY 10016
(212) 382-4300

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ...........................................................................................1

ARGUMENT ...............................................................................................................2

    I.    Standard of Review...................................................................................2

    II.    Plaintiffs' Free Exercise Claim Survives Because Strict Scrutiny Applies..................3

        A.  The Mandate is not Neutral............................................................................3

            1.  Animus Expressed by the Mayor and DOE representatives Triggers Strict Scrutiny .....................................................................4

            2.  Animus Not Mooted by the "Fresh Look"................................................5

        B.  The Mandate is not Generally Applicable ...............................................7

            1.  The Continuous Flow of New Mandates and Exemptions show that the Mandate cannot be deemed a generally applicable "across the board" law.........................................................................................7

            2.  The Mandate Prefers Secular Conduct to Similar Religious Conduct......8

        C.  Even if the Mandate was generally applicable and neutral, the religious exemption process is neither...................................................................10

            1.  Religious accommodation decisions by government actors are not neutral or generally applicable and must be strictly scrutinized ...........10

            2.  The direct evidence of discrimination provides additional need for strict scrutiny of any DOE religious accommodation policies ...............11

        D.  Because this is a hybrid rights case, strict scrutiny applies in any event...............12

    III.    Plaintiffs' Establishment Clause Claim Survives .......................................13

    IV.    Plaintiffs' Substantive Due Process Claim Survives ...................................16

        A.  These Rights are Fundamental Rights ................................................16

        B.  The Unconstitutional Conditions Doctrine Bars Defendants' Defense ................17

        C.  Courts Cannot Deviate from Strict Scrutiny because the Case Involves Public Health .........................................................................................18

    V.    Plaintiffs' Equal Protection Claim Survives .............................................19

    VI.    Plaintiffs' Procedural Due Process Claim Survives....................................22

    VII.    Plaintiffs' Constitutional Claims Survive Any Level of Scrutiny ...............24

        A.  The Challenged Policies Cannot Survive Strict Scrutiny Review .......................24

i

B.  The Government's Policies Cannot Even Survive Rational Basis Review ...........24

1.  Vaccination Does Not Prevent Transmission .........................................24

2.  The Alleged Health Concerns are Squarely Undermined by the Facts ..25

VIII.  Plaintiffs' Supremacy Clause/Emergency Use Authorization Claim Survives ...........25

IX.  Plaintiffs' Claims Survive *as Applied to the Individual Plaintiffs* .............................27

A.  COVID-19 Vaccination is not a Condition of Employment for Exemption-Eligible Employees ........................................................................................27

B.  The State Courts Do Not Have Exclusive Jurisdiction Over Plaintiffs' Claims....29

C.  Additional Claims for Individual Dismissal of Claims have no Merit .................30

X.  Plaintiffs Have Properly Pled Claims Under the SHRL and the CHRL .....................32

XI.  Plaintiffs' Consolidated Class Action Amended Complaint Satisfies Rule 8 .............34

CONCLUSION .....................................................................................................................35

# TABLE OF AUTHORITIES

**Cases**

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
    570 U.S. 205 (2013) ................................................................................ 19

*Agudath Isr. v. Cuomo*,
    983 F.3d 620 (2d Cir. 2020) ................................................................... 20

*Am. Legion v. Am. Humanist Ass'n*,
    139 S. Ct. 2067 (2019) ........................................................................... 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................ 3, 36

*Bates v. Donley*,
    935 F. Supp. 2d 14 (D.D.C. 2013) ......................................................... 28

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................... 2, 35-36

*Brown v. Polk Cnty.*,
    61 F.3d 650 (8th Cir. 1995) .................................................................... 21

*Cantwell v. Conn.*,
    310 U.S. 296 (1940) ........................................................................... 14, 16

*Cartagena v. City of N.Y.*,
    257 F. Supp. 2d 708 (S.D.N.Y. 2003) ................................................... 30

*CBOCS W., Inc. v. Humphries*,
    553 U.S. 442 (2008) ............................................................................... 22

*Church of Lukumi Babalu Aye v. City of Hialeah*,
    508 U.S. 520 (1993) ......................................................................... 4, 4, 6

*Cruzan v. Dir., Dep't of Health*,
    497 U.S. 261 (1990) ............................................................................... 17

*Daniels v. Williams*,
    474 U.S. 327 (1986) ............................................................................... 17

*Doe # 1 v. Rumsfeld*,
    297 F. Supp. 2d 119 (D.D.C. 2003) ....................................................... 28

*Doe v. Rumsfeld*,
    341 F. Supp. 2d 1 (D.D.C. 2004) ........................................................... 28

*DOE. Kane v. de Blasio*,
  19 F.4th 152 (2d Cir. 2021) ................................................................. 11

*DOE. Kane v. De Blasio*,
  19 F.4th 152 (2d Cir. Nov. 28, 2021) ................................................... 30

*Emp. Div. v. Smith*,
  494 U.S. 872 (1990) .................................................................... 8, 14

*Engquist v. Or. Dep't of Agric.*,
  553 U.S. 591 (2008) ......................................................................... 22

*Erickson v. Pardus*,
  551 U.S. 89 (2007) ............................................................................. 3

*Espinoza v. Mont. Dep't of Revenue*,
  140 S. Ct. 2246 (2020) ................................................................. 16-17

*Forsyth Cnty. v. Nationalist Movement*,
  505 U.S. 123 (1992) ........................................................................... 3

*Frost & Frost Trucking Co. v. R.R. Com. of Cal.*,
  271 U.S. 583 (1926) ......................................................................... 30

*Fulton v. City of Philadelphia*,
  141 S. Ct. 1868 (2021) ........................................................... 8, 10, 25

*Jacobson v. Massachusetts*,
  197 U.S. 11 (1905) ........................................................................... 19

*Kickertz v. N.Y. Univ.*,
  110 A.D.3d 268, 971 N.Y.S.2d 271 (1st Dep't 2013) ........................ 31, 31, 32

*Knight v. State Dep't of Pub. Health*,
  275 F.3d 156 (2d Cir. 2001) ............................................................. 13

*Larson v. Valente*,
  456 U.S. 228 (1982) .......................................................... 14, 15, 16, 16

*Leebaert v. Harrington*,
  332 F.3d 134 (2d Cir. 2003) ............................................................. 17

*Lemon v. Kurtzman*,
  403 U.S. 602, 91 S. Ct. 2105, 29 L. Ed. 2d 745 (1971) ...................... 14

*MacDonald v. Safir*,
  206 F.3d 183 (2d Cir. 2000) ............................................................... 3

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*,
  138 S. Ct. 1719 (2018) .............................................................. 4, 5, 6

iv

*McCall v. Pataki,*
    232 F.3d 321 (2d Cir. 2000) ............................................................................... 35

*Morales v. TWA,*
    504 U.S. 374 (1992) .......................................................................................... 27

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,*
    429 U.S. 274 (1977) .......................................................................................... 21

*Murphy v. NCAA,*
    138 S. Ct. 1461 (2018) ...................................................................................... 27

*O'Reilly v. Bd. of Educ.,*
    2022 N.Y. Slip Op. 30173(U) (2022) ............................................................... 29

*Perry v. Sindermann,*
    408 U.S. 593 (1972) .......................................................................................... 19

*Putaro v. Carlynton Sch. Dist.,*
    No. 2:07-cv-817, 2007 U.S. Dist. LEXIS 107326 (W.D. Pa. Dec. 12, 2007) .................................. 22

*Roman Catholic Diocese v. Cuomo,*
    141 S. Ct. 63 (2020) ......................................................................................... 19

*Salahuddin v. Cuomo,*
    861 F.2d 40 (2d Cir. 1988) ............................................................................... 36

*Santa Fe Indep. Sch. Dist. v. Doe,*
    530 U.S. 290 (2000) .......................................................................................... 16

*Smith v. Cnty. of Suffolk,*
    776 F.3d 114 (2d Cir. 2015) ............................................................................. 21

*Stavis v. GFK Holding, Inc.,*
    769 F. Supp. 2d 330 (S.D.N.Y. 2011) ............................................................. 34

*Tandon v. Newsom,*
    141 S. Ct. 1294 (2021) ...................................................................................... 10

*Thomas v. Lord,*
    174 Misc. 2d 461, 664 N.Y.S.2d 973 (N.Y. Sup. Ct. 1997) ............................. 24

*TWA v. Thurston,*
    469 U.S. 111 (1985) ..................................................................................... 20, 20

*United Black Firefighters Ass'n v. Akron,*
    976 F.2d 999 (6th Cir. 1992) ............................................................................ 21

*Univ. of Tex. v. Camenisch,*
    451 U.S. 390 (1981) ............................................................................................ 5

*Vacco v. Quill,*
    521 U.S. 793 (1997) ............................................................................................ 18

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989) .............................................................................................. 4

*Wash. v. Glucksberg,*
    521 U.S. 702 (1997) ............................................................................................ 18

*Whalen v. Roe,*
    429 U.S. 589 (1977) ............................................................................................ 17

*Zavala v. Dovedale Sales Corp.,*
    No. 2:05-cv-01825-ADS-ETB, 2006 U.S. Dist. LEXIS 112761 (E.D.N.Y. Mar. 11, 2006) ........ 33, 35

*Zelman v. Simmons-Harris,*
    536 U.S. 639 (2002) ............................................................................................ 24

**Statutes**

21 U.S.C. § 360bbb-3 ................................................................................................ 27

28 U.S.C. § 1331 ...................................................................................................... 30

Fed. R. Civ. P. 8 ...................................................................................................... 36

Fed. R. Civ. P. 8 ...................................................................................................... 35

Fed. R. Evid. 8 ........................................................................................................ 35

Fed. R. Evid. 12 ........................................................................................................ 2

Fed. R. Evid. 201 ...................................................................................................... 2

**Other**

Melissa L. Saunders, *Equal Protection, Class Legislation, and Colorblindness,*
    96 Mich. L. Rev. 245, 262 (1997) ................................................................................ 20

## PRELIMINARY STATEMENT

The Defendants' motion ("Motion") to dismiss Plaintiffs' Consolidated Amended Complaint ("Complaint") offers alternative (unsworn) facts, citations to cases that fail to support their arguments (or have been overruled), and carping protests that they have to read so many words. But the Second Circuit has already found merit in Plaintiffs' initial complaints, and a likelihood of success on the merits that led to remand.

In its most recent decision in this matter, the Second Circuit held that "we express no view on the ultimate merits of this case, which may be determined in the future upon a complete and carefully presented record." *Keil v. City of NY*, 2022 U.S. App. LEXIS 5791, at *11 (2d Cir Mar. 3, 2022, Nos. 21-3043-cv, 21-3047-cv).  And at oral argument, the Court stated that "they have some arguments that are worthy of being litigated in a proper forum, on a proper record, and a proper posture, [cite to transcript p 39], and Defendants conceded that "certainly, there are issues as to whether strict scrutiny should apply." Black Decl. Exh. 3 at 41.  Stunningly, Defendants now argue that the case should be dismissed because strict scrutiny cannot apply.[1]

Plaintiffs respectfully request that the Court deny the Motion and order the Defendants to file their answer.

## STATEMENT OF FACTS

A comprehensive statement of the relevant facts is contained within the Amended Complaint, incorporated herein by reference along with the 90+ mandates issued by the City of

---

[1] The Court may take judicial notice of oral argument at the Second Circuit as part of a judicial proceeding.

New York or its departments governing vaccination since the start of the pandemic, as these are integral to the complaint. *See, e.g.*, ECF No. 102 ¶¶ 60-61, 185.These executive orders are attached hereto for the Court's convenience. Black Decl. Exh. 1.[2]

## ARGUMENT

I.      **Standard of Review.**

To survive a Fed. R. Evid. 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the level of speculation. *Bell Atl. Corp.*, 550 U.S. at 555. So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570.

---

[2] The Court should deem them incorporated by reference, because the Amended complaint references the Mayor's "ever-expanding mandates into the workplace", ECF No. 102 ¶ 62, and that "Mayor de Blasio just kept issuing more random mandates. After these proceedings began, he issued additional mandates for general city employees, firefighters, police officers, daycare workers, and even employees in the private sector, ECF No. 102 ¶ 185, and pleads that "A law is not generally applicable if exceptions are carved out on its face or in practice, or if it is just one of many specifically applicable mandates relating to the same issue, ECF No. 102 ¶ 787, and "Laws that burden religious exercise must survive strict scrutiny if they are not neutral and generally applicable or if they are overinclusive or underinclusive", ECF No. 102 ¶ 789.

Alternatively, The Court may take judicial notice of them, as they are "not subject to reasonable dispute" in that they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(3).

In any event, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).[3]

## II.  Plaintiffs' Free Exercise Claim Survives Because Strict Scrutiny Applies

The Mandate, as applied to religious objectors, is subject to strict scrutiny because it is not neutral or generally applicable and, in any event, implicates hybrid rights.

### A.  The Mandate is not Neutral

Laws which appear neutral on their face, but which are regularly implemented in an unconstitutional manner, are not neutral and thus must be strictly scrutinized when they function to burden religious rights. *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 131 (1992) ("in evaluating respondent's facial challenge, we must consider the county's authoritative constructions of the ordinance, including its own implementation and interpretation of it."); *see also MacDonald v. Safir*, 206 F.3d 183, 191 (2d Cir. 2000).

Textually neutral policies that function with other implementing or related policies to burden religious exercise cannot be considered "neutral" and must be analyzed in context. *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 540 (1993). Appropriate guidance to avoid discriminatory implementation can insulate a regulation from facial challenge in some circumstances. *Ward v. Rock Against Racism*, 491 U.S. 781, 793-95 (1989) (reasonable guidance

---

[3] Plaintiffs note that "courts may take judicial notice of publicly available documents such as regulatory filings . . .[b]ut they must do so 'to determine what statements [the documents] contained . . . [and] not for the truth of the matters asserted' in the documents." *Lewis v. M&T Bank, 20*22 U.S. App. LEXIS 6596, at *3 (2d Cir., Mar. 15, 2022, No. 21-933) (2022).

against discrimination protects city ordinance against facial attack). But here, the Mayor, who is the architect of the DOE Mandate and exercises control over the DOE, openly guided the DOE to discriminate against personally held relief because the Pope allegedly convinced him that religious objections to vaccination are illegitimate. ECF No. 102 ¶ 5; *see also* ¶ 95.

1.  **Animus Expressed by the Mayor and DOE representatives Triggers Strict Scrutiny**

Even textually neutral laws of general applicability must be subjected to strict scrutiny when, as here, commentary from the decision makers shows animus towards the legitimacy of impacted religious beliefs. Lukumi, 508 U.S., at 540. "Animus" includes not only hostility but also any indication that could be interpreted as taking sides. It is well-settled law that the government "cannot act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices,]" *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1731 (2018).

The Amended Complaint asserts that the Mandate was implemented against religious objectors amidst indicia of animus with the express purpose of inflicting special disability against minority religious viewpoints. The Mayor's discriminatory comments are not the only indicia of animus from decision-makers. DOE representatives made identical and worse comments during formal accommodation proceedings. As a few of many examples in the Amended Complaint, DOE representatives argued that Jewish objectors should be denied accommodation because a random Jewish leader in Israel expressed a different viewpoint than their rabbi. ECF No. 102 ¶ 90; that Buddhists and non-denominational Christians must be denied because their views conflict with the stance taken by Pope Francis, *Id.* ¶¶ 232, 265; and that personally held or unorthodox beliefs are

invalid and wrong. *Id.* ¶¶ 293-98. Any one of these discriminatory statements grossly violates the First Amendment and triggers strict scrutiny. Moreover, the comments were also codified into a written policy, officially adopted by the DOE, which mirrored the statements of the Mayor and required discrimination against minority religions ("Stricken Standards"). This policy was never officially rescinded, but only revisited after the Second Circuit held that the policy was unconstitutional and ordered fresh consideration.

The Second Circuit's generous inference that even though the Mayor's comments reflected discriminatory animus, the Mayor may not have had power over the religious accommodation processes at the municipal level is a disputed fact, and must be resolved in favor of the Plaintiffs on a motion to dismiss. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (findings of fact for purposes of preliminary injunctive relief are not binding). Plaintiffs intend to prove at trial their allegation that the Mayor did and does exercise control over the DOE's religious accommodation policies. And of course, the Mayor and his predecessor issued all of the mandates through executive order (sometimes through his Commissioner of Health and sometimes alone). Because the Mayor's office exercises discretion about whether to protect religious concerns over secular, the animus expressed requires strict scrutiny of all of the Mandates as applied to religious objectors Moreover, now that the "Citywide Panel" process has been introduced as part of that policy, the City expressly controls the religious accommodation policies governing the implementation of the Mandate against DOE employees.

## 2. Animus is Not Mooted by the "Fresh Look"

Defendants continually refer to the "now-defunct" Stricken Standards as moot and argue that the direct evidence of discrimination is irrelevant to the assessment of the Mandate's (or

subsequent religious accommodation policy's) neutrality. Not so. In determining neutrality, a court must consider whether there are "subtle departures" from religious neutrality currently as well as evidenced by "the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decision-making body." *Lukumi*, 508 U.S. at 533-540 (1993); *Masterpiece Cakeshop, Ltd.*, 138 S. Ct. at 1731. Thus, the original use of the Stricken Standards and the DOE's blatant hostility to Plaintiffs' religious beliefs during their arbitration hearings—discussed comprehensively throughout the face of the Complaint—is certainly relevant to the current assessment of whether the Mandate is neutral because it provides the context in which the Citywide Appeals Panel was established and governed and must now be judged. The indicia of religious animus articulated in the Amended Complaint should trigger strict scrutiny for the entire Mandate, at least as applied against any religious objector at the DOE. *Lukumi*, 508 U.S. at 540. As the Supreme Court has repeatedly affirmed, any indicia, "even [a] slight suspicion" of religious animus or lack of neutrality towards religious viewpoints is per se unconstitutional, regardless of whether a regulation otherwise forwards a compelling interest. *Masterpiece Cakeshop, Ltd.*, 138 S. Ct. at 1731.

Not surprisingly, the same animus that tainted the Stricken Standards showed up in the Citywide Appeals Panel determinations in astoundingly similar ways, as Plaintiffs pled on the face of their Complaint, showing that the original discriminatory decisions were rubber stamped with no meaningful effort to comply with the First Amendment. *See, e.g.*, ECF No. 102 ¶¶ 587-88, 593-95. Furthermore, the DOE never even repealed the Stricken Standards, further demonstrating the Mandate's lack of neutrality. *Id.* .

6

B.        **The Mandate is not Generally Applicable**

The Second Circuit held in *Kane v. de Blasio* that the Mandate is likely to be found generally applicable before the Amended Complaint was filed and the instant facts transpired. As noted *supra,* this decision is not binding in the context of a motion to dismiss, where Plaintiffs' allegations must be taken as true and all favorable inferences afforded to their claims. The facts before the Court now require this Court to find that the Mandate is not generally applicable for several reasons.

1.        **The Continuous Flow of New Mandates and Exemptions shows that the Mandate is not a generally applicable "across the board" law**

The continuous flow of new mandates and exemptions shows that the Mandate cannot be deemed a generally applicable "across the board" law. *General* applicability involves "general laws" that govern society at large and cannot apply to the Mandate, one of a multitude of *specifically* applicable regulations issued by ever-changing discretionary executive orders and tailored to differently govern various groups at the whim of a mayor or health commissioner. *See generally* Black Decl. Exh. 1.  Indeed, *Smith* itself distinguishes its facts from the strict scrutiny decisions like *Sherbert* and *Thomas* by noting that they "have nothing to do with an *across-the-board* criminal prohibition on a particular form of conduct."  *Emp. Div. v. Smith*, 494 U.S. 872, 884 (1990) (emphasis added).

The Mandate falls plainly short in this context.  That a municipality, through executive orders no less, would create 97 (and counting) vaccine laws, subject to extension, modification or repeal at the mayor's whim, is entirely inconsistent with both the spirit and the letter of *Smith*.

7

Consequently, the Mandate cannot be considered generally applicable and is subject to strict scrutiny.

Nor is the notion that Adams can "peel away" his own promulgations at his discretion, effectively applying the law at his whim to those he chooses, consistent with general applicability. *See generally* Black Decl. Exh. 3 at 4. A "formal system of entirely discretionary exceptions" renders a law not generally applicable. *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1878 (2021). The Mandate cannot be deemed generally applicable—as contemplated by the criminal and tax laws upon which *Smith* relied—when the Mayor gets to pick and choose which parts of the Mandate he wishes to implement or suspend, and to which persons he wishes to make it applicable.

### 2.     The Mandate Prefers Secular Conduct to Similar Religious Conduct

The facts that have developed since the Second Circuit vacated this Court's denial of preliminary injunctive relief in November confirm the allegations in the Amended Complaint, revealing with unassailable crispness that the vaccine mandates are not "neutral laws of general applicability" and that the Mayor exercises substantial control over this Mandate, as with all of the City's vaccine mandates, and exemptions therefrom. On March 24, 2022, Mayor Eric Adams ("Mayor" or "Adams") issued Emergency Executive Order 62 ("EEO 62"), independent of New York City's Department of Health and Mental Hygiene Commissioner, which overrides Emergency Executive Order 50. The new executive order creates carveouts from the City's employer vaccination mandates to exempt professional athletes and performers.

Adams' comments at the press conference discussing EEO 62 clarified that as Plaintiffs alleged, he, like his predecessor Bill de Blasio, has played, and continues to play, a significant— if not leading—role in establishing, guiding, and enforcing the mandates (and exemptions thereto),

as he repeatedly emphasized that "I'm the mayor of the city, and I'm going to make some tough choices," and "I was not elected to be fearful but to be fearless. I must move this city forward." He went on to explain that the policy and its underlying rationale was motivated by economic concerns. "I've always said over and over again, we're going to focus on the science, we're going to do what's right, and we're going to make sure we're healthy. And being healthy is not only physically healthy. It's economically healthy."[4]   All this undermines the purported public health emergency concerns that purport to inform the mandates.   Winning ballgames and building a healthy economy cannot be the basis for prohibiting the free exercise of religion.

Plaintiffs have long argued that the Mandate is riddled with discretion and allows for various exceptions and carveouts, rendering it not generally applicable.  But EEO 62 takes things one monstrous step toward constitutional recklessness in audaciously exempting the Mayor's favorite sports teams (who also happen to be large donors), millionaire athletes, and artists, while refusing exemptions to sincere religious folks. These are not generally applicable laws of the type that *Smith* provided constitutional lenience towards. Instead, they clearly reflect policy preferences that the Mayor himself, like de Blasio before him, contemplated, enacted, and promulgated as the chief executive of New York City and can "peel back" at a whim, at his sole political discretion. Such policies are decidedly not neutral or generally applicable when they single out secular but not religious activities for favored treatment, and therefore require strict scrutiny. *Tandon v. Newsom*, 141 S. Ct. 1294 (2021) (State's restrictions on private gatherings contained myriad

---

[4] The Court should take judicial notice of the transcript, annexed hereto as Black Decl. Exh. 2 at 1.

exceptions and accommodations for secular activities comparable to religious activities, triggering strict scrutiny for violation of Free Exercise Clause). The Supreme Court has said over and over again that "a law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton*, 141 S. Ct. at 1877. Here, Mayor Adams brazenly thumbs his nose at the Constitution, the Supreme Court, and decent hard-working New Yorkers in granting exemptions to the rich and famous in order to line the City's coffers and win ballgames, but declines to extend exemptions to religious people for the very same conduct. The Mandate therefore cannot be deemed generally applicable.

> **C.  Even if the Mandate was generally applicable and neutral, the religious exemption process is neither.**

Even if the Mandate was to be found neutral or generally applicable, the religious accommodation policies adopted to implement it cannot. The Second Circuit already held that strict scrutiny applies to the religious accommodation policies and decisions issued by the *DOE. Kane v. de Blasio*, 19 F.4th 152 (2d Cir. 2021). The fact that the unlawful suspensions were allegedly given a "fresh look" does not moot the need for strict scrutiny.

> **1.  Religious accommodation decisions by government actors are not neutral or generally applicable and must be strictly scrutinized.**

Religious exemption reviews are expressly about religion, and they are not generally applicable, but rather highly specific discretionary decisions, and therefore, they must be vigorously analyzed to prevent government overreach. "The creation of a formal mechanism for granting exceptions renders a policy not generally applicable, regardless of whether any exceptions have been given, because it 'invite[s]' the government to decide which reasons for not complying with the policy are worthy of solicitude." *Fulton*, 141 S. Ct. at 1879 (2021); *see also Bear Creek*

*Bible Church v. EEOC*, 2021 US Dist. LEXIS 210139, at *71 (N.D. Tex. 2021) ("Because Title VII is not a generally applicable statute due to the existence of individualized exemptions, the Court finds that strict scrutiny applies"). Thus, when state actors make religious accommodation determinations pursuant to Title VII or any other policy, either about the sufficiency of someone's religious objection, or about which accommodation to grant, the government bears the burden of establishing compliance with the statutory criteria but also bears the burden under constitutional analysis of showing that its religious accommodation decisions are justified because they further a compelling governmental interest in the least burdensome manner.

2. **The direct evidence of discrimination provides additional need for strict scrutiny of any DOE religious accommodation policies.**

Strict scrutiny is particularly important here, where just weeks prior to the court mandated "fresh look," the DOE boldly engaged in heresy tribunals and both the DOE and the City unapologetically argued for persecution of religious minorities. The Amended Complaint asserts that the Citywide Panel process was just as infected with animus and arbitrary discretion as the Stricken Standards, and amounts to little more than an attempt to whitewash the direct evidence of discrimination codified in that policy.

Plaintiffs pleaded that even though the Citywide Appeals Panel was supposed to apply standards for the evaluation of religious exemptions that complied with the law, but failed to do so. Indeed, the Citywide Appeals Panel misstated, assessed the factual accuracy of, and openly discriminated against Plaintiffs' sincerely held religious beliefs—all of which constituted First Amendment violations under controlling caselaw and evidenced hostility, as comprehensively addressed on the face of the Complaint. *Id*. ¶¶ 157, 592-95, 569-70, 626-29. They also denied

11

Plaintiffs whose beliefs were derived from guidance from prayer or moral conscience because they were "personally held"—which evidences the kind of "negative normative evaluation of the particular justification" that the Supreme Court condemned in *Masterpiece Cakeshop*. *Id*. ¶ 156. 138 S. Ct. at 1722 ("It hardly requires restating that government has no role in deciding or even suggesting whether the religious ground for Phillips' conscience-based objection is legitimate or illegitimate. On these facts, the Court must draw the inference that Phillips' religious objection was not considered with the neutrality that the Free Exercise Clause requires") (citations and quotation marks removed).

Nor was the Citywide Panel process generally applicable. The religious exemption process gives the DOE and the Citywide Appeals Panel unfettered discretion to determine the validity of various religious exemption applications. *Id*. ¶¶ 792, 812, 817. Furthermore, the Citywide Appeals Panel has not been extended to everyone. *Id*. ¶ 681. For example, the Citywide Appeals Panel option has not been extended to DOE workers who either declined to file an administrative application pursuant to the discriminatory Stricken Standards or who declined (or were unable) to file an appeal pursuant to the discriminatory Stricken Standards. *Id*. ¶¶ 137, 733, 741, 751, 758, 769-79, 642, 650-56. It has not been applied to others who object to the Mandate on religious grounds, including DOE employees whose attempts to file exemption applications or appeals were rejected or ignored by the Defendants. *Id*. ¶ 138, 650-56, 669, 747-52, 758, 769-79. Far from mooting Plaintiffs' claims, the fresh consideration process adds yet another basis upon which Plaintiffs must receive strict scrutiny.

**D.      Because this is a hybrid rights case, strict scrutiny applies in any event**

Plaintiffs have also sufficiently stated a claim for a hybrid rights violation. As a threshold matter, the Second Circuit's holding that "the language [in *Smith*] relating to hybrid claims is dicta and not binding on this court," *Knight v. State Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001), is as inconsistent with *Smith* itself as it is unavailing. *Smith*, of course, did not overrule *Sherbert* and *Thomas*. Strict scrutiny is still the default standard for reviewing a Free Exercise challenge. *Smith* merely removed a certain class of cases from the sphere of traditional First Amendment scrutiny, holding that "[w]e have never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate." *Smith*, 494 US at 878-79. But *Smith* went one step further in certifying that hybrid rights cases were *not* in that category of case outside of the First Amendments traditional reach. Even if the relevant language *were* "dicta," we are still left with *Smith* affirming the earlier hybrid rights decisions, including *Cantwell v. Connecticut*, *Murdock v. Pennsylvania*, *Pierce v. Society of Sisters* and *Wisconsin v. Yoder*, which all involved neutral and generally applicable laws and yet were subjected to strict scrutiny review. Under *Cantwell*, government discretion to withhold religious exemptions from causes deemed "non-religious" was deemed unconstitutional as a matter of law, at least when such decisions impact another fundamental right.  *Cantwell v. Conn.*, 310 U.S. 296, 310 (1940). Here, the same reasoning applies.

### III.    Plaintiffs' Establishment Clause Claim Survives

As a threshold matter, Defendants applied the incorrect test for the Establishment Clause violations asserted. *Larson v. Valente*, 456 U.S. 228, 252 (1982) ("the Lemon v. Kurtzman 'tests'

are intended to apply to laws affording a uniform benefit to all religions, and not to provisions . . . that discriminate among religions.") (collecting cases).[5]

In Establishment Clause cases alleging discrimination among sects, such as this one, the Supreme Court applies the *Larson* test, which requires strict scrutiny anytime a government policy expresses a denominational preference in word or effect. *Id.* In *Larson,* the Court considered whether a law imposing reporting and registration requirements upon charitable organizations but allowing exemptions for religious organizations that solicited more than fifty percent of their funds from members or affiliates violated the Establishment Clause. Concluding that because the law in question had the effect of potentially preferencing denominations that do not solicit contributions door to door as part of their religious mission, it had to be strictly scrutinized: "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another . . . In short, when we are presented with a state law granting a denominational preference, our precedents demand that we treat the law as suspect and that we apply strict scrutiny in adjudging its constitutionality." *Larson*, 456 U.S. at 244.

---

[5] Recent decisions call into question whether the *Lemon test* is ever appropriate – and reiterate that in cases involving religious accommodations and exemptions, *Lemon* never applies. *See, e.g.*, *Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2092 (2019) ("As this case again demonstrates, this Court no longer applies the old test articulated in *Lemon* v. *Kurtzman,* 403 U. S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) . . . . The opinion identifies five relevant categories of Establishment Clause cases: (1) religious symbols on government property and religious speech at government events; (2) **religious accommodations and exemptions from generally applicable laws**; (3) government benefits and tax exemptions for religious organizations; (4) religious expression in public schools; and (5) regulation of private religious speech in public forums. See *ante*, at 2081 – 2082, n. 16. **The *Lemon* test does not explain the Court's decisions in any of those five categories.**") (emphasis added).

14

This case closely resembles *Larson* and must be strictly scrutinized for the same reasons – indeed making a stronger case than was made in *Larson* for denominational preference. In this case, Plaintiffs not only assert that the polices the government adopted to judge religious exemption applications had the effect of burdening unorthodox religious denominations – they also assert that the government *openly* stated that their purpose was to target certain religious denominations for discriminatory treatment in implementing the Mandate against religious objectors. ECF No. 102 ¶¶ 82-101; s*ee also* ¶5, 95. These facts establish denominational preference and trigger strict scrutiny of any and all decisions related to religious accommodation.

Like in the Free Exercise context, scrutiny triggered by the Establishment Clause claims is not mooted just because the Second Circuit ordered the DOE to give some of the named Plaintiffs' applications a "fresh look" under new standards. First, Plaintiffs assert that despite being ordered to do so, this "fresh look" by the "Citywide Panel" did not apply non-discriminatory standards but instead continued to openly express denominational preferences by denying applications from people who hold personal religious beliefs on the ground that such beliefs are not "religious in nature." *Id.* ¶¶ 156, 236, 298, 319, 368, 508, 570. Such determinations are not only violations under the *Larson* test but also indicate impermissible entanglement with religious questions. *Cantwell*, 310 U.S. at 310. Second, even after the Second Circuit held that the DOE's Stricken Standards were blatantly unconstitutional, Defendants continued to enforce these discriminatory policies. ECF No. 102 ¶ 808, ¶¶ 134-145. Third, and most importantly, application of the *Larson* test is not mooted by the interlocutory relief provided in this case. In determining neutrality, courts look at the history of predecessor policies and statements. *See, e.g.,* S*anta Fe Indep. Sch. Dist. v. Doe,* 530

U.S. 290, 307 (2000); *See, also Larson*, 456 U.S. at 252–55. (Holding that comments by legislators indicated animus to provide an independent basis for finding Establishment Clause violation).

In addition to failing the *Larson* test, and other Establishment Clause neutrality and entanglement tests, the Mandate at issue here fails the *Coercion* test. *See, e.g.,* E*spinoza v. Mont. Dep't of Revenue,* 140 S. Ct. 2246, 2264 (2020) (Thomas, J. and Gorsuch, J., concurring) (Establishment clause forbids "coercion of religious orthodoxy and of financial support by force of law and threat of penalty.") The religious accommodation policies are meant to be blatantly coercive. The Mayor admitted as much in his "Key to NYC" press briefing [ECF No. 102 ¶ 57], and the draconian policies towards DOE employees denied accommodation reflect this admission. The animus is bare. Defendants have not even made an attempt to justify why reasonable accommodation cannot be made short of excluding unvaccinated employees from work and suspending them for months on end without pay. The DOE will not even allow employees to use their accrued vacation or sick time while they are excluded, or to earn any income from outside sources, or to collect unemployment insurance. Instead, employees are literally being starved out of house and home in an effort to coerce them to violate their faith.

## IV. Plaintiffs' Substantive Due Process Claim Survives

The constitutionality of substantive due process rights infringement "turns on the nature of the right at issue." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). "Where the right infringed is fundamental, strict scrutiny is applied." *Leebaert v. Harrington*, 332 F.3d 134, 140 (2d Cir. 2003).

### A. These Rights are Fundamental Rights

Multiple well-established fundamental liberty interests are squarely violated in this case: for example, the right to refuse medicine (even lifesaving medicine) (*Cruzan v. Dir., Dep't of*

16

*Health*, 497 U.S. 261 (1990)); the right to make medical decision in accordance with one's chosen physician free from state interference (*Whalen v. Roe*, 429 U.S. 589, 603 (1977)); and the right to informed consent free of unconstitutional conditions or coercion. Each are iterations of the same basic, and sacred, natural right to control one's own body, and care for it as one best sees fit, in accordance with one's creed and religious beliefs, as well as one's best judgment in independent consultation with one's doctor. *Vacco v. Quill*, 521 U.S. 793, 807 (1997) (referencing the fundamental right to refuse medical treatment as derived from the "well-established, traditional rights to bodily integrity and freedom from unwanted touching"); *Wash. v. Glucksberg*, 521 U.S. 702, 722 n.17 (1997) (recognizing the fundamental right to bodily autonomy is "so rooted in our history, tradition, and practice as to require special protection under the Fourteenth Amendment"). Infringement of any of these rights triggers strict scrutiny.[6]

### B. The Unconstitutional Conditions Doctrine Bars Defendants' Defense

Defendants argue that because they are not "tying teachers down and administering vaccines against their will" that these fundamental rights are not burdened. Instead, they focus their arguments on whether the right to practice one's profession is a fundamental right or not. That inquiry is irrelevant. There is no question that denying a person the right to hold any job in New York City, other than as an athlete, entertainer or accompanying entourage for same, infringes

---

[6] The rights at issue are elevated to *jus cogens* status because the coerced medical treatment here is experimental in nature. The Second Circuit recognizes that the laws of the United States and binding international law prohibit mandates or coercion of an experimental product. Plaintiffs have asserted that the vaccines available in the United States against COVID-19 are all experimental in nature. To the extent that there are factual disputes, all inferences must be resolved in favor of Plaintiffs at this stage, as more fully discussed in the Supremacy Clause section below.

the fundamental rights articulated above.[7] Total deprivation of a right through physical force has never been the standard for fundamental rights analysis. Moreover, Government cannot condition receipt of a benefit, fundamental or not, on the waiver of a constitutionally protected interest any more than it can physically force the waiver. "[E]ven though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

If it is the case, as Defendants concede, that the government cannot constitutionally force vaccination physically, then it is also unconstitutional to require that Plaintiffs and their similarly situated colleagues receive the vaccine as a condition of eligibility for continued employment anywhere in New York City absent a narrowly tailored compelling interest. *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013) (the government is not allowed to do indirectly what it cannot do directly in conditioning a government benefit).

**C. Courts Cannot Deviate from Strict Scrutiny because the Case Involves Public Health**

For decades, lower courts misapplied *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) as establishing carte blanche authority for administrative agencies to avoid judicial review in cases

---

[7] Plaintiffs do not concede that their fundamental right to practice their profession is not infringed here, where they have asserted that the mandates now cover every teaching job in New York City, including private schools and daycares as well as tutoring and independent contractor positions, and even non-teaching jobs anywhere in the City with certain exemptions for athletes and entertainers.

involving public health. But a little over a year ago, in *Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63 (2020) the Supreme Court overturned this bad precedent to clarify that there is no exception to strict scrutiny in cases intersecting with public health. *Id.* . As the Second Circuit recently acknowledged, "the Jacobson Court itself specifically noted that 'even if based on the acknowledged police powers of a state,' a public-health measure 'must always yield in case of conflict with . . . any right which [the Constitution] gives or secures.'" *Agudath Isr. v. Cuomo*, 983 F.3d 620, 635 (2d Cir. 2020) (quoting *Jacobson v. Massachusetts*, 197 U.S. 11, 25 (1905)).

## V.     Plaintiffs' Equal Protection Claim Survives

This is a case involving direct evidence of discrimination, in the form of a written policy that required discrimination against unorthodox religious beliefs. Defendants assert that because they would have denied accommodation anyway based on "undue hardship," that they are not liable for these facially discriminatory policies. However, when, as here, an employment policy is facially discriminatory, and Plaintiffs have presented direct evidence of discrimination, the employer cannot "rebut" a claim by demonstrating the existence of a non-discriminatory reason for reaching the same result. *TWA v. Thurston*, 469 U.S. 111, 121 (1985) ("[T]he McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination."). They must instead assert an affirmative defense, which they cannot do here, as religious discrimination is *per se* unconstitutional, and it is well-settled law that discrimination on the basis of religion is a forbidden form of class legislation, and it is always unconstitutional. *See generally* Melissa L. Saunders, *Equal Protection, Class Legislation, and Colorblindness*, 96 Mich. L. Rev. 245, 262 (1997). In adopting facially discriminatory policies, which treat applicants differently depending

19

on the source of their religious belief, the City violated the equal protection rights of thousands of employees. This triggers strict scrutiny (and likely indicates a per se victory).

It does not matter that Defendants attempted to whitewash the open discrimination through a court-mandated "fresh look," because asserting a "legitimate, non-discriminatory reason" mid-litigation would not suffice to rebut the claim. *TWA*, 469 U.S. at 129. Moreover, the "reasons" provided reveal that Defendants once more engaged in religious discrimination on remand, revealing that decisions were made primarily based on impermissible criteria, such as exclusion of religious beliefs derived from prayer or unorthodox sources, and factual disputes. Only as an afterthought did each denial tack on a generic statement that even if the Plaintiff had been found to have a valid religious belief, they would be denied based on undue hardship. To the extent this Court disagrees, Defendants would have to at least show "by a preponderance of evidence" that there was a legitimate, non-discriminatory reason that required them to reach the same result on remand. *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977); *Smith v. Cnty. of Suffolk*, 776 F.3d 114, 123 (2d Cir. 2015) ("Under Mt. Healthy . . . even if the government has considered an impermissible criterion in making a decision adverse to the plaintiff, it can nonetheless defeat liability by demonstrating that it would have made the same decision absent the forbidden consideration") (internal citations omitted). "The Mount Healthy defense, however, demands more than this type of general conclusion." *Id.*

Lesser statutory standards cannot be applied in lieu of strict scrutiny for a government employer. "In most of the cases alleging religious discrimination under Title VII, the employer is a private entity rather than a government, and the first amendment to the Constitution is therefore not applicable to the employment relationship." *Brown v. Polk Cnty.*, 61 F.3d 650, 654 (8th Cir.

20

1995). But when the employer is a government actor, and a litigant has mounted a constitutional challenge, a court is "constrained to apply" a constitutional standard "and not Title VII standards." *United Black Firefighters Ass'n v. Akron*, 976 F.2d 999, 1012 (6th Cir. 1992).

According to the Second Circuit, "Title VII was designed to supplement rather than supplant, existing laws and institutions relating to employment discrimination." *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 455 (2008). The First Merits Panel held that the First Amendment also applies to the "fresh consideration." "It is, of course, true that the citywide panel must abide by the First Amendment. By ordering the citywide panel's proceedings to abide by other applicable law, the Motions Panel Order does not (and could not) suggest that the First Amendment is somehow inapplicable to those proceedings." (App. 1724); *see also Putaro v. Carlynton Sch. Dist.*, No. 2:07-cv-817, 2007 U.S. Dist. LEXIS 107326 (W.D. Pa. Dec. 12, 2007):

> Unlike the Equal Protection Clause, which limits the actions of only state actors, Title VII limits the actions of private entities falling within its coverage. When a state actor falls within the definition of the term "employer" contained in Title VII, it is limited by both the Equal Protection Clause and Title VII. It is not unusual for a federal constitutional provision and a federal anti-discrimination statute to provide overlapping protection. That does not mean that the two sources of federal law are mutually dependent upon one another. Although both the Equal Protection Clause and Title VII may prohibit the same forms of gender discrimination in certain instances, a cause of action under § 1983 for violations of the Equal Protection Clause is in no way affected by Title VII.

Here, the constitutional claims must be assessed alongside statutory requirements.[8]

---

[8] Plaintiffs cite *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598-600 (2008) for the proposition that constitutional claims against government employers may be afforded a lesser standard of constitutional scrutiny. This case (and argument) is inapposite for two reasons. First, the Mandate is a regulatory action, extending beyond government employees and imposing requirements on

**VI.**     **Plaintiffs' Procedural Due Process Claim Survives**

The Consolidated Complaint sets forth sufficient facts to show that Plaintiffs' procedural due process rights were violated.

Initially, all DOE employees were presented with a procedure for applying for a religious exemption from the Mandate that was unconstitutional in its substance – as the Second Circuit has already found. Any adverse employment decision made against an employee with religious objections under the Stricken Standards violated Plaintiffs' religious rights because the process itself was constitutionally flawed. *Inter alia*, the instructions and list of documentation they were told they could, and could not, submit in support of religious exemption applications violated Constitutional standards. The flawed procedure and instructions meant that every one of the initial and appellate-arbitral reviews that Plaintiffs received was illegal.

Because submission to the Defendants' unconstitutional process was mandatory, but constituted an "unconstitutional condition," *see infra*, even those who refused to submit an application through the procedure suffered a violation of procedural due process: they were deprived of a constitutionally valid opportunity to apply for a religious exemption. For those persons who never submitted applications, or who never submitted an appeal to the arbitral panels, no corrective procedure has ever been offered by the Defendants. These Plaintiffs have suffered injury as a result of the Mandate; they have been told that they may apply for religious exemptions

---

patrons and private sector employees. Second, *Engquist* allowed lesser review from equal protection of one claims on non-fundamental or protected characteristics. No case law exempts the government from strict scrutiny in discrimination cases alleging that the discrimination was based on religion or another constitutionally protected characteristic.

from the vaccination requirement (and that some people have received exemptions); but they have never been afforded a Constitutionally compliant opportunity to submit an application or appeal. While the City invited persons who had received a denial from the arbitral appeals process to make a third application to the Citywide Appeals Panel (which Defendants claim did not apply the unconstitutional Stricken Standards), thousands of other DOE employees were not afforded such an opportunity.

Even after the Second Circuit found that the DOE's first- and second-stage exemption standard review of Plaintiffs' applications failed to satisfy strict scrutiny, but allowed the Defendants one last chance to show that they could conduct a fair consideration of the applications under Constitutionally compliant standards, the City flunked the test. Procedurally, they were required by Title VII to "demonstrate" the basis for any "undue burden" findings. They did not do so. Nor did they satisfy statutory procedural safeguards put in place by the State and City Human Rights Laws to safeguard review of denial of discrimination complaints, as discussed *infra*.

Defendants' continued animus toward religious freedom is reflected in their discussion of procedural due process requirements in their brief. They cite caselaw to establish that procedural due process violations require deprivation of either a protected property or liberty interests, then deny that non-tenured teachers had any constitutionally protected interest in their jobs. Yet the free exercise of religion is a constitutionally protected liberty interest. *See, e.g., Zelman v. Simmons-Harris,* 536 U.S. 639, 679 (2002); *Thomas v. Lord*, 174 Misc. 2d 461, 466, 664 N.Y.S.2d 973, 976 (N.Y. Sup. Ct. 1997).

As set forth *infra*, upon remand for determination of Plaintiffs' applications by the Citywide Appeals Panel, the burden shifted to the Defendants to show that their response to the

23

applications satisfied strict scrutiny requirements. This is, in part, a procedural right which the Plaintiffs were denied. They received no explanation for their denials from the panel itself. Later, after Plaintiffs filed a motion in this Court, the Defendants' lawyers came through with a document which purported to provide a summary of explanations for all Plaintiffs, but which also failed to satisfy the requirements of strict scrutiny, Title VII, the State Human Rights Law or the New York City Human Rights Law (described *infra*).

## VII.   Plaintiffs' Constitutional Claims Survive Any Level of Scrutiny

### A.   The Challenged Policies Cannot Survive Strict Scrutiny Review

"A government policy can survive strict scrutiny under the First Amendment's Free Exercise Clause only if it advances interests of the highest order and is narrowly tailored to achieve those interests." *Fulton*, 141 S. Ct. at 1888. "So long as the government can achieve its interests in a manner that does not burden religion, it must do so, in order to survive strict scrutiny under the Free Exercise Clause of the First Amendment." *Id.* Here, the government bears the burden of establishing that its actions are narrowly tailored to survive strict scrutiny. Defendants cannot meet this high bar and have not even tried to assert that they can in their moving papers.

### B.   The Government's Policies Cannot Even Survive Rational Basis Review

#### 1.   Vaccination Does Not Prevent Transmission

As more fully detailed in the Amended Complaint, the DOE Mandate is irrational because it is firmly established that mandating COVID-19 vaccines cannot stop the spread of disease in a school community. *See, e.g.*, ECF No. 102 ¶¶ 8, 56, 59, 188-200. As such, unvaccinated employees who need to exercise a religious exemption from the Mandate do not pose a direct threat to those around them. *See, e.g.*, ECF No. 102 ¶¶ 3, 188-200. At the very least, under the statutory standards,

24

Defendants bear the burden of establishing through a preponderance of evidence that Plaintiffs cannot be safely accommodated. This is an affirmative defense, and does not allow the claims to be dismissed here.

### 2.     The Alleged Health Concerns are Squarely Undermined by the Facts

Any alleged health concerns are squarely undermined by the facts of this case. For example, the City admits that they elected to exempt athletes, entertainers and their entourages from the vaccine requirements based on economic concerns, even though these groups presented as much risk if not more than teachers (as noted in the Amended Complaint, children are at the lowest risk of catching and spreading COVID-19 and teachers are already mandated to test weekly and practice other preventative measures that are far more capable of stopping the spread of COVID-19 than the non-sterilizing vaccines).

Moreover, the fact that the DOE has been requiring actively infected teachers to return to classrooms while still able to spread disease, while excluding uninfected teachers who cannot be vaccinated for religious reasons, shows that the Mandate is not focused on stopping the spread of COVID-19.

## VIII.   Plaintiffs' Supremacy Clause/Emergency Use Authorization Claim Survives

Plaintiffs assert that the Mandate is preempted by federal law because the FDA approved COVID9 vaccines are not available in the U.S., meaning that the Mandate requires them to take products available under Emergency Use Authorization ("EUA"). Preemption, rooted in the Constitution's Supremacy Clause, provides that federal statutes "shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. The Clause acts as "a rule of decision," establishing that federal law prevails over state law when the two conflict, meaning that every preemption question is a

question of statutory construction. *Murphy v. NCAA*, 138 S. Ct. 1461, 1479 (2018) (quotation marks omitted); *Morales v. TWA*, 504 U.S. 374, 383 (1992) ("The question, at bottom, is one of statutory intent, and we accordingly begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." (quotation marks omitted)).

Federal law specifically prohibits mandatory use of EUA products for civilians since "consequences" do not condone coercion. Under 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(I-III), individuals must be informed "of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks." This statutory language "to accept or refuse" an unapproved medical product frames an individual's choice. Prominent health law scholars reject the view that "consequences" for refusal of an EUA product permits reprisal. Efthimios Parasidis &Aaron S. Kesselheim, Assessing The Legality Of Mandates For Vaccines Authorized Via An Emergency Use Authorization, HEALTH AFFAIRS (Feb. 16, 2021) https://www.healthaffairs.org/do/10.1377/hblog20210212.410237/full/ (Concluding that under cannons of statutory construction, the most plausible interpretation is that "consequences" refers exclusively to health risks of accepting or refusing an EUA product during a public health emergency – not coercive measures related to refusal.).

Federal precedent establishes that even members of the U.S. military may not be coerced to accept EUA products. The Department of Defense "may not require a member of the armed services to receive an "investigational new drug or a drug unapproved for its applied use . . . ." *Bates v. Donley*, 935 F. Supp. 2d 14, 17 (2013). *See, also, Doe #1 v. Rumsfeld*, 297 F. Supp. 2d

119 (D.D.C. 2003)([T]he United States cannot demand that members of the armed forces also serve as guinea pigs for experimental drugs. . . . The court ruled that requiring a person to submit to an [EUA] inoculation without informed consent or the presidential waiver is an irreparable harm for which there is no monetary relief); *see Doe v. Rumsfeld*, 341 F. Supp. 2d 1, 19 (D.D.C. 2004) (solitary confinement and other coercive conditions cannot be imposed for refusing an EUA product).

Defendants concede that products licensed under Emergency Use Authorization ("EUA") cannot be legally mandated. However, they dispute Plaintiffs' assertions of fact that all COVID-19 vaccines available in New York are governed by EUA prohibitions on coerced use. To the extent Defendants disagree, this is a disputed question of fact, and cannot be resolved through judicial notice, and certainly not through a non-binding decision concerning a preliminary injunction from the state of Oregon, which is not consistent with other Court's findings regarding the difference between the licensed and EUA versions of these products. *See, e.g., Doe v. Austin*, 3:21-cv-01211-AW-HTC (D. Fl. Nov. 12, 2021) (denying preliminary injunction but noting significant differences between EUA versions of the Pfizer vaccine and FDA approved version).

## IX.    Plaintiffs' Claims Survive *as Applied to the Individual Plaintiffs*

### A.    COVID-19 Vaccination is not a Condition of Employment for Exemption-Eligible Employees

DOE contends that Plaintiffs' claims must be dismissed because DOE policy requires vaccination as a qualification for the job. But DOE policy also permits *exemption from vaccination* on medical and religious grounds. Exemption recipients are not required to be vaccinated, *by DOE policy*. In *Broecker v. N.Y.C. Dep't of Education*, the Court noted that vaccination was not required

27

as a "condition of employment" for persons who received exemptions because "the City *amended the Vaccination Mandate to allow for reasonable medical and religious accommodation*" after "City unions[ ] brought a challenge to the Vaccination Mandate, including the omission of religious and medical exemptions on constitutional and other grounds." *No. 21-CV-6387(KAM) (LRM)*, 2022 U.S. Dist. LEXIS 25104, at *44 n.13 (E.D.N.Y. Feb. 11, 2022) (emphasis supplied) (see Minicucci Decl. Exh. E). The decision in *O'Reilly v. Bd. of Educ.*, 2022 NY Slip Op 30173(U), ¶ 4 (Sup. Ct., N.Y. Cnty. Jan. 20, 2022) (*see* Minicucci Decl. Exh. F) is easily distinguishable on the same grounds: unlike the Plaintiffs here, the petitioner "[did] not allege that respondents improperly denied her requested exemption or accommodation." *Id*. The fact that the Defendants' various review processes have denied Plaintiffs' request for exemption or accommodation is not grounds for dismissal of their Amended Complaint: rather, it is an essential element of the Amended Complaint.

Under the rubric of "condition of employment" the DOE also seeks the dismissal of claims by employees who refused to apply for relief under one or more steps of the DOE's exemptions application process. But DOE's sole process for accepting and processing initial applications for religious exemption was unconstitutionally tainted by its discriminatory criteria and limitation of the kinds of claims and evidence that it purported to accept or not to accept. As the Circuit Court held in this matter:

> These procedures cannot survive strict scrutiny because denying religious accommodations based on the criteria outlined in the Accommodation Standards, such as whether an applicant can produce a letter from a religious official, is not narrowly tailored to serve the government's interest in preventing the spread of COVID-19. The City offers no meaningful argument otherwise.

*Kane v. De Blasio,* 19 F.4th 152, 169 (2d Cir. Nov. 28, 2021).

28

To preserve their right to apply for an exemption, Plaintiffs had no obligation to submit to a process that unconstitutionally deprived them of a fair adjudication of their religious objections. That would violate the "unconstitutional conditions doctrine." *Frost & Frost Trucking Co. v. R.R. Com. of Cal., 27*1 U.S. 583, 593-94 (1926).

As for Defendants' arguments that other claims should be dismissed for failure to comply with timeliness requirements set by the Stricken Standards, or who attempted to apply for exemptions by mail outside of the Stricken Standards procedures, or who refused to submit an appeal to a "rigged" arbitral process, the same principle applies.

**B.      The State Courts Do Not Have Exclusive Jurisdiction Over Plaintiffs' Claims**

The Amended Complaint alleges that the Mandate is unconstitutional and that the Defendants breached Plaintiffs' rights by imposing unconstitutional conditions upon their applications for religious exemption from the Mandate. These are classic federal causes of action. The jurisdiction of this court is clearly set forth in federal statutes. *See, e.g.,* 28 U.S.C. § 1331. New York City is not immune from federal jurisdiction when one of its employees alleges that the City has violated his or her rights under federal law. *Cartagena v. City of N.Y.*, 257 F. Supp. 2d 708, 711 (S.D.N.Y. 2003) (Chin, U.S.D.J.) (acknowledging District Court jurisdiction over claims that are based on laws other than Article 78). Dismissal on the basis of the State Supreme Court's exclusive jurisdiction over Article 78 claims is required only for claims and remedies that are created by Article 78. *Id. .*      Plaintiffs' claims against the City and the other defendants are not *creations of the State legislature in Article 78*. Even the claims arising under the New York City and New York State Human Rights Laws are not the proper subject of Article 78 proceedings*. Kickertz v. N.Y. Univ.*, 110 A.D.3d 268, 272-73, 971 N.Y.S.2d 271, 276 (1st Dep't 2013). Thus,

29

the reasoning of the courts in *Kohlasch* and the cases cited by Defendants simply do not apply to Plaintiffs' claims.

### C.     Additional Claims for Individual Dismissal of Claims have no Merit

Defendants argue that Plaintiffs' Toro and Castro's claims should be dismissed, since they had their religious accommodations granted. ECF No. 112 at 29.  But even though their "accommodation" was granted, they are still barred from entering any classroom and suffer additional consequences that cannot survive strict scrutiny. ECF No. 102 ¶¶ 489-90; ¶¶ 281-83. Being barred from the classroom irreparably harms their ability to progress in their careers. Plaintiff Castro has also suffered irreparable harms as a result of the DOE's First Amendment violations in that, for example, he was wrongfully suspended when the annual health insurance benefits transfer period occurred for New York City employees and was thus ineligible to choose the plan he needed to ensure coverage for his family this year, including his unborn son. *Id*. ¶ 276.

Defendants argue that Plaintiffs' Grimando, LoParrino, Giammarino, and Weber's untimely religious exemption requests insulate them from this Court's review. ECF No. 112 at 29. But Defendants' version of the facts is misleading and ignores clear First Amendment violations.

Defendants excused Plaintiff Grimando's initial failure to submit her original religious exemption request by the deadline and considered it anyway under Stricken Standards. ECF No. 102 ¶¶ 668, 680. The reason she did not initially apply was that she is Catholic and assumed that since the pope has spoken publicly in favor of the vaccine, she would be automatically denied under the Stricken Standards. *Id*. ¶ 663. True to Grimando's fears, the DOE denied her request. *Id.* at ¶ 680. Adding insult to injury, Defendants suggest that Plaintiff Grimando elected not to appeal the DOE's denial, and "so her request was not subject to the arbitrator appeal process and

30

she was thus not eligible to submit an application to the Citywide Panel." ECF No. 112 at 5, n.7. But Grimando did not appeal her denial because Defendants did not allow her to do so—even when her original request was decided under the Stricken Standards—as stated on the face of the Complaint. ECF No. 102 ¶¶ 681-82. A clearer First Amendment violation could not be pleaded.

Plaintiffs Giammarino and LoParrino also did not apply for a religious exemption initially because they are Catholic and knew they would not be able to meet the Stricken Standards' requirement of a clergy letter. *Id.* ¶¶ 733-35, 58-61. Despite the DOE being on notice that the Stricken Standards were the reason Giammarino did not initially apply, it ignored her subsequent religious exemption request—even after the Second Circuit's November 28, 2021 decision. *Id*. ¶¶ 744, 47-48, 51-52. It also ignored LoParrino's later request for a religious exemption. *Id*. ¶¶ 69-80. It did, however, acknowledge receipt of Giammarino's medical exemption request that she also mailed in late and mistakenly acknowledged receipt of a medical exemption request from LoParrino (even though he only applied for a religious exemption) and encouraged both of them to apply for a medical exemption on SOLAS. *Id*. ¶¶ 773-74, 750. The message was clear: late requests for medical accommodation are welcome, but late requests for religious accommodation—even when employees were too intimidated to apply because of the Stricken Standards—were not. Plaintiff Weber, whose religious exemption request was the "strongest [his UFT representative] had seen yet" chose not to appeal his first request—denied under the Stricken Standards—because he believed it would be futile. *Id*. ¶¶ 643, 50, 52, 53, 56. Even after being put on notice of this, the DOE ignored his pleas to re-apply. *Id*. ¶¶ 654-56. The use of the Stricken Standards to deny each of these DOE employees, and the continued refusal to reconsider their requests, even after the Second Circuit's strong reprimand, is a clear constitutional violation.

Defendants also argue that the Plaintiffs' Complaint should be dismissed because granting the remaining Plaintiffs accommodations would pose an undue hardship to the DOE.

Nevertheless,

> [o]n a motion to dismiss the issue of undue hardship is irrelevant. The concept of 'undue hardship' is a substantive defense employed in the context of a motion for summary judgment or at a trial on the merits. *Trans World Airlines Inc v Hardison*, 432 U.S. 63, 97 S. Ct. 2264, 53 L. Ed. 2d 113 (1977). If the employee establishes a prima facie case, the burden then shifts to the employer to show it could not accommodate the employees' religious beliefs without undue hardship. *Knight*, 275 F.3d at 167; *Hussein v. Hotel Emples. Restaurant Union*, 108 F. Supp. 2d 360, 370 (S.D.N.Y. 2000). This burden shifting analysis is not utilized in the context of a motion to dismiss, which only looks at whether the claimant is entitled to offer evidence to support the claims alleged.

*Zavala v. Dovedale Sales Corp.*, No. 2:05-cv-01825-ADS-ETB, 2006 U.S. Dist. LEXIS 112761, at *10-11 (E.D.N.Y. Mar. 11, 2006). Therefore, whether or not this Court is persuaded by Defendants' defense of undue hardship, it has no bearing on Defendants' motion to dismiss.

Further, even if this Court was to examine whether an undue hardship existed, the Second Circuit commanded the Citywide Appeals Panel to adhere to not just Title VII but also the New York State and City Human Rights Laws, which have a stricter "undue hardship" standard than Title VII and must be analyzed independently. ECF No. 102 ¶¶ 936-42, 48-54. Plaintiff Bryan and other similarly situated proposed class members were employed as remote workers before the vaccination mandate was implemented, so denying them accommodations on the basis of undue hardship is at best disingenuous and at worst, unconstitutional. *Id*. ¶¶ 38, 694-95, 697-99, 718-19.

## X.   Plaintiffs Have Properly Pled Claims Under the SHRL and the CHRL

To state a claim for religious discrimination under both the NYSHRL and the NYCHRL, plaintiffs must allege that "'(1) they held a bona fide religious belief conflicting with an

employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement.'" *Stavis v. GFK Holding, Inc.*, 769 F. Supp. 2d 330, 335 (S.D.N.Y. 2011) (quoting *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006)). Defendants do not argue, however, that Plaintiffs fail to state any of these elements. This is likely because Plaintiffs pled them comprehensively in the Complaint. ECF No. 102 ¶¶ 262, 289, 313, 327, 479, 498, 507, 509, 519-21, 527, 532, 549-51, 565, 577-81, 586, 588, 610-12, 618 642, 644-47, 672-79, 703-710, 737-40, 763-68 (alleging bona fide religious beliefs conflicting with employment requirement); *Id.* ¶¶ 263, 265, 292, 294, 297, 314, 318, 320, 327, 480, 483, 500, 522, 553, 582, 613, 616-618, 642, 669-70, 693, 712, 715, 748, 769-71 (alleging that plaintiffs informed the DOE of this belief); *Stavis*, 769 F. Supp. 2d 330, ¶¶ 272, 276, 281, 300, 306, 321, 330, 510, 513, 535, 537, 567-68, 571, 591, 596, 621, 625, 630, 650, 657, 683-85, 687, 721, 729, 753-54, 777, 780, 489-91, 493-94 (alleging that Plaintiffs were disciplined for failing to comply with the vaccine mandate).

Defendants instead argue that accommodating Plaintiffs would pose an "undue hardship" because Plaintiffs are purportedly "wholly unable to perform an 'essential function' of their positions as classroom teachers: in-person teaching." ECF No. 112 at 33. Again, however, all Plaintiffs are required to do at this juncture is to plead a prima facie case, and so Defendants' arguments regarding undue hardship are not relevant here.[9] *Zavala v. Dovedale Sales Corp.*, 2006 U.S. Dist. LEXIS 112761, *10-11 (E.D.N.Y. 2006).

---

[9] Even if undue hardship was relevant to this motion, Plaintiffs have repeatedly pled that they were wholly able to perform the "essential function" of their jobs remotely during the height of the

## XI.    Plaintiffs' Consolidated Class Action Amended Complaint Satisfies Rule 8

It is perhaps time for Corporation Counsel to retire their reliance on *Conley v. Gibson* when basing their motions to dismiss pleadings on Federal Rule of Civil Procedure 8. The Supreme Court did so in *Bell Atl. Corp.*, 550 U.S. at 563 (the Conley formulation "has earned its retirement.") In *Twombley*, the Court noted that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* . The *Twombley* court found that a complaint alleging restraint of trade should be dismissed because its essential claims consisted of "merely legal conclusions resting on the prior allegations." *Id.* at 564. Its allegations, then, contained too *few* relevant factual allegations to render its claims plausible enough to survive dismissal. *Id.* at 566.

The *Twombley* standard is not limited to complex commercial cases but applies also to complaints alleging civil rights violations. *Ashcroft*, 556 U.S. at 678-79.

All of Defendants' negative case citations predate *Twombley* and *Iqbal* and therefore refer to a standard that was overruled by the Supreme Court *thirteen years ago.*

---

pandemic. ECF No. 102 ¶¶ 239, 251, 257, 348, 385, 425, 468, 470, 471, 473,  475, 499, 514, 517, 538, 541, 572, 597, 600, 631, 634, 688, 697, 730, 755, 941, 953. Defendants also make the entirely circular argument that Plaintiffs and proposed class members are no longer qualified for their positions, "a prerequisite to liability" under the state's human rights laws. ECF No. 112 at 2. But it is Plaintiffs' position—set forth very clearly in its Amended Complaint—that being vaccinated in violation of their sincerely held religious beliefs is not a constitutional job qualification. ECF No. 102  ¶¶ 157, 592-95, 569-70, 626-29. Defendants cannot assume that they win on their argument in order to attack Plaintiffs' qualifications, especially in the context of a motion to dismiss when all reasonable inferences must be drawn in favor of Plaintiffs. *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000).

The allegations in the Amended Complaint are extensive by necessity. Right up front, it is fair to point out that the Amended Complaint was court-ordered; it combines the allegations that were originally set forth in two shorter complaints. It meets the *Twombley/Iqbal* standards by pleading facts showing that each of twenty-one individual plaintiffs is entitled to relief on an "as applied" basis. It does not repeat the legal theories for each plaintiff. Rather, it states each theory in a separate section that applies to all Plaintiffs – avoiding redundancy. Anything less risked failing to plead sufficient facts to show "plausibility" as required by *Iqbal*.

Even if this Court was to find that the Amended Complaint violated Rule 8, the proper remedy would be either to grant the Plaintiffs leave to amend, or to strike extraneous pleadings from the complaint, not to dismiss the complaint in its entirety. *See, e.g.,* S*alahuddin v. Cuomo,* 861 F.2d 40, 43 (2d Cir. 1988).

## CONCLUSION

For all the reasons stated herein, Plaintiffs respectfully urge this Honorable Court to deny Defendants' Motion to Dismiss the Complaint.

Dated: New York, New York
     March 30, 2022

| **GIBSON LAW FIRM, PLLC** | **NELSON MADDEN BLACK LLP** |
|---|---|
| */s/Sujata S. Gibson* | */Barry Black* |
| By: Sujata S. Gibson, Esq. | By: Barry Black |
| 408 W. Martin Luther King, Jr. St. | Jonathan R. Nelson |
| Ithaca, NY 14850 | Sarah E. Child |
| (607) 327-4125 | 475 Park Avenue South, Suite 2800 |
| sujata@gibsonfirm.law | New York, NY 10016 |
| | (212) 382-4300 |
| | bblack@nelsonmaddenblack.com |

*Attorneys for Plaintiffs*

35