

## NYC DOE Position Statement: [Insert Employee Name]

<u>Title</u>:
<u>Subject</u>:
<u>Work Location</u>: [School Name (Borough)]

The New York City Department of Education ("DOE") serves approximately one million students across New York City in communities disproportionately affected by the COVID-19 pandemic, including hundreds of thousands of students who were, until recently, not eligible to be vaccinated. Recognizing the need for in-person learning and recovery of instruction after two school years affected by the pandemic, on May 24, 2021, the New York City Mayor and DOE Chancellor announced a full return to in-person learning for DOE students and staff for the 2021-2022 school year and that, consistent with the full return to in-person learning, there would be no fully remote staff positions.

In September 2021, the DOE resumed an in-person-only instructional program for all students in its pre-K through grade 12 schools and programs. Other than a small program for medically fragile students, all DOE school programs are currently conducted in person, and all DOE staff are expected to work in person.

Consistent with CDC guidance, which has identified vaccination as "the most critical strategy to help schools safely resume full operations," to safely reopen schools and minimize disruption to in-person learning, the New York City Commissioner of Health and Mental Hygiene issued an order on September 15, 2021,[1] requiring vaccination against COVID-19 for all DOE staff (the "Vaccine Mandate").

Ensuring that DOE staff are vaccinated against COVID-19 not only helps to protect them and their students from infection, but it also prevents unnecessary interruption of in-person learning at DOE schools since it minimizes the need for students and staff to miss class due to infection, quarantine, or classroom or school closure. Unlike other municipal employees, the vast majority of DOE staff must work in classrooms, lunchrooms, or other indoor settings in close contact for long hours with students, most of whom are unvaccinated and many of whom have preexisting health conditions (e.g., asthma, diabetes, or obesity) that place them at higher risk for severe COVID-19 illness. Particularly as COVID-19 cases among children continue to rise, measures like social distancing, mask wearing, and frequent testing do not sufficiently protect students in the school setting. Employees who receive exemptions therefore require an assignment that does not involve close contact with students.

Here, the employee requests a religious exemption from the Vaccine Mandate. If the employee can demonstrate a sincerely held religious belief (which, for the purposes of this review, DOE is not addressing), granting an exemption to this employee would create an undue hardship for the DOE for the following reasons:

---

[1] The September 15, 2021 order superseded a Health Commissioner's order issued on August 24, 2021.

- An exemption from the Vaccine Mandate would result in the inability of this employee to perform the essential functions of the position. This employee's position necessarily requires them to be in close contact for prolonged periods of time indoors with students, many still unvaccinated. As noted, other mitigation measures provide insufficient protection, particularly when transmission rates remain high.

- State law and applicable collective bargaining agreements, including the operation of seniority systems, generally limit DOE's ability to transfer staff between schools except in limited circumstances not applicable here. Accordingly, DOE lacks flexibility to unilaterally and expeditiously transfer existing DOE staff around the system to fill gaps created by DOE employees granted exemptions from the Vaccine Mandate.

- More than 3,300 DOE staff have requested religious exemptions (far greater than the number of requests for medical exemptions). In light of these numbers, granting an exemption from the Vaccine Mandate would require the DOE to bear significant costs and operational difficulties. These include (1) identifying or creating sufficient alternative assignments, and (2) hiring and training additional staff to perform the exempted employee's essential job functions while continuing to pay the exempted employee—effectively requiring the DOE to pay two salaries for one position, and to rely on a replacement for an undetermined period of time. Such costs and uncertainty negatively impact the ability of schools to plan, budget, and effectively support students.

Importantly, the prior accommodation of unvaccinated staff in assignments that do not require interaction with students did not mitigate the issue of undue hardship for DOE. Under a September 10, 2021 Arbitration Award and similar arbitration agreements, DOE employees granted an exemption from the Vaccine Mandate (1) shall be permitted to remain on payroll; (2) shall not be permitted to enter a school building while unvaccinated; and (3) may be assigned to work outside a school building to perform academic or administrative functions.

In responding to requests for exemptions made pursuant to the process established by the Arbitration Award, DOE has maintained that, as a general matter, relieving school-based employees of their school-based functions imposes an undue hardship on DOE by requiring the DOE to identify—or create—alternative assignments outside of school buildings. Allowing such employees to remain in school settings unvaccinated, even with other safeguards like masking and testing, would present an unacceptable risk to schoolchildren, staff, and others.

Our experience in providing exemptions in accordance with the Arbitration Award has only confirmed that creating such alternative assignments poses an undue hardship. The DOE has expended and would continue to expend significant resources to create alternative assignments that amount to employees with exemptions generally performing non-essential functions while DOE pays for a second person to perform the essential functions of the exempted employee's position. Paying one person to do the essential functions of an employee's job while also paying the employee to do low-priority administrative work is arguably unreasonable in a single case, much less multiplied across the entire school system.

There is simply limited work available for employees to support their schools long-term from outside the school building. Many tasks, such as creating instructional materials and managing professional development, are already performed by—and in no way obviate the need for—the vaccinated employees working in-person. Thus, even when an employee can provide off-site support to their school, it remains necessary to have another employee perform all of the employee's essential on-site work (for example, delivering instruction, supervising students, and providing in-person services and supports).

It is also difficult to find substantive central assignments for school-based employees. Apart from remote instruction for medically fragile students (a small need that has already been met), the central roles created for exempted employees typically involve administrative tasks for which the employees lack previous expertise or training. Accordingly, additional resources have been diverted to train the exempted employees and assign supervisors to oversee their work.

Moreover, due to the limitations of existing central offices—including the need to minimize contact between unvaccinated staff and staff who have complied with the Vaccine Mandate—the DOE has diverted and would need to further divert resources to create space for exempted employees to work with sufficient supervision, given that they are no longer performing the familiar essential functions of their position.

Indeed, creating assignments, organizing locations, coordinating supervision, and training exempted employees in unfamiliar work streams diverts DOE staff from their necessary regular job responsibilities, while the exempted employees still do not perform the functions for which they are certified, hired, and trained.

Finally, accommodating exempted employees in alternative assignments outside of their school buildings may necessitate reductions in other planned and budgeted services to serve students this school year. The need for DOE to pay employees to provide essential in-person services while also paying an employee to do off-site work of minimal value may lead to budget reductions to schools with such potential impacts as increased class size; reduction in instructional materials; cancellation of after-school, summer school and/or weekend academic tutoring; reduction in socio-emotional supports including social workers and guidance counselors; reductions in non-core instruction such as arts and physical education; and deferred or cancelled investments in upgrades to systems/technology including wi-fi and school safety initiatives.

Given the full return to in-person learning and the Vaccine Mandate, DOE maintains that granting exemptions to employees who work in schools or similar settings generally poses an undue hardship for the agency because these employees are unable to perform the essential functions of their positions: serving students attending school in-person. Assigning unvaccinated staff to work at alternative assignments amounts to creating assignments that did not previously exist, for employees to do work that is generally not a priority, while simultaneously hiring and training staff to cover essential functions in schools. To be sure, there may be a small number of special cases warranting a different approach, but as a general matter this is an undue hardship that has been shown on the ground and will only grow with each exemption granted.