21 Civ. 7863 (VEC) (Lead Case)  | 21 Civ. 8773 (VEC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL KANE, et al.,

Plaintiffs,

-against-

BILL DE BLASIO, et al.,

Defendants.

MATTHEW KEIL, et al.,

Plaintiffs,

-against-

THE CITY OF NEW YORK, et al.,

Defendants.

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' THIRD MOTION FOR PRELIMINARY INJUNCTION

### HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-117
New York, New York 10007-2601

*Of Counsel*: Lora Minicucci and Bilal Haider
Tel.:  (212) 356-2078

Matter No.: 2021-028116

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................II

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ......................................................................................................................... 1

POINT I
PLAINTIFFS' REQUEST FOR A MANDATORY INJUNCTION
FAILS ........................................................................................................................ 1

POINT II
PLAINTIFFS ARE NOT SUFFERING IRREPARABLE HARM ................................... 3

POINT III
THERE IS NO LIKELIHOOD OF SUCCESS ON THE MERITS ................................. 5

    A.   Plaintiffs' Purported "New Facts" Are Irrelevant ......................................... 5

    B.   The Vaccination Mandate Is a Lawful, Generally
        Applicable, Neutral Condition of Employment ............................................... 8

    C.   The Citywide Appeals Panel Review Standards
        Comply with Title VII and State and Local Law ......................................... 11

    D.   Accommodating Plaintiffs Would Be an Undue
        Hardship ....................................................................................................... 12

    E.   Plaintiffs Present a Direct Threat to the Safety of DOE
        Students and Staff ........................................................................................ 13

    F.   There Is No Violation of the Establishment Clause ..................................... 16

POINT IV
THE BALANCE OF EQUITIES DOES NOT TIP IN FAVOR OF
PLAINTIFFS ........................................................................................................... 17

CONCLUSION .................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Abdul Wali v. Coughlin,
    754 F.2d 1015 (2d Cir. 1985).................................................................................................1

Almontaser v. N.Y. City Dep't of Educ.,
    519 F.3d 505 (2d Cir. 2008)...............................................................................................3

Broecker v. New York Dept. of Educ.,
    No. 21-CV-6387 (KAM) (LRM), 2022 U.S. Dist. LEXIS 25104 (E.D.N.Y.
    Feb. 11, 2022) .............................................................................................................6, 10

Broecker, et al. v. N.Y. City Dept. of Educ., et al.,
    No. 21 Civ. 6387 (KAM) (RLM), (E.D.N.Y. Nov. 24, 2021)................................................8

Chevron U.S.A. v. Echazabal,
    536 U.S. 73 (2002)..........................................................................................................14

Columbus Ale House, Inc. v. Cuomo,
    495 F. Supp. 3d 88 (E.D.N.Y. 2020) ................................................................................16

Desert Palace, Inc. v. Costa,
    539 U.S. 90 (2003)..........................................................................................................13

Dexter 345 Inc. v. Cuomo,
    663 F.3d 59 (2d Cir. 2011)...............................................................................................3

Doninger v. Niehoff,
    527 F.3d 41 (2d Cir. 2008).............................................................................................2, 5

Elrod v. Burns,
    427 U.S. 347 (1976).........................................................................................................5

Emp. Div. v. Smith,
    494 U.S. 872 (1990).........................................................................................................9

Ferrelli v. State Unified Court Sys.,
    No. 1:22-CV-0068, 2022 U.S. Dist. LEXIS 39929 (N.D.N.Y. Mar. 7, 2022) .......................11

Fulton v. City of Phila.,
    141 S. Ct. 1868 (2021)....................................................................................................11

Garland v. N.Y.C. Fire Dep't,
    No. 21-cv-6586 (KAM)(CLP), 2021 U.S. Dist. LEXIS 233142 (E.D.N.Y.
    Dec. 6, 2021)..................................................................................................................10

Garland v. New York City Fire Department,
  2021 LRRM (BNA) 464267 (E.D.N.Y. 2021) ........................................................6, 9

Hamilton v. City of N.Y.,
  No. 18-CV-4657 (NGG) (VMS), 2021 U.S. Dist. LEXIS 185855 (E.D.N.Y.
  Sep. 28, 2021) ..........................................................................................................10

HBO, Inc. v. Showtime/The Movie Channel, Inc.,
  832 F.2d 1311 (2d Cir. 1987).....................................................................................13

Hernandez v. Sales,
  No. 21-00096, 2021 U.S. Dist. LEXIS 172567 (W.D. Tex Aug. 19, 2021)...........................15

Impax Media Inc. v. Northeast Adver. Corp.,
  No. 17 Civ. 8272, 2018 U.S. Dist. LEXIS 4940 (S.D.N.Y. Jan. 10, 2018)...............................3

Jacobson v. Commonwealth of Massachusetts,
  197 U.S. 11 (1905).....................................................................................................18

Kalsi v. N.Y.C. Transit Auth.,
  62 F. Supp. 2d 745 (E.D.N.Y. 1998) ............................................................................9

Kane v. De Blasio,
  19 F.4th 152 (2d Cir. 2021) .....................................................................................7, 8

Larson v. Valente,
  456 U.S. 228 (1982)...................................................................................................16

Latino Officers Association v. Safir,
  170 F.3d 167 (2d Cir. 1999)........................................................................................5

Loiacono v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.,
  2022 NY Slip Op 30758(U) (N.Y. Sup. Ct., N.Y. Cnty March 31, 2022) ...............................8

New York City Municipal Labor Committee v. City of New York,
  Index No. 151169/2022 ..............................................................................................11

Peck v. Montefiore Med. Ctr.,
  987 F. Supp. 2d 405 (S.D.N.Y. 2013)...........................................................................4

Phillips v. City of N.Y.,
  775 F.3d 538 (2d Cir. 2015).......................................................................................18

Prince v. Massachusetts,
  321 U.S. 158, 64 S. Ct. 438 (1944).............................................................................18

Savage v. Gorski,
  850 F.2d 64 (2d Cir. 1988).........................................................................................4

Score, Inc. v. Cap Cities/ABC, Inc.,
  724 F. Supp. 194 (S.D.N.Y. 1989) ...................................................................3

Sherr v. Northport-East Northport Union Free Sch. Dist.,
  672 F. Supp 81 (E.D.N.Y. 1987) .....................................................................18

Sista v. CDC Ixis N. Am., Inc.,
  445 F.3d 161 (2d Cir. 2006).............................................................................15

Thomas v. Review Bd. of Ind. Emp't Sec. Div.,
  450 U.S. 707 (1981)............................................................................................9

Tom Doherty Assocs. v. Saban Entm't, Inc.,
  60 F.3d 27 (2d Cir. 1995)...................................................................................2

Trump v. Deutsche Bank AG,
  943 F.3d 627 (2d Cir. 2019), rev'd on other grounds, __U.S.__, 140 S.Ct.
  2019 (2020)......................................................................................................17

TWA v. Thurston,
  469 U.S. 111 (1985).....................................................................................12, 13

Umanzor v. New York City Police Dep't,
  No. 14-9850, 2018 U.S. Dist. LEXIS 22707 (S.D.N.Y. Feb. 12, 2018)..................................14

V.D. v. New York,
  403 F. Supp. 3d 76 (E.D.N.Y. 2019) ...............................................................18

Weinberger v. Romero-Barcelo,
  456 U.S. 305 (1982)..........................................................................................17

Whitlow v. Cal. Dep't of Educ.,
  203 F. Supp. 3d 1079 (S.D. Cal. 2016)............................................................17

Winter v. Natural Res. Def. Council, Inc.,
  555 U.S. 7 (2008)..........................................................................................3, 17

**Statutes**

ADA..........................................................................................................................6

City Human Rights Laws.......................................................................................11

Rehabilitation Act, and Other EEO Laws..............................................................6

**Other Authorities**

First Amendment ............................................................................5, 7, 10, 17

Emergency Executive Order No. 317 ................................................................................6

https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-
    rehabilitation-act-and-other-eeo-laws ................................................................6, 14

United States Constitution .........................................................................................17

## PRELIMINARY STATEMENT

Plaintiffs' third motion to categorically enjoin the COVID-19 vaccination mandate for public school employees must be denied. We are now at the beginning of the third year of a global pandemic which has taken the lives of nearly one million Americans. Plaintiffs, instead of litigating their case on the merits, seek once again to place their purported individual rights before the safety of their colleagues and  the children they are charged with educating and caring for.

Since Plaintiffs initiated this lawsuit and brought their first motion for a preliminary injunction back in October 2021, numerous courts have found that vaccination is a lawful condition of employment for public employees, including New York City Department of Education employees.  What they seek here, in their third motion for a preliminary injunction, is the ultimate relief in this case without the burden of litigating the matter.

To be clear, Plaintiffs simply levy arguments regarding their individual accommodations that are properly addressed upon a record adduced through discovery – that is, of course, assuming Defendants' pending motion to dismiss does not resolve this case entirely. Remaining, then, are Plaintiffs' wholly conclusory statements about believed entitlements and exceptions to a vaccination mandate that, without any arguable doubt, operates to safeguard the wellbeing and health of New York City schoolchildren and employees. They present no basis whatsoever for a preliminary injunction and this motion should be denied.

## ARGUMENT

### POINT I

#### PLAINTIFFS' REQUEST FOR A MANDATORY INJUNCTION FAILS

A typical injunction seeks to maintain the status quo pending a trial on the merits. Abdul Wali v. Coughlin, 754 F.2d 1015 (2d Cir. 1985).  Movants are required to meet the higher standard of a mandatory injunction when (1) the injunction would alter, rather than maintain the

status quo or (2) if the injunction would grant the movant substantially all the relief sought and that relief cannot be undone even if Defendants would prevail on the merits.  Tom Doherty Assocs. v. Saban Entm't, Inc., 60 F.3d 27, *33-34 (2d Cir. 1995).  That higher standard is required here.

First, an injunction would alter the status quo. The status quo is the "last, peaceable uncontested status which preceded the pending controversy."  LaRouche v. Kezer, 20 F3.d 68, 74 n.7 (2d Cir. 1994).  The Health Commissioner's Order ("Vaccination Mandate") required DOE employees to submit proof of vaccination by October 1, 2021 – more than seven months ago. Since that date, most Plaintiffs have already been terminated for failing to comply with the Vaccination Mandate.   Furthermore, Plaintiffs' second motion for a preliminary injunction was denied, a decision that was affirmed by the Second Circuit, and the Supreme Court has twice refused to grant them relief.  Therefore, granting an injunction now would clearly alter the status quo with respect to the vaccination requirement for DOE employees..

With respect to the second prong, the harm that would result from an injunction could not be undone if Defendants ultimately prevail on the merits.  As Defendants stated seven months ago at the outset of this litigation, an injunction suspending the Health Commissioner's Order would allow unvaccinated staff to have prolonged contact with the approximately one million children in DOE's care, exposing them to an increased and unnecessary risk of contracting and spreading COVID-19, increasing the likelihood of children and  their families getting sick, and potentially interrupting the in-person learning that has been widely recognized as a critical priority.

Accordingly, Plaintiffs must meet the higher standard required for a mandatory injunction.  In particular, they must show a "clear" or "substantial" likelihood of success on the merits.  Tom Doherty Assocs. v. Saban Entm't, Inc., 60 F.3d 27 (2d Cir. 1995); Doninger v.

Niehoff, 527 F.3d 41, *47 (2d Cir. 2008).  For the reasons stated below and in Defendants' motion to dismiss, it is clear that Plaintiffs will not be able to meet this heightened burden as their challenge to the Vaccination Mandate will not succeed on the merits.  Nor can Plaintiffs meet the lower, more permissive standard of a prohibitory injunction, which requires Plaintiffs to demonstrate: 1) irreparable harm absent injunctive relief; 2) a likelihood of success on the merits; 3) the balance of equities tips decidedly in their favor; and 4) that the public interest weighs in favor of granting an injunction.  See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24-25 (2008); Almontaser v. N.Y. City Dep't of Educ., 519 F.3d 505, 508 (2d Cir. 2008).

## POINT II

## PLAINTIFFS ARE NOT SUFFERING IRREPARABLE HARM

"[I]rreparable harm is the 'single most important prerequisite for the issuance of a preliminary injunction.'"  Impax Media Inc. v. Northeast Adver. Corp., No. 17 Civ. 8272, 2018 U.S. Dist. LEXIS 4940 at *10 (S.D.N.Y. Jan. 10, 2018) (quoting Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009).  In making a showing of irreparable harm, Plaintiffs must demonstrate that there is a threat of actual injury for which available legal remedies are inadequate. See Score, Inc. v. Cap Cities/ABC, Inc., 724 F. Supp. 194, 198 (S.D.N.Y. 1989).   In addition, an irreparable injury is one "for which a monetary award cannot be adequate compensation."  Dexter 345 Inc. v. Cuomo, 663 F.3d 59, 63 (2d Cir. 2011). Here, Plaintiffs either have lost their job, have selected to remain on leave without pay until September 5, 2022, were granted religious accommodation requests, or have gotten vaccinated. None of these Plaintiffs is facing irreparable harm because any damages incurred are fully compensable by reimbursement or, if terminated, by reinstatement and none of them are faced with any coercion to violate their religious beliefs.

The majority of the plaintiffs have been terminated by DOE[1]. And "the law is clear that a discharge from employment and the injuries that may flow therefrom (e.g. lost income, damage to reputation, and difficulty finding future employment) do not constitute the irreparable harm necessary to obtain a preliminary injunction." Peck v. Montefiore Med. Ctr., 987 F. Supp. 2d 405 (S.D.N.Y. 2013); Savage v. Gorski, 850 F.2d 64, 68 (2d Cir. 1988) ("Since reinstatement and money damages could make appellees whole for any loss suffered during this period, their injury is plainly reparable and appellees have not demonstrated the type of harm entitling them to injunctive relief."). Plaintiffs complain that as a result of their terminations they have suffered financial hardships, yet these damages clearly fall under the standards set forth in Peck and Savage and as such do not constitute irreparable harm.

Nor is there any merit to Plaintiffs' claim that they face ongoing coercion to violate their religious beliefs. Those plaintiffs who have been terminated have no right of reinstatement if they now choose to get vaccinated. They would simply be eligible for employment if they chose to reapply for their jobs. And the plaintiffs who have not been terminated do not face any ongoing coercion because they are either not subject to termination or have waived their rights. Two of the plaintiffs have received religious accommodations; two of the plaintiffs elected to remain on extended leave without pay, with health insurance, and waived their rights to pursue this litigation in making that election; one of the plaintiffs is fully vaccinated and remains in her job[2]; and one of the plaintiffs has an ongoing state court proceeding that provides her separate protection from

---

[1] See ECF Dkts. 123-8, 124-2, 126-1, 127-1, 128 at ¶26, 129 at ¶28, 131-1, 132 at ¶37, 134 at ¶39, 136 at ¶24, 137-1, 138-1, 139 at ¶23, 140, 141 at ¶31, 142-10, and 143-10

[2] See ECF Dkts. 125-1 and 133-2.

termination[3]. Thus, the Vaccination Mandate does not create any ongoing pressure on plaintiffs to violate their religious beliefs.

Ultimately, Plaintiffs' merely allege irreparable harm, without any evidence. The Supreme Court has observed that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). Yet nevertheless, "[e]ven when a complaint alleges First Amendment injuries, . . . irreparable harm is not presumed and must still be shown." Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir. 2008). A showing of theoretical or conjectural harm is insufficient. See Latino Officers Association v. Safir, 170 F.3d 167, 171 (2d Cir. 1999). Plaintiffs must present competent evidence that they have sustained a loss of their First Amendment freedoms and will suffer another loss of such freedoms if the injunction is not granted. This they cannot do.

Finally, while Plaintiffs allege a constitutional violation, as discussed below they cannot show that they are "clearly" or substantially likely to succeed on the merits. This separately defeats their assertion of irreparable harm predicated on their constitutional claims.

### POINT III

### THERE IS NO LIKELIHOOD OF SUCCESS ON THE MERITS

**A.     Plaintiffs' Purported "New Facts" Are Irrelevant**

Plaintiffs claim that the following "new facts" entitle them to another attempt at a preliminary injunction: (1) the Mayor's exemptions to the private employer vaccination mandate; (2) statements during a discovery conference by an attorney for the Law Department in another federal action with a First Amendment challenge to the City of New York's Vaccination Mandate,

---

[3] See Minicucci Declaration at ¶2.

(3) the existence of "in excess of 97 mandates," and (4) comments made by Mayor Adams in response to a question from a reporter.  These "new facts" are irrelevant to Plaintiffs' claims here and lend no support, whatsoever, to their third successive motion for injunction relief.

First, the deadline for DOE employees to show proof of vaccination pursuant to the Vaccination mandate was October 1, 2021.  The vaccination mandate that applies to private employers, Emergency Executive Order No. 317, went into effect on December 15, 2021, nearly two and half months after the DOE Vaccination Mandate.  Plaintiffs' reference to subsequent modifications to this private employer mandate is immaterial and utterly misplaced.

Federal, state and local law also confirm, in the context of the COVID-19 pandemic, that employers can refuse to allow employees to work who are not fit for work under the applicable medical standards set forth by the public health authorities.  See e.g. EEOC Guidance, What You Should Know About Covid-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, at K.1. (https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws, last visited January 6, 2022). The courts in Broecker and Garland found, on November 24, 2021, and December 6, 2021, respectively, that the municipal COVID-19 vaccination mandates create a lawful condition of employment, decision rendered before the issuance of the private employer mandate.  Garland, 2021 U.S. Dist. LEXISs 233142; Broecker v. New York Dept. of Educ., No. 21-CV-6387 (KAM) (LRM), 2022 U.S. Dist. LEXIS 25104 (E.D.N.Y. Feb. 11, 2022).  Furthermore, the individuals that are subject to private employer mandate are not employed by the DOE, the largest public school system in the country responsible for the education of approximately one million students. The Vaccination Mandate established by the Health Commissioner specifically addresses the public health need for the

vaccination of DOE employees.. Therefore, any changes made to the private employer mandate are irrelevant to the Vaccination Mandate.

Second, Plaintiffs refer to comments made by defense counsel regarding the Citywide Panel during a discovery conference in a separate litigation in the Eastern District of New York. Plaintiffs appear to be arguing that because defense counsel confirmed that the Citywide Panel did not hold joint deliberation meetings or discussions for each appeal they heard, the Panel discriminates against personally held religious beliefs. This argument is baseless. The Citywide Panel, as constituted to review the accommodation decisions of City agencies, is not required under Title VII or the First Amendment to hold a meeting for each and every appeal they decide. Nor is it practical to do so for thousands of appeals.

Plaintiffs also claim that defense counsel's representations in the Eastern District of New York proves their repeated conjecture that summaries provided to Plaintiffs here were concocted. See Plaintiffs' Memo of Law in Support at 4. Plaintiffs appear to suggest, without any basis beyond gross speculation, that defendants fabricated documents in this litigation. However, the summaries provided to Plaintiffs here simply reduced information similar to what was produced in the EDNY matter to narrative form. Defendants were not engaging in some ad hoc process. See Affirmation of Eric Eichenholtz, annexed to the Minicucci Declaration as Exhibit C. This baseless accusation is false and should be summarily disregarded.

Third, Plaintiffs argue that Defendants have now issued "in excess of 97" mandates, resulting in unprecedented coercion for unvaccinated employees, which they claim somehow renders the Vaccination Mandate infirm. However, the Second Circuit previously held that "Vaccine Mandate in all its iterations is neutral and generally applicable." See Kane v. De Blasio, 19 F.4th 152, 165-166 (2d Cir. 2021). The existence of other vaccine mandates for City employees

or private employers does not alter that fact. Plaintiffs argue that they cannot find other employment due to the vaccination mandates in other fields. This argument is not relevant to the issue in this case - whether the process by which the DOE grants religious exemptions is lawful. Therefore, the existence of other vaccination mandates is not relevant.

Fourth, Mayor Adams's comments cited by Plaintiffs demonstrate, at most, his general hope that unvaccinated employees will choose to receive the vaccine. Mayor Adams does not specially address individuals who refuse to be vaccinated for religious reasons nor does he suggest that individuals violate or change their religious beliefs  Moreover, even if terminated employees now choose to be vaccinated they are not entitled to reinstatement. Mayor Adams's comments are similar to the comments previously stated by former-Mayor de Blasio, which the Second Circuit found to be nothing more than a recitation of his personal beliefs, having no palpable bearing on the determination of accommodations requests. Kane v. De Blasio, 19 F.4th 152, 165 (2d Cir. 2021).

**B.    The Vaccination Mandate Is a Lawful, Generally Applicable, Neutral Condition of Employment**

As set forth thoroughly in Defendants' motion to dismiss the Amended Complaint, Plaintiffs do not properly state a claim, let alone meet the standard for a preliminary injunction. Numerous courts have found that the Vaccination Mandate is a lawful condition of employment. The Second Circuit also decided in the instant case that: ""[t]he Vaccine Mandate, in all its iterations, is neutral and generally applicable." Kane v. De Blasio, 19 F.4th 152, 166 (2d Cir. 2021). As courts have agreed throughout the last eight months, the object of the Vaccination Mandate is to reduce the spread and impact of COVID-19 in schools. See Broecker, et al. v. N.Y. City Dept. of Educ., et al., No. 21 Civ. 6387 (KAM) (RLM), (E.D.N.Y. Nov. 24, 2021); Loiacono v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y., 2022 NY Slip Op 30758(U) (N.Y. Sup.

Ct., N.Y. Cnty March 31, 2022); <u>Garland v. New York City Fire Department</u>, 2021 LRRM (BNA) 464267 (E.D.N.Y. 2021) (concluding that vaccination was a condition of employment under a Health Commissioner Order applicable to City employees and similar to the Vaccination Mandate at issue here).

       In support of their motion for a preliminary injunction, Plaintiffs argue that their religious beliefs have been substantially infringed upon and that this entitles them to an injunction. They grouse that they cannot be compelled to choose between their religious beliefs and their jobs. The only case they offer in support of this contention is <u>Thomas</u>, which found that a Jehovah's Witness who quit his job because he had a religious objection to the manufacture of weapons was entitled to unemployment benefits. <u>Thomas v. Review Bd. of Ind. Emp't Sec. Div.</u>, 450 U.S. 707, (1981). That case, however, predates <u>Emp. Div. v. Smith</u>, 494 U.S. 872 (1990), in which "the Supreme Court held that it is not a violation of the free exercise clause to enforce a generally applicable rule, policy, or statute that burdens a religious practice, provided the burden is not the object of the law but merely the "incidental effect" of an otherwise valid provision." <u>Kalsi v. N.Y.C. Transit Auth.</u>, 62 F. Supp. 2d 745, 761 (E.D.N.Y. 1998)(citing <u>Smith</u>, 494 U.S. 872)(aff'd by No. 99-7097, 1999 U.S. App. LEXIS 21375 (2d Cir. Sep. 2, 1999). Notably too, Plaintiffs do not specify any religious group or activity they believe the government sought to target with the Vaccination Mandate.

       Undoubtedly, the purpose of the Vaccination Mandate is to ensure the vaccination against COVID-19 – a disease resulting in a two-year long worldwide pandemic – for employees of the DOE who come into regular close and congregate indoor contact with children, many of whom are unvaccinated, for extended periods of time. Plaintiffs' allegation that their religious beliefs are burdened by the vaccine requirement itself, without more, does not entitle them to the

categorical suspension of a vaccination mandate which has reduced transmission and allowed the City to safely maximize in-person education for New York City's children. Indeed, Plaintiffs' placement on leave without pay, and, for some, their termination, was not based on their religious beliefs, but rather resulted from their status as unvaccinated employees. In other words, the mandate applies equally to anyone who objects to vaccination, regardless of their basis for objection. See Hamilton v. City of N.Y., No. 18-CV-4657 (NGG) (VMS), 2021 U.S. Dist. LEXIS 185855 (E.D.N.Y. Sep. 28, 2021) (FDNY's facial hair policy complied with the First Amendment because the determining factor was facial hair, not religion). Under this mandate, unvaccinated employees are not permitted to work, regardless of accommodation status.

Plaintiffs also argue that because visitors to DOE schools are permitted to enter schools without being vaccinated, the Vaccination Mandate is not generally applicable. Voters, emergency responders, individuals entering to receive COVID-19 vaccination, , and delivery persons, among others, are exempted from the requirements of the Vaccination Mandate because they are not DOE employees. See Pl. Memo of Law in Support at 21. The Vaccination Mandate applies to all DOE staff who spend their workday in indoor congregate settings with the City's public schoolchildren. Indeed, District Court Judge Matsumoto found that "conditions on visitors to the DOE system does not impact the legitimacy of conditions imposed on NYC DOE employees. Broecker v. N.Y.C. Dep't of Educ., No. 21-CV-6387(KAM)(LRM), 2022 U.S. Dist. LEXIS 25104, 29 (E.D.N.Y. Feb. 11, 2022); Garland v. N.Y.C. Fire Dep't, No. 21-cv-6586 (KAM)(CLP), 2021 U.S. Dist. LEXIS 233142 (E.D.N.Y. Dec. 6, 2021). Thus, the mandate is neutral and generally applicable.

**C.** **The Citywide Appeals Panel Review Standards Comply with Title VII and State and Local Law**

The Citywide Appeals Panel reviews the accommodation denials of agencies to ensure adherence to standards under Title VII of the Civil Rights of 1964 ("Title VII") and the New York State and City Human Rights Laws. These laws are neutral and generally applicable. See Affirmation of Eric Eichenholtz, dated February 9, 2022, and filed in New York State Supreme Court, County of New York, on February 10, 2022, in New York City Municipal Labor Committee v. City of New York, Index No. 151169/2022 ("Eichenholtz Aff."). The Citywide Panel never applied the standards set forth in the Arbitration Award. As such, those out-of-use standards cannot now be used as evidence of animus by the Citywide Panel.

Plaintiffs argue, relying on Fulton, that because DOE and the City have a system by which to grant religious exemptions, that system is not neutral and generally applicable. See Fulton v. City of Phila., 141 S. Ct. 1868 (2021). This is incorrect. In Fulton, the exemption process was found by the Supreme Court to impermissibly favor exemptions for secular over religious purposes. Id. In contrast here, under the Vaccination Mandate, the standards comply with  Title VI and state and local civil rights law, and there is no system of exemptions for non-medical secular reasons at all.  Therefore, Fulton is inapposite. Furthermore, the mere existence of a religious exemption process does not trigger strict scrutiny. See Ferrelli v. State Unified Court Sys., No. 1:22-CV-0068 (LEK/CFH), 2022 U.S. Dist. LEXIS 39929 (N.D.N.Y. Mar. 7, 2022).  Moreover, it is illogical to suggest that a system that accommodates sincerely held religious beliefs must be subject to strict scrutiny.

Next, Plaintiffs claim they have direct evidence of discrimination, but have not set forth exactly what that evidence could be. The decision by Arbitrator Scheinman is not evidence of discrimination by the DOE or the City of New York. And, though Plaintiffs pretend otherwise,

they, and others denied religious accommodation under the Scheinman Award, were given additional review, by the Citywide Panel, under standards expressly adhering to Title VII. Plaintiffs baldly mischaracterize the e-mails that their same counsel received in discovery in another case, which are co-opted by them here, by claiming Citywide Panelists were instructed to "deny religious objections against the use of aborted fetal cells." See Plaintiffs' Memo of Law in Opposition at 12. As a cursory review of these e-mails shows, a panelist sought clarification, to which Mr. Eichenholtz responded by reiterating the standards of Title VII for granting a religious exemption. See ECF Dkt. 122-5.  In short, Plaintiffs have proffered no direct evidence of discrimination based on any specific religious belief.

Plaintiffs' reliance on TWA is also misplaced. TWA v. Thurston, 469 U.S. 111 (1985). In that case, the Supreme Court found that airline pilots who became disqualified from their position because they turned 60 years old were treated differently than other pilots who were disqualified from their position for another reason. Id. No such parallel can be inferred here. Defendants have not targeted any religious views or unorthodox religious views.

The Citywide Panel, using the standards set forth by Title VII reviewed Plaintiffs' applications for religious exemptions, granted one, and denied the others on the basis that it would be an undue hardship to accommodate classroom teachers who could not perform the essential function of their position which requires them to be present in the classroom.

**D.      Accommodating Plaintiffs Would Be an Undue Hardship**

Plaintiffs are school teachers or paraprofessionals who must be present in school to do their jobs. Being present, at school, is an essential function of their position. See DOE Position Statement, annexed to the Minicucci Declaration as Exhibit A.  Any religious accommodations for school-based personnel creates several hardships for DOE including: (1) rendering the employee

unable to perform the essential functions of their job, (2) burdening DOE to fill gaps left by employees who can no longer enter school buildings while also complying with existing collective bargaining agreements and state law which make it difficult to transfer employees within the system, and (3) identifying or creating alternate assignments for employees who can no longer perform the essential functions of their job while simultaneously having to hire and train new employees to replace them. <u>See</u> Exhibit A at 2. Indeed, more than 3,300 DOE employees have requested religious exemptions. <u>Id</u>. As such, and while not required at the preliminary injunction stage, Defendants plainly have shown that it would be an undue hardship to accommodate classroom teachers' requests for religious exemptions.

**E.    Plaintiffs Present a Direct Threat to the Safety of DOE Students and Staff**

Plaintiffs contend that Defendants have failed to meet their burden of showing that unvaccinated employees are a direct threat to others and that the panel has not met its burden under "constitutional standards."  <u>See</u> Plaintiffs' Memorandum of Law in Support at 16, ECF Dkt. 119. This is incorrect for many reasons. First, Plaintiffs bear the burden of proof on their preliminary injunction motion. <u>HBO, Inc. v. Showtime/The Movie Channel, Inc.</u>, 832 F.2d 1311, 1791 (2d Cir. 1987). Second, their reliance on <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90, 98–100 (2003), is entirely misplaced, as that case concerns jury instructions in a sex discrimination case and the appropriate burden of proof at the time of trial. Further, Plaintiffs complain that a vague constitutional standard has not been met, without ever identifying the purported constitutional standards that the Citywide Panel must prove at the preliminary injunction stage. In sum, it is rudimentary that on a preliminary injunction the movant bears the burden. Defendants do not bear the burden of proof at the preliminary injunction stage.

As to direct threat, Plaintiffs, and any unvaccinated school staff, cannot be permitted within a school building as they represent a "direct threat" to the health or safety of others within the workplace, in particular, school children who are not required to be vaccinated. A "direct threat" assessment may properly adhere where all employees must meet a qualification standard that is job-related and consistent with business necessity such as, here, a safety-related standard requiring COVID-19 vaccination. The Equal Employment Opportunity Commission has determined that the COVID-19 pandemic meets the "direct threat" standard, and it cannot reasonably be disputed that, during the pandemic, unvaccinated school staff within indoor congregant settings pose a direct threat to unvaccinated children.[4] Under a "direct threat" analysis, when an employee "poses a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation, that employee is not otherwise qualified to perform his or her job." See Umanzor v. New York City Police Dep't, No. 14-9850, 2018 U.S. Dist. LEXIS 22707, at *12 (S.D.N.Y. Feb. 12, 2018).

Notwithstanding the EEOC's determination, upon which Defendants may reasonably rely, the evaluation of whether an unvaccinated employee poses a "direct threat" in the workplace requires an employer to first make an individualized assessment of the employee's present ability to safely perform the essential functions of the job. The factors that make up this assessment are: (1) the duration of the risk; (2) the nature and severity of the potential harm; (3) the likelihood that the potential harm will occur; and (4) the imminence of the potential harm. See Chevron U.S.A. v. Echazabal, 536 U.S. 73, 86 (2002); see also Umanzor, 2018 U.S. Dist. LEXIS

---

[4]    See    https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws.

22707, at *13.  Given these factors, the determination of direct threat is highly dependent on reasonable medical judgment and knowledge about COVID-19, including the protections afforded through vaccination and, necessarily, involves the evaluation of the nature of the work environment, the frequency and duration of direct interaction with others, and the prevalence of vaccination within the workplace.

At least one court that has considered the risks presented to others during the COVID-19 pandemic, absent reasonable and available safeguards, concluded a "direct threat" was presented.  See Hernandez v. Sales, No. 21-00096, 2021 U.S. Dist. LEXIS 172567, at *14 (W.D. Tex Aug. 19, 2021) ("[G]iven the indisputable risk to others, failure to wear a mask in a place of public accommodation during the COVID-19 pandemic is a direct threat as a matter of law."). Here, within a school building, populated by children who are not universally vaccinated, the direct threat presented by unvaccinated school staff is unassailable, immediate, and without doubt. Though Plaintiffs bemoan a loss of contact with school children, allowing unvaccinated staff to remain in school buildings, where they have extended contact with unvaccinated children in indoor congregate settings, poses a tremendous risk to children and their families.  That risk extends no less to fellow employees and, as well, to the unvaccinated themselves, whose likelihood of a severe COVID-19 infection, resulting in hospitalization (and a corresponding absence from their teaching duties), is well-established within the scientific community.

Upon demonstrating that an unvaccinated employee would, as here, pose a direct threat to others, an employer must consider whether providing a reasonable accommodation, absent undue hardship, would reduce or eliminate that threat.  See Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 170 (2d Cir. 2006).  The U.S. Centers for Disease Control and Prevention continues to recommend that schoolteachers and staff be "vaccinated as soon as possible" because

vaccination is "the most critical strategy to help schools safely resume full operations" and is "the

leading public health prevention strategy to end the COVID-19 pandemic." See CDC Guidance

for COVID-19 Prevention in K-12 Schools, ECF Dkt. 113-4. Against this, Plaintiffs have pressed

their own selected science and supposed experts. In any event, "where good faith arguments can

be made on both sides of the many issues raised by the pandemic," the decision is for the

municipality, "not the courts, to balance the competing public health and business interests."

Columbus Ale House, Inc. v. Cuomo, 495 F. Supp. 3d 88, 95 (E.D.N.Y. 2020).  Accordingly,

because unvaccinated school staff present a "direct threat as a matter of law" to unvaccinated

school children, and other safety measures—though important—do not alone provide the same

level of protection that vaccination affords, Plaintiffs' position that they should be permitted to

continue to have contact with school children or work within a DOE school building while

unvaccinated must fail.[5]

## F.     There Is No Violation of the Establishment Clause

Plaintiffs' Establishment Clause claims are without merit, reflected by the scant

argument in their papers, because the DOE and the Citywide Panel have shown no denominational

preference. Larson v. Valente, 456 U.S. 228, 246 (1982). The challenged statute in Larson

provided that religious organizations which solicited more than fifty percent of their funds from

non-members had to adhere to registration and reporting requirements, which the Supreme Court

found violated the Establishment Clause. Larson, 456 U.S. 228, 228. No such denominational

preference exists here. Instead, Plaintiffs harken back to the decisions made by arbitrators under

---

[5] For that very reason, the Health Commissioner's Order expressly bars both unvaccinated employees as well as unvaccinated visitors from entering school buildings.  Thus, under the arbitration award, whether granted an exemption or accommodated through a period of unpaid leave with health benefits, DOE workers are neither required nor permitted to enter a school building while unvaccinated for as long as the vaccination mandate remains in effect.

the standards set forth in the Arbitration Award. Those decisions and those standards are no longer relevant or applicable given the subsequent review and decisions made by the Citywide Appeals Panel. The Panel decisions, which govern, make clear that the Panel's findings did not turn on the named Plaintiffs' sincerely-held religious beliefs. Dkt. 92-1. Indeed, two facts are fatal to Plaintiffs' Establishment Clause claims: first, the Mandate itself is silent as to religious beliefs and thus favors no religion over another; and second, the Panel decisions received by Plaintiffs likewise favor no religion over another, nor question the sincerely held religious beliefs of any Plaintiff, with affirmation of DOE's accommodation denials based on undue hardship or, for one Plaintiff, the existence of underlying non-religious justifications for refusing to be vaccinated.

## POINT IV

### THE BALANCE OF EQUITIES DOES NOT TIP IN FAVOR OF PLAINTIFFS

Even if Plaintiffs could prove irreparable harm and demonstrate a likelihood of success on the merits – which they cannot – they would, nonetheless, be unable to prove that the balance of hardship tips decidedly in their favor. Trump v. Deutsche Bank AG, 943 F.3d 627, 640 (2d Cir. 2019), rev'd on other grounds, __U.S.__, 140 S.Ct. 2019 (2020). To balance the equities in each case, courts must balance the competing claims of injury on each party of either granting or withholding the requested relief. Winter v. NRDC, Inc., 555 U.S. 7, at 24 (2008) (citing Amoco Production Co., 480 U.S. 531, 542 (1987)). In exercising their sound discretion, courts should pay particular regard to the public consequences in employing the extraordinary remedy of injunction. Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982).

Fundamental rights, such as First Amendment Rights under the United States Constitution, do not overcome the State interest in safeguarding the health of children and the general public. Whitlow v. Cal. Dep't of Educ., 203 F. Supp. 3d 1079 (S.D. Cal. 2016), citing

Prince v. Massachusetts, 321 U.S. 158, 64 S. Ct. 438 (1944).  The right to practice religion freely does not include liberty to expose the community or a child to communicable disease or the latter to ill health or death. Prince, 321 U.S. at 166-67. Courts have ruled time and again that compulsory vaccination is constitutional.  See Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11 (1905); see also Phillips v. City of N.Y., 775 F.3d 538, 542-43 (2d Cir. 2015); V.D. v. New York, 403 F. Supp. 3d 76 (E.D.N.Y. 2019) (challenges to vaccination mandates for children to attend school upheld); see also Sherr v. Northport-East Northport Union Free Sch. Dist., 672 F. Supp 81, 83 (E.D.N.Y. 1987) ("It has long been settled that one area in which religious freedom must be subordinated to the compelling interests of society involves protection against the spread of disease.").  There can be no doubt, therefore, that the Vaccination Mandate, as set forth by the Health Commissioner's Order, is constitutional.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be denied.

Dated:      New York, New York
            May 13, 2022

                        Hon. Sylvia Hinds-Radix
                        Corporation Counsel of the
                          City of New York
                        Attorney for Defendants
                        100 Church Street
                        New York, New York 10007
                        212-356-4074
                        lminicuc@law.nyc.gov


              By:    _____/s/_____
                        Lora Minicucci/Bilal Haider
                        Assistant Corporation Counsels

18