21-cv-7863 (VEC) (Lead Case) | 21-cv-8773 (VEC)

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

MICHAEL KANE, et al.,

                                      Plaintiffs,

-against-

BILL DE BLASIO, et al.,

                                      Defendants.

MATTHEW KEIL, et al.,

                                      Plaintiffs,

-against-

THE CITY OF NEW YORK, et al.,

                                      Defendants.

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PRELIMINARY
INJUNCTION**

| | |
|---|---|
| Sujata S. Gibson | Barry Black |
| GIBSON LAW FIRM, PLLC | Jonathan R. Nelson |
| 408 W. Martin Luther King, Jr., St. | Sarah E. Child |
| Ithaca, NY 14850 | NELSON MADDEN BLACK LLP |
| (607) 327-4125 | 475 Park Avenue S., Suite 2800 |
| | New York, NY 10016 |
| | (212) 382-4300 |

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii
PRELIMINARY STATEMENT ................................................................................................1
ARGUMENT ................................................................................................................................1
    I.     The Heightened *Tom Doherty* Standard is Inapplicable ................................................1
    II.    The New Facts Are Relevant ..........................................................................................2
          A.  Exemptions for Strippers, but Not for Believers Highlights the Profound Lack of General Applicability ..............................................................................................2
          B.  Defendants Offer No Proof to Show That the Summaries Were *Not* Concocted ....3
          C.  Mayor Adams' Remarks Speak for Themselves .......................................................3
    III.   Plaintiffs Established that their Religious Exercise is Infringed ...................................3
    IV.   Neither the Mandates nor the Citywide Panel Process is Generally Applicable ..........4
    V.    Defendants Cannot Whitewash the Establishment Clause Violations or History of Discrimination ...............................................................................................................5
    VI.   Defendants Have Not Met Their Buren of Showing Undue Hardship ..........................6
    VII.  Plaintiffs Met Their Burden of Showing Irreparable Harm ..........................................7
          A.  Termination Has No Impact on Irreparable Harm Analysis .....................................7
          B.  Plaintiffs Continue to Face Coercion to Violate Their Faith ....................................9
CONCLUSION ..........................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

*Agudath Isr. v. Cuomo*,
   983 F.3d 620 (2d Cir. 2020) .................................................................................................. 8

*Bryan v. Hall Chem. Co.*,
   993 F.2d 831 (11th Cir. 1993) ............................................................................................. 10

*Elrod v. Burns*,
   427 U.S. 347 (1976) ..................................................................................................... 7, 8, 9

*Emp. Div. v. Smith*,
   494 U.S. 872 (1990) .............................................................................................................. 4

*Fulton v. City of Phila.*,
   141 S. Ct. 1868 (2021) .......................................................................................................... 5

*L.T. v. Zucker*,
   No. 1:21-CV-1034 (LEK/DJS), 2021 U.S. Dist. LEXIS 196906 (N.D.N.Y., Oct. 13, 2021, No. 1:21-CV-1034 (LEK/DJS)) (N.D.N.Y. Oct. 13, 2021) ................................................ 1

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*,
   138 S. Ct. 1719 (2018) .......................................................................................................... 6

*Mastrio v. Sebelius*,
   768 F.3d 116 (2d Cir. 2014) ................................................................................................. 2

*Ramirez v. Collier*,
   595 U.S. ___ (2022) .............................................................................................................. 9

*Roman Catholic Diocese v. Cuomo*,
   141 S. Ct. 63 (2020) .............................................................................................................. 8

*Savage v. Gorski*,
   850 F.2d 64 (2d Cir. 1988) ................................................................................................ 8, 9

*Thomas v. Review Bd. of Ind. Emp. Sec. Div.*,
   450 U.S. 707 (1981) .............................................................................................................. 4

*Tom Doherty Assocs. v. Saban Ent., Inc.*,
   60 F.3d 27 (2d Cir. 1995) ..................................................................................................... 1

*TWA v. Thurston*,
   469 U.S. 111 (1985) .............................................................................................................. 6

*United Bldg. & Constr. Trades Council v. Camden*,
   465 U.S. 208 (1984) .............................................................................................................. 5

## PRELIMINARY STATEMENT

Defendants have repeatedly failed to refute several *key* arguments raised by Plaintiffs and several Second Circuit judges. The Court should consider these unopposed points conceded:

- A mechanism for individualized exemptions subjects a law to strict scrutiny;
- A history of discrimination gives rise to strict scrutiny;
- The DOE and the City violated the Establishment Clause by adopting discriminatory arbitration standards and failing to disavow them;
- Several Plaintiffs were never offered "fresh consideration" of their denials and were suspended and terminated under standards the Second Circuit ruled are unconstitutional;
- The Government continues to discriminate against unorthodox religions;
- Vaccinated people are just as capable of getting and spreading COVID-19;
- Defendants continue to coerce Plaintiffs to violate their faith.

## ARGUMENT[1]

### I. The Heightened *Tom Doherty* Standard is Inapplicable

Defendants argue that Plaintiffs must "must show a 'clear' or 'substantial' likelihood of success on the merits, *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27 (2d Cir. 1995), because (1) 'an injunction would alter the status quo' and (2) 'the harm that would result from an injunction could not be undone if Defendants ultimately prevail on the merits.'" [ECF No. 159 at 2]. But Defendants simply mischaracterize the relief Plaintiffs seek – namely, that Defendants *refrain from* enforcing the Mandate, making the injunction prohibitory rather than mandatory and thus subject to the lower standards. S*ee, e.g.*, *L.T. v. Zucker*, 2021 US Dist LEXIS 196906, at *7, n. 8 (N.D.N.Y. Oct. 13, 2021, No. 1:21-CV-1034 (LEK/DJS)).

Plaintiffs do not seek the ultimate relief, including back pay, damages and declaratory

---

[1] Plaintiffs respectfully incorporate herein all defined terms set forth in its moving papers as if first defined herein.

relief. At base, all that Plaintiffs ask is that this Court return them to the status quo. As Defendants concede, the status quo is not calculated at the time of application, but rather is "the last actual, peaceable uncontested status which preceded the pending controversy." This special 'ante' formulation of the status quo in the realm of equities shuts out defendants seeking shelter under a current 'status quo' precipitated by their wrongdoing." *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014). Defendants do not contest that the COVID vaccines are largely for personal protection. Plaintiffs worked for a year and a half in schools during a much more dangerous phase of COVID and can safely do so now while this case progresses, just as teachers in every other school district in the state are allowed to do.

## II. The New Facts Are Relevant

### A. Exemptions for Strippers, but Not for Believers Highlights the Profound Lack of General Applicability

Defendants attempt to skirt the reality of 97 specifically applicable mandates by arguing that EEO-317 was applicable to private employers and went into effect "nearly two and half months after the DOE Vaccination Mandate," and that "the individuals that are subject to private employer mandate are not employed by the DOE." [ECF No. 159 at 6] But this only makes the very legal point that Defendants have not, and cannot, refute: namely, that these are not generally applicable laws. Instead, they have different effective dates, they are applicable to different people, have different terms and conditions, make artificial carve outs, and those subject to these diverse mandates are differently subject to religious exemptions. The new facts show that these mandates together function to afford total discretion to the Mayor to pick and choose which causes he deems most worthy of exempting. For example, EEO-62 carves out entertainers (including strippers),

2

athletes and their entourages from the Mandates. [ECF No. 120-1 at 176]. Yet, Plaintiff Father Matthew Keil, an ordained deacon of the Russian Orthodox Church, who has traveled on religious pilgrimages across the globe for 20 years, cannot get a religious exemption. This triggers strict scrutiny.

## B. Defendants Offer No Proof to Show That the Summaries Were *Not* Concocted

Despite Defendants' protestations to the contrary, the facts speak for themselves: the denials were summary, stated their finality on their face, and there is not a single circumstances that suggest anything to the contrary. No other employees other than the original nine submitting Plaintiffs received "reasons" for their denial from the Citywide Panel [*see* Solon Decl.], a fact which Defendants concede. The only reasonable conclusion to be drawn is that the summaries were concocted.

## C. Mayor Adams' Remarks Speak for Themselves

Again, hiding behind *Kane*, Defendants try to downplay Mayor Adams' public comments on live television. But the Mayor spoke quite clearly: when asked whether employees with religious exemption appeals would be reinstated, he indicated that the City would require them to "change their mind" to get their jobs back. There can be no honest doubt that this constitutes ongoing coercion.

## III. Plaintiffs Established that their Religious Exercise is Infringed

Defendants conflate *Smith's* neutral and general applicability analysis with the first step in a Free Exercise claim – that is, making a showing that religious beliefs are infringed. Plaintiffs have sufficiently made this showing. As the Supreme Court has many times held, "where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where

3

it denies such a benefit because of conduct mandated by religious belief . . . a burden exists upon religion." *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 708 (1981). Defendants are entirely mistaken in suggesting that *Smith* overruled *Thomas* [ECF No. 159 at 9]. As noted in Plaintiffs' moving papers, *Smith* distinguished *Thomas* because unlike *Smith,* it had "nothing to do with an across-the-board criminal prohibition on a particular form of conduct." *Smith*, 494 U.S. at 884 (1990). *Thomas* remains good law and is, indeed, quite similar to this case in that government is forcing its employees to choose between their religion and their jobs on an ongoing basis.

### IV. Neither the Mandates nor the Citywide Panel Process is Generally Applicable

Plaintiffs have now six times noted the "pink elephant" in the room, *i.e.*, the mechanism for individualized exemptions, but nary a direct response has emerged from Defendants. See ECF No. 9 at 16, ECF No. 7 at 20 (no response by Defendants); ECF No. 56 at 5, ECF No. 83 at 37, 40-41, 43-44 (no response by Defendants); ECF No. 90 at 20, ECF No. 16-1 at 26 (no response by Defendants); ECF No. 121 at 26, Defendants' "opposition" ECF No. 143 at 30, ECF No. 151 at 13; ECF No. 119 at 10 (no response by Defendants); ECF No. 121 at 20-21 (no response by Defendants). The issue is clear: *Fulton* holds that there are two *distinct* bases for demonstrating lack of general applicability: (1) a mechanism for individualized exemptions, and (2) prohibiting religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way:

> A law is not generally applicable if it "invite[s]" the government to consider the particular reasons for a person's conduct by providing "'a mechanism for individualized exemptions.'
>
> . . . A law **_also_** lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." (Emphasis added.)

4

*Fulton v. City of Philadelphia* \_\_\_US\_\_\_ , \_\_\_ , 141 S Ct 1868, 1877 (2021).

The Mandate violates both of these prongs. First, the Citywide Panel is itself nothing but a mechanism for individualized exemptions. Defendants acknowledge that religious exemptions can be granted and have created an individualized mechanism to review them, which subjects these determinations to strict scrutiny review. There is simply no individual or panel in place, for example, to determine whether individuals are exempt from criminal or tax laws, as referenced in *Smith*, because they are *across-the-board* laws that apply to everyone—no exceptions—and that is why they are outside of the Constitution. Similarly, as argued *infra,* the Mandates are not generally applicable but constitute 97 specifically applicable applications that can be changed or deleted on the Mayor's whim.

### V. Defendants Cannot Whitewash the Establishment Clause Violations or History of Discrimination

Neither can the City's religious exemption policies be deemed "neutral" given the proven history of discrimination, which has not only been alleged, but recognized by the Second Circuit. [ECF No. 77]. The uncontested fact is that the DOE officially adopted a policy which, on its face, requires discrimination against religious minorities. The policy even expressly singled out certain religions for special favor. A clearer violation of the Establishment Clause cannot be imagined and strict scrutiny must be applied on this basis alone to any subsequent DOE religious exemption decision. *Larson v. Valente*, 465 U.S. 228 (1982).

Shockingly, the City did not disavow these unconstitutional policies, but now admits that they have even *extended them* Citywide, and offer the unconstitutional policy in nearly every department. Thus, what might have once been limited to a DOE Establishment Clause problem,

5

has now become a Citywide violation, which eviscerates claims about the relevance of the Mayor's discriminatory comments, or the function of these mandates as a whole. *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct 1719 (2018).

It does not matter that the City now offers a second option for those whom the arbitration policy discriminates against. The fact that the City and DOE adopted (and maintain) the discriminatory policies at all requires, at minimum strict scrutiny. Under *TWA v. Thurston*, 469 U.S. 111 (1985), there is no cognizable theory under which Defendants could even prevail in this suit. Where, as here, the government adopts policies which, on their face, target certain protected classes for special disability or privilege, the government cannot prevail by alleging that they would have made the same finding under a non-discriminatory standard. *Id.* Defendants only response is to claim: "[n]o such parallel can be inferred here. Defendants have not targeted any religious views or unorthodox religious views." The plain language of the DOE's religious exemption policy (which is still in effect) and the Second Circuit's decision states otherwise.[2]

**VI. Defendants Have Not Met Their Burden of Showing Undue Hardship**

As this Court has articulated many times, Plaintiffs bear the burden to establish that their claims are subject to strict scrutiny. After that, the burden shifts to the government to show that their decisions can survive strict scrutiny. *We the Patriots USA, Inc. v. Hochul,* 17 F.4th 266, 281 (2d Cir.), opinion clarified, 17 F.4th 368 (2d Cir. 2021). For the reasons set forth in the opening brief, the Mandates cannot survive strict scrutiny and likely cannot even survive rational basis

---

[2] Defendants do not attempt to refute the arguments for why the Citywide Panel decisions were not independently also infected with impermissible religious discrimination against personally held and unorthodox religious beliefs. These points should be conceded and provide a second basis for constitutional relief.

review. It is well-established at this point that the COVID vaccines provide, at best, personal protection from severity of disease, and even that is now no longer supported by evidence. What *is* clear and accepted is that vaccinated people are infected and spread COVID at substantially similar rates as unvaccinated, and that natural immunity provides more robust protection than vaccine immunity. Defendants have the burden of establishing, in non-conclusory evidentiary form, why they cannot accommodate Plaintiffs' sincere religious beliefs under statutory standards. Because the Second Circuit commanded that the Citywide Panel include the New York State and New York City Human Rights Law standards, that means that the City must establish, at minimum that it would be a significant hardship to accommodate an employee, and these decisions must be made in an individualized assessment. Plaintiffs submitted ample evidence on these points, and are prepared to offer testimony from experts if more is needed. Plaintiffs respectfully request a hearing on undue hardship to the extent there is dispute. Defendants present nothing more than unsigned, undated and unsourced "template" conclusions prepared in anticipation of trial (and never disclosed until now) to argue that Plaintiffs pose a direct threat and cannot be reasonably accommodated. These arguments do not meet evidentiary standards and should be disregarded.

## VII. Plaintiffs Met Their Burden of Showing Irreparable Harm

### A. Termination Has No Impact on Irreparable Harm Analysis

Defendants acknowledge that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) [ECF No. 159 at 3]. Nonetheless, they argue that because they recently carried out their threats and terminated "most" of the named Plaintiffs, irreparable harm is somehow moot. Supreme Court case law shows otherwise. In *Elrod*, the Supreme Court affirmed the Seventh

7

Circuit's grant of a preliminary injunction restoring the *status quo* as it existed before the challenged action occurred, even though every employee was fired at the time of review and all but one were already terminated when they sought the injunction in the district court:

> *At the time a preliminary injunction was sought in the District Court, one of the respondents was only threatened with discharge.* In addition, many of the members of the class respondents were seeking to have certified prior to the dismissal of their complaint were threatened with discharge or had agreed to provide support for the Democratic Party in order to avoid discharge. It is clear, therefore, that *First Amendment interests were either threatened or in fact being impaired at the time relief was sought. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury...*

*Id*. at 373-374 (emphasis added); *see also id.* at 351. In *Elrod*, the Court not only acknowledged that employees terminated for refusing to violate their constitutional rights (or having succumbed to the unconstitutional condition to keep their jobs) meet the irreparable harm standard, but characterized terminated employees' First Amendment rights as "in fact being impaired" at the time relief was sought, which was even more serious than those who had not yet had the harm of termination "occur" but were merely being "threatened" with such impairment.

The Supreme Court, and the Second Circuit, continue to cite *Elrod* as the standard governing irreparable harm analysis in preliminary injunction motions involving First Amendment claims. *Roman Cath. Diocese of Brooklyn*, 141 S. Ct. 63, 67 (2020); Agudath Isr. v. Cuomo, 983 F.3d 620 (2d Cir. 2020). Defendants misapply an older case, *Savage v. Gorski*, 850 F.2d 64 (2d. Cir. 1988), to ask this Court to deviate from the well-established and binding precedent. But *Savage* is inapposite. In *Savage*, the Second Circuit distinguished their case from *Elrod* as follows: "When the preliminary injunction in *Elrod* was sought...employees were threatened with immediate discharge for refusing to change their political affiliations...Here appellees did not

8

allege, nor did the court find, that they were being coerced into joining the Democratic Party." *Id.* At 67. Employees in the *Savage* case were not provided with the opportunity at any point before or after filing suit to maintain or obtain employment by changing political affiliation and thus did not face any coercion.

### B. Plaintiffs Continue to Face Coercion to Violate their Faith

Here, there is no question that employees were coerced to violate their faith to keep their jobs. In fact, this case is even stronger than *Elrod*, because here, Defendants admit that even after termination, employees could be re-employed if they violated their faith, which was not an option for the terminated employees in *Elrod*.

Defendants' arguments to the contrary do not make sense. For example, they state: "Nor is there any merit to Plaintiffs' claim that they face ongoing coercion to violate their religious beliefs. Those plaintiffs who have been terminated have no right of reinstatement if they now choose to get vaccinated. *They would simply be eligible for employment if they chose to reapply for their jobs*." [ECF No. 159 at 4]. While Plaintiffs would of course prefer reinstatement to their old positions, at this point, having been starved of all income for over six months, the promise of re-employment at the DOE at all is certainly a coercive condition. The distinction is illogical.

In *Elrod,* the Court held that "conditions on public benefits, in the form of jobs or otherwise, which dampen the exercise, generally, of First Amendment rights, however slight the inducement to the individual to forsake those rights, are prohibited." *Elrod,* 427 U.S. at 357-59. Compensation paid to reimburse Plaintiffs for their pecuniary losses cannot address the impacts of the intense religious coercion and oppression they are facing now, which are spiritual, rather than pecuniary. *Ramirez v. Collier*, 595 U.S. __ (2022) 19.

Even without the constitutional element, the coercive nature of these Mandates goes beyond the mere loss of income from a job formerly held, beyond even the deprivation of public benefits. Here, through the creation of nearly a hundred specifically applicable mandates, Defendants have so contrived that unless they violate their religious beliefs, Plaintiffs are forbidden to work for *any* employer, public or private, in New York City. Nor can they even receive unemployment compensation. [*see* Chu Decl., ECF No. 132]. They cannot even apply for jobs outside of New York City, since the DOE has attached a "problem code" that marks them as unemployable. [*see* Solon Decl., ECF No. _____] This result independently constitutes irreparable harm. *See Bryan v. Hall Chem. Co.,* 993 F.2d 831, 835 (11th Cir. 1993) (enforcement of broad noncompete agreement constituted irreparable harm because employee "would be virtually unemployable in the industry in which he has spent most of his life.") The Court is respectfully referred to the incorporated declarations attached to the moving papers and to this reply, detailing the "spiritual rape", horrific suffering, loss of homes, loss of family and other irreparable harms that these Plaintiffs have already gone through. These Plaintiffs are in crisis.

## CONCLUSION

For the reasons set forth above, Movants respectfully ask that this Court issue a preliminary injunction barring enforcement of the Mandate against Plaintiffs and any other DOE employee who has applied for religious accommodation and offering each reinstatement of pay and benefits pending resolution on the merits.

Dated: New York, New York

    May 20, 2022

| | |
|---|---|
| **GIBSON LAW FIRM, PLLC** | **NELSON MADDEN BLACK LLP** |
| */s/ Sujata S. Gibson* | */s/ Barry Black* |
| By: Sujata S. Gibson, Esq. | By: Barry Black |
| 408 W. Martin Luther King, Jr. St. | Jonathan R. Nelson |
| Ithaca, NY 14850 | Sarah E. Child |
| (607) 327-4125 | 475 Park Avenue South, Suite 2800 |
| sujata@gibsonfirm.law | New York, NY 10016 |
| | (212) 382-4300 |
| | bblack@nelsonmaddenblack.com |

*Attorneys for Plaintiffs*