21-cv-7863 (VEC) (Lead Case) | 21-cv-8773 (VEC)

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

MICHAEL KANE, et al.,

                                                Plaintiffs,

-against-

BILL DE BLASIO, et al.,

                                                Defendants.

MATTHEW KEIL, et al.,

                                                Plaintiffs,

-against-

THE CITY OF NEW YORK, et al.,

                                                Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR DISQUALIFICATION OF JUDGE VALERIE E. CAPRONI**

Sujata S. Gibson  
GIBSON LAW FIRM, PLLC  
832 Hanshaw Rd., Suite A  
Ithaca, NY 14850  
(607) 327-4125  

Barry Black  
Jonathan R. Nelson  
Sarah E. Child  
NELSON MADDEN BLACK LLP  
475 Park Avenue S., Suite 2800  
New York, NY 10016  
(212) 382-4300  

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................... iii

**ARGUMENT** ................................................................................................................................ 1

    **I.**    **Preliminary Statement** ................................................................................................ 1

    **II.**    **Summary of Relevant Facts** ....................................................................................... 2

    **III.**    **Under United States Code, Disqualification is Required Here.** ............................... 6

**CONCLUSION** ............................................................................................................................ 8

# **TABLE OF AUTHORITIES**

**Cases**

*Caperton v. A.T. Massey Coal Co.,*
  556 U.S. 868 (2009) ........................................................................................................ 9

*Chase Manhattan Bank v. Affiliated FM Ins. Co.,*
  343 F.3d 120 (2d Cir. 2003) .................................................................................... 3, 6, 7

*In re Murchison,*
  349 U.S. 133 (1955) ...................................................................................................... 10

*Liteky v. United States,*
  510 U.S. 540 (1994) ...................................................................................................... 10

*Offutt v. United States,*
  348 U.S. 11 (1954) ........................................................................................................ 10

*Ward v. Monroeville,*
  409 U.S. 57 (1972) .......................................................................................................... 9

**Statutes**

28 U.S.C. § 453 .................................................................................................................. 9
28 U.S.C. § 455 .......................................................................................................... 3, 8, 10

**ARGUMENT**

I. **Preliminary Statement**

Plaintiffs bring this motion to disqualify the Honorable Valerie E. Caproni from hearing this case to preserve justice and the appearance of justice due to financial conflict of interest in violation of 28 U.S.C. § 455. Specifically, on May 18, 2022, Judge Caproni's mandatory Financial Disclosures for 2020 became publicly available, revealing between $50,000 and $100,000 of Pfizer stock as of the end of 2020. [Gibson Decl. Ex. 1].

The ownership of this stock constitutes a direct financial conflict of interest in the outcome of this case. This case revolves around the unconstitutionality of COVID-19 vaccine mandates in New York City. Until recently, the only COVID-19 vaccine licensed by the FDA was the Pfizer Comirnaty vaccine. Still, Pfizer is one of the few licensed vaccines against COVID-19. Plaintiffs seek an order enjoining enforcement of the Covid-19 vaccine mandates and declaring the mandates unconstitutional. Were this court to grant Plaintiffs' requests, Pfizer stock would be negatively impacted. It is well-documented that court rulings against mandates have led to significant decreases in revenue and share prices for Pfizer, Moderna and other Covid-19 vaccine makers. For example, when the Supreme Court upheld a preliminary injunction of the OSHA mandate, the share prices of Moderna, Pfizer and other COVID-19 vaccine makers "got whacked." [Gibson Decl. Ex 2,3]. Judge Caproni's financial interests are thus directly tied to the outcome of this case, which creates an impermissible financial conflict of interest. Moreover, the facts are sufficient to lead a reasonable person to conclude that the Judge's impartiality might be in question. As a result, her disqualification from this case is required. *Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120 (2d Cir. 2003).

II.      **Summary of Relevant Facts**

In August 2021, New York City announced that it would begin mandating vaccines for all Department of Education ("DOE") employees. The City noted that the mandate was generated in response to the FDA's approval of the Pfizer Comirnaty vaccine against COVID-19 two days before the mandate was promulgated.

Pfizer's stock soared in response to these and other mandates. "While there was an initial dip in revenue for 2020, things changed once Pfizer started generating meaningful revenue from its COVID-19 vaccine. Now, a segment of its business that didn't even exist a few years ago will generate more revenue than the entire company did in 2020. All combined, Pfizer's total revenue could top more than $100 billion this year, up from $81 billion in 2021." David Jagielski, *3 Charts That Show Just How Ridiculously Massive Pfizer's COVID-19 Revenue Will Be in 2022*, Nasdaq (Feb. 18, 2022 10:30 AM), http://www.nasdaq.com/articles/3-charts-that-show-just-how-ridiculously-massive-pfizers-covid-19-revenue-will-be-in-2022. Experts predict that vaccine mandates are crucial to keep Pfizer profits soaring. *See, e.g.*, Adria Cimino, *15 Words From President Biden That Could Equal Billions for Pfizer and Moderna*, Nasdaq (Sept. 12, 2021 6:00 AM), http://www.nasdaq.com/articles/15-words-from-president-biden-that-could-equal-billions-for-pfizer-and-moderna-2021-09-12. Indeed, court rulings enjoining mandates have predictably led to severe losses for Pfizer and the other vaccine companies. Sabrina Escobar, *Moderna and Novavax Stocks Get Whacked by Supreme Court's Vaccine Decision*, Barron's (Jan. 14, 2022, 1:39 PM), http://www.barrons.com/articles/moderna-novavax-vaccine-stocks-supreme-court-51642165803; Eric Volkman, *Why Pfizer and BioNTech Got Thrashed on Thursday*, Nasdaq (Jan. 13, 2022 6:17 PM),

http://www.nasdaq.com/articles/why-pfizer-and-biontech-got-thrashed-on-thursday.

New York City is an important battleground in the legal fight over mandates, and the DOE case is ground zero. After Judge Caproni denied preliminary injunctive relief to Plaintiffs in this case in 2021, the City expanded the mandates to more and more sectors, until nearly every employee, public or private, is now required to take a COVID vaccine as a condition of their job. Moreover, when the federal mandates were stayed by the Supreme Court, New York City immediately stepped in to pass private sector mandates that are even more restrictive than the stricken OSHA mandates to fill the gap. If the New York City mandates were to be enjoined as the federal ones were, there is no question that it would have a substantial impact on Pfizer stock prices and on Judge Caproni's financial interests.

This lawsuit was filed in September 2021 challenging the DOE mandates as unconstitutional on their face and as applied through discriminatory religious exemption policies. When Judge Caproni was assigned to the case, she did not disclose or mention that she owned between $50,000 and $100,000 of Pfizer stock at the time. More recent financial disclosures were not available, and the parties presumed that the Court would disclose any potential financial conflicts of interest pursuant to federal law.

At the end of 2021, national focus was placed on judicial financial conflicts of interest after the Wall Street Journal ran a number of investigative pieces pointing out the problems in federal courts. Chief Justice Roberts' year-end report emphasized the importance of finding and eliminating any financial conflict, no matter how small, to preserve confidence in the judiciary.

On May 13, 2022, President Biden signed S-3059, the "Courthouse Ethics and Transparency Act" into law. Within a week, Judge Caproni's end of year 2020 mandatory

financial disclosures finally became publicly available, revealing a continued ownership of between $50,000 and $100,000 of Pfizer stock. According to other available disclosures, Judge Caproni has held substantial stock in Pfizer since at least 2011. Though 2021 disclosures have not yet been made publicly available, there is a rebuttable presumption given this long-standing financial interest in the company that Judge Caproni still held substantial Pfizer stock nine months after the close of 2020. It is also highly likely, given Pfizer's explosion in value, that her Honor's investment in Pfizer stock is significantly more valuable now than it was in 2020 – when it already exceeded the average bank savings of all households in the United States.[1]

The proceedings thus far could lead to a perception of a lack of neutrality, particularly given the long-standing financial interests recently disclosed. The DOE mandate originally had no religious or medical exceptions. In response to lawsuits staying the mandate because of these omissions, the DOE adopted facially discriminatory religious exemption policies and then participated in what can only be deemed heresy inquisitions, resulting in unconstitutional denials of nearly all applicants for religious accommodation. Nonetheless, Judge Caproni flatly denied injunctive relief. [ECF No. 65 at 55-72]. In so doing, the Court also denied Plaintiffs' request to present expert testimony about the lack of need for the mandates, and the alternative reasonable accommodations that could be made. *Id*. at 4-5. One point at issue was that the Pfizer vaccine cannot stop transmission of the virus in any meaningful way. Rather than allow expert testimony, Judge Caproni spent substantial time unfairly dismissing the qualifications of the offered experts who were

---

[1] https://www.bankrate.com/banking/savings/savings-account-average-balance/#:~:text=How%20much%20does%20the%20average,actually%20much%20higher%2C%20at%20%2441%2C600. ("While the median bank account balance is $5,300, according to the latest SCF data, the average — or mean — balance is actually much higher, at $41,600.")

highly credentialed and cited professors of public health and medicine at Stanford and Johns Hopkins. *Id.* at 41-47, 66-68. Judge Caproni then took the shocking step of substituting her own medical opinion about the efficacy of the Pfizer vaccine at stopping infection and transmission without citing studies or allowing for any cross-examination. *Id*. at 67-68. Judge Caproni also flatly refused to consider the expert testimony discussing the waning effect of the vaccines. *Id*. at 41-45. It is now universally acknowledged that though the COVID-19 vaccines might lessen severity of disease, they cannot meaningfully stop the spread of COVID-19 and that the protection wanes quickly, just as the experts stated in their sworn declarations. The rationality and necessity of the mandates is thus properly called into question and should have been heard regardless of Judge Caproni's personal opinions about the efficacy of a product in which she has a substantial financial investment.

In denying the motion, the Court also adopted Defendants' contradictory argument that Plaintiffs were both "too late" in filing the day that the mandates took effect, but also too early, since most had not received final denials yet, and other arguments soon abandoned by Defendants. On appeal, the DOE attorneys did not even bother to claim that there was a standing issue and admitted in open court that their policies were likely unconstitutional. The Second Circuit reversed Judge Caproni's denial of interim relief, remanding the case for further proceedings. [21- 2711, ECF No. 126 (2d Cir. Nov. 30, 2021)].

Other events in the case could also reasonably lead to questions about objectivity. Over objection, Judge Caproni kept the district court docket stayed from October 25, 2021 to December 14, 2021, denying several reasonable requests to lift the stay so that Plaintiffs could file for class certification as directed by the Second Circuit, and moving of its own

volition to vacate amended complaints and motions to file for class certification during this period. [ECF No. 80; 21-CV-8773, ECF No. 47]. The Court then rested its denial of preliminary class certification in December 2021 on the fact that the original complaints filed in September and October 2021 lacked class allegations, even though the subsequent amended complaints and class certification motion papers that Plaintiffs were blocked from filing did contain these allegations. [ECF No. 90]. As soon as the stay was finally lifted on December 14, 2021, the Plaintiffs tried once more to file an amended complaint, but the Court immediately vacated the amended pleading without legal justification. [21-CV-8773, ECF No. 58].

Given the financial conflicts of interest alone, leave aside the Court's intervention in this case to uphold Defendants' interests and prevent Plaintiffs from filing pleadings that they were entitled to file as of right, impartiality might reasonably be questioned.

### III. Under United States Code, Disqualification is Required Here.

28 U.S.C. § 455(a) requires that "(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Under subsection (b), a Judge must also disqualify herself if she "knows that [s]he, individually or as a fiduciary . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding" or even if she or a person within the third degree of relationship to the Judge or the Judge's spouse or child could be substantially affected by the outcome of a proceeding. Pursuant to 28 U.S.C. §455 (d)(4), "financial interest" means ownership of a legal or equitable interest, however small. Pursuant to this statute, Judge Caproni *must* disqualify herself, as she has a substantial

financial interest in the subject matter of the case due to her ownership of at least $50,000-$100,000 in Pfizer shares.[2]

Disqualification is not only required pursuant to statute but is also required as part of the fundamental due process right. In *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), the U.S. Supreme Court reaffirmed that litigants have a due process right to an impartial judge, and that under any circumstances in which judicial bias is probable, due process requires disqualification. The Court noted, however, that disqualification rules may be and often are more rigorous than the Due Process Clause requires. *Id*.

"For centuries, impartiality has been a defining feature of the Anglo-American judge's role in the administration of justice. The reason is clear: in a constitutional order grounded in the rule of law, it is imperative that judges make decisions according to law, unclouded by personal bias or conflicts of interest. Accordingly, upon ascending the bench, every federal judge takes an oath to 'faithfully and impartially discharge and perform all the duties' of judicial office." Charles G. Geyh, *Judicial Disqualification: An Analysis of Federal Law*, 3rd ed. (Federal Judicial Center, 2020) [hereinafter FJC] at 1 (citing 28 U.S.C. § 453). "Moreover, the Due Process Clause of the Fourteenth Amendment has been construed to guarantee litigants the right to a 'neutral and detached,' or impartial, judge." FJC at 1 (citing *Ward v. Vill. of Monroeville*, 409 U.S. 57 (1972)).

Lastly, in a democratic republic in which the legitimacy of government depends on the consent and approval of the governed, public confidence in the administration of justice is indispensable. It is not enough that judges *be* impartial; the public must *perceive* them to

---

[2] 2021 financial disclosures are not yet publicly available as discussed above. Financial disclosures since 2011, all showing substantial Pfizer stock holdings, are available at: https://www.courtlistener.com/person/532/disclosure/6645/valerie-elaine-caproni/

be so. The Code of Conduct for United States Judges therefore admonishes judges to "act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary" and to "avoid impropriety and the appearance of impropriety in all activities." FJC at 1 (citing Code of Conduct for United States Judges, Canon 2A). "Disqualification requirements for federal judges require disqualification not just when a judge is biased or probably biased, but also when a judge's impartiality 'might reasonably be questioned.'" FJC at 1-2 (citing 28 U.S.C. § 455(a)). Judicial impartiality, as well as the appearance of impartiality, is imperative to maintain the public confidence in the judiciary. Impartiality must be "evaluated on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994); s*ee also In re Murchison*, 349 U.S. 133, 136 (1955) ("Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.'" (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954)).

Here, where Judge Caproni's financial interests are directly impacted by the outcome of this case, and where proceedings have been conducted in a manner that reasonably lead to questions regarding neutrality, disqualification is mandatory, whether the Court feels that any personal interest can be set aside, and neutrality achieved.

## **CONCLUSION**

Wherefore, Plaintiffs request this Court to disqualify the Honorable Valerie E. Caproni under 28 U.S.C. §455(a) and (b) and for other and further relief as the Court deems just. Because Plaintiffs are suffering enormous, ongoing and imminent harm each day that

decisions on their pending motions for injunctive relief pend, Plaintiffs respectfully also request that this Court decide this motion in the most expedient fashion available.

Dated: New York, New York

June 9, 2022

| **GIBSON LAW FIRM, PLLC** | **NELSON MADDEN BLACK LLP** |
|---|---|
| */s/ Sujata S. Gibson* | */s/ Jonathan R. Nelson* |
| By: Sujata S. Gibson, Esq. | By: Jonathan R. Nelson |
| 832 Hanshaw Rd., Suite A | Barry Black |
| Ithaca, NY 14850 | Sarah E. Child |
| (607) 327-4125 | 475 Park Avenue South, Suite 2800 |
| sujata@gibsonfirm.law | New York, NY 10016 |
| | (212) 382-4300 |
| | bblack@nelsonmaddenblack.com |

*Attorneys for Plaintiffs*