| | |
|---|---|
| **GIBSON LAW FIRM, PLLC**<br>832 Hanshaw Rd., Suite A<br>Ithaca, NY 14850<br>Sujata S. Gibson, Esq. | **NELSON MADDEN BLACK LLP**<br>475 Park Ave. S., Suite 2800<br>New York, NY 10016<br>Jonathan R. Nelson, Esq. |

October 11, 2022

**By ECF**
Hon. Naomi Reice Buchwald
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

      Re: <u>Kane, et al. v. Bill de Blasio, et al.</u>, No. 21 Civ. 7863 (lead), No. 21 Civ. 8773

Dear Judge Buchwald:

      Counsel for the *Kane* and *Keil* Plaintiffs in this matter write jointly in response to the Court's docket entry of September 29, 2022 [ECF No. 202] directing Plaintiffs to clarify certain points concerning their pending motion for fees.

      <u>Plaintiffs are "prevailing parties" entitled to attorneys' fees</u>. "Under [the Supreme Court's] 'generous formulation' of the term, '"plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."'" (*Farrar v Hobby*, 506 US 103, 109 [1992]). The fee-shifting law does not require a party to prevail on all issues in a case, or even on the "central" issue, so long they have prevailed on a "significant issue." (*Tex. State Teachers Assn. v Garland Indep. Sch. Dist.*, 489 US 782, 790-791 [1989] [awarding attorney's fees for limited victory in interim appellate decision]).

      The Supreme Court holds that "'even an award of nominal damages suffices under this test.' *see Farrar*, 506 US at 121)." (*Buckhannon Bd. & Care Home v W. Va. Dept. of Health & Human Res.*, 532 US 598, 603-604 [2001]).

      In Plaintiffs' complaint in the *Kane* litigation, Plaintiffs sought declaratory and injunctive relief, stating, *inter alia*:

> The Vaccine Mandate, on its face and as applied, is neither neutral nor generally applicable as it grants the possibility of religious exemptions to those who belong to certain religious organizations but not to those whose religious practices fall outside of those religions. The Vaccine Mandate, on its face and as applied, thus targets plaintiffs' religious beliefs for disparate and discriminatory treatment.

1

*Kane et al. v. Bill de Blasio et al.,* Case No. 1:21-cv-7863 (NRB) (ECF No. 1 at 65). In the *Keil* litigation, Plaintiffs requested, *inter alia*:

> On the First Claim for Relief (paragraphs 45 through 70 hereof): Plaintiffs ask the Court to find that [ ] *the Exemption Standards are invalid because they violate the Free Exercise Clause of the First Amendment to the United States Constitution*, to permanently stay the October 29 and November 30, 2021 deadlines set forth in the Exemption Standards, [ ] *to require NYC DOE to accommodate the religious exemption requests of unvaccinated employees, including Plaintiffs, in a constitutionally permissible manner*, [and ] to order the NYC DOE to restore all employees who have been adversely affected by the Vaccine Mandate or the Exemption Standards *to employment with NYC DOE with back pay* and restoration of time in service, seniority and tenure rights ... .

*Keil et al. v. City of New York, et al.*, Case No. 1:21-cv-08773 (NRB) (ECF No. 10 at 70) (emphasis supplied).

On appeal after the District Court denied the Plaintiffs' requests for a preliminary injunction, the Court of Appeals agreed that the Defendants' Exemption Standards were invalid because they violated the First Amendment, and thus Plaintiffs were entitled to relief on their as applied claims – one of the items of relief that was explicitly requested in the verified complaints:

> We conclude, first, that the procedures specified in the Arbitration Award and applied to Plaintiffs are not neutral. [ ]
>
> Nor does it appear that such procedures were generally applicable to all those seeking religious accommodation. [ ]
>
> Because the accommodation procedures here were neither neutral nor generally applicable, as applied, we apply strict scrutiny at this stage of the proceeding. [ ]
>
> These procedures cannot survive strict scrutiny because denying religious accommodations based on the criteria outlined in the Accommodation Standards, such as whether an applicant can produce a letter from a religious official, is not narrowly tailored to serve the government's interest in preventing the spread of COVID-19. The City offers no meaningful argument otherwise.

Decision dated November 28, 2021 (*Keil et al. v. City of New York, et al.*, No. 21-2711 (2nd Cir.), ECF No. 117-1) at pages 26, 28-30 of 48 (*Kane v De Blasio*, 19 F4th 152, 167-169 [2d Cir. 2021]). The Court's decision was, in effect, a declaratory judgment as to the unconstitutionality of the Exemption Standards.

Based on its decision of November 28, the Court of Appeals entered judgment vacating the District Court's orders, ordering a temporary stay pending a fresh decision on plaintiffs' exemption requests, and remanding the case. (USCA2 21-2711, ECF No. 120) (the "Judgment") The

Judgment mandated procedures for the Defendants to follow, *inter alia* as follows:

1. Plaintiffs shall receive fresh consideration of their requests for a religious accommodation by a central citywide panel

2. Such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law. *Such consideration shall not be governed by the challenged criteria set forth in Section IC of the arbitration award for United Federation of Teachers members*. Accommodations will be considered for all sincerely held religious observances, practices, and beliefs (emphasis supplied).

5. If a plaintiff's request is granted by the citywide panel, the plaintiff will receive backpay running from the date they were placed on leave without pay.

Decision dated November 28, 2021 (USCA2 21-2711, ECF No. 117-1) at page 48 of 48.

The Court of Appeals' Judgment granted relief responsive to Plaintiffs' request for the court to "require NYC DOE to accommodate the religious exemption requests of unvaccinated employees, including Plaintiffs, in a constitutionally permissible manner," *inter alia*, by specifying the laws with which the Defendants' new decisions panel would be required to follow, and by forbidding the Defendants to employ "the challenged criteria set forth in Section IC of the arbitration award for United Federation of Teachers members" (i.e., the Exemption Standards). The order also responded to Plaintiffs' request for relief "to order the NYC DOE to restore [ ] employees who have been adversely affected by [ ] the Exemption Standards to employment with NYC DOE with back pay."

The Judgment entitled each of the Plaintiffs to a fresh adjudication of their exemption claims, unburdened by the Exemption Standards. Whether the Defendants complied with that requirement is at issue in the Court of Appeals. Nevertheless, although most of the Plaintiffs' applications were denied again, the Judgment altered the relationship between all Plaintiffs and the Defendants by creating an additional opportunity for appeal and by requiring that the appeal be determined without regard to the unconstitutional standards that had governed their initial applications.

Importantly, Plaintiff William Castro's exemption application was granted by the Citywide Panel in the "Fresh Look" process mandated in the Judgment. Mr. Castro received his employment with the DOE back as well as the back pay he had lost while being put on involuntary leave without pay. Thus, William Castro received substantially all of the individual relief that Plaintiffs' lawsuit had requested: a judicial finding that he had been treated unconstitutionally; a court order requiring the Defendants to accommodate his religious exemption request in a constitutionally-sound manner; and back pay upon his reinstatement to employment.

The Defendants' rejection of the remaining Plaintiffs' "fresh look" appeals does not disqualify Plaintiffs as prevailing parties. (*See e.g. Farbotko v Clinton Cty.*, No. 99-CV-1946 (DRH), 2004 U.S. Dist. LEXIS 31445, at *3 [N.D.N.Y. Nov. 10, 2004]):

3

Here, the appeal on behalf of six plaintiff class members obtained a decision in favor of two of the six. This satisfies the requirement that the plaintiffs have prevailed on a "significant claim" and obtained at least some of the relief requested.

In addition, faced with the Plaintiffs' appeal, Plaintiffs' demand for class certification, and the obvious legal infirmity of Defendants' denial of religious exemptions to other DOE employees, the Defendants "voluntarily" reopened the doors for thousands of denied religious accommodation appeals, by making the "fresh look" appeals process available to all DOE employees whose initial exemption appeals had been denied by arbitrators. Thus, thousands of additional DOE employees received a type of benefit that Plaintiffs had intended to achieve through their complaints in this action. Defendants would not have done so but for Plaintiffs' litigation and appeal. While Plaintiffs' prevailing party status does not rest on this result, the indirect benefit extended to thousands of DOE employees demonstrates the great significance and power of the Judgment: the Judgment realized Plaintiffs stated goal of achieving relief for themselves and those similarly situated and subjected to the same unconstitutional Exemption Standards. The "any significant issue" standard for determining prevailing party status has special weight "in a civil rights or employment discrimination context where, as a general rule, the defendant does not assert claims against the plaintiff and any significant vindication of a plaintiff's rights is meaningful, even if the plaintiff does not prevail on all of the claims asserted." (*JA Apparel Corp. v Abboud*, No. 07 Civ. 7787 (THK), 2010 U.S. Dist. LEXIS 36520, at *6 [S.D.N.Y. Apr. 13, 2010]).

Importantly, the Second Circuit, in mandating costs, already acknowledged Plaintiffs as prevailing parties. [ECF No. 178]

So – did the Plaintiffs "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit?" Clearly, they did. The Court of Appeals found that the Exemption Standards were invalid under the First Amendment; they required DOE to accommodate the religious exemption claims of all of the Plaintiffs in a constitutionally permissible manner; and as a result, one Plaintiff received reinstatement with back pay. In addition, thousands of similarly-situated DOE employees were given similar relief, solely as a result of Plaintiffs' litigation. By the standards announced by the Supreme Court, therefore, the Plaintiffs are "prevailing parties."

<u>Plaintiffs are also entitled to payment of their attorney's fees at this time</u> because the statute authorizes fee awards on interim judgments.

In *Hanrahan v. Hampton*, 446 U.S. 754, 758 [ ] (1980) (*per curiam*), we reviewed the legislative history of § 1988 and found that "Congress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of his claims." Our "respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." *Hewitt v. Helms*, 482 U.S. 755, 760 [ ] (1987). We have held that even an award of nominal damages suffices under this test. *See Farrar v. Hobby*, 506 U.S. 103 [ ] (1992).

4

*(Buckhannon Bd. & Care Home*, 532 US at 603-604).

> Congress intended to authorize fee awards to prevailing parties even in the midst of continuing litigation.
>
> Congress cannot have meant "prevailing party" status to depend entirely on the timing of a request for fees: A prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, *either pendente lite or at the conclusion of the litigation.*

*(Tex. State Teachers Assn.*, 489 US at 791). The Second Circuit has found that "a party need not necessarily litigate a case to final judgment to be "prevailing" within the meaning of the [Equal Access to Justice Act]." *McGill v Sec'y of Health & Human Servs.* (712 F2d 28, 30 [2d Cir 1983]) (citing to legislative history quoting Supreme Court decisions under Section 1988).

In the instant matter, of course, the District Court has rendered final judgment in the matter. Now that the case is considered to be "final" at the trial level, there should be no question as to whether or not an application for attorney's fees is appropriately *timed*. The time of final disposition at the trial level is the normal time for a fees application to be submitted. *See, e.g.,* F. R. Civ. P. 54(d)(2)(B). From the standpoint of the trial court, Plaintiffs' application is not for an "interim *award*;" rather, Plaintiffs are applying at the conclusion of the case for an award upon an interim *decision*. This situation is entirely unlike the one before the appellate court in *Cullen v Margiotta* (811 F2d 698 [2d Cir 1987]). There, the court declined to rule on an appeal from an interim award of attorney's fees, because the case had not yet been litigated to a final order. In the instant case, the matter has been entirely decided (except for attorney's fees) and the case closed.

Plaintiffs' entitlement to attorney's fees is supported by the Second Circuit's decision in *LaRouche v Kezer* (20 F3d 68 [2d Cir 1994]). In that case, the District Court granted an injunction to political candidates requiring the State of Connecticut to list them on a ballot, with which the State complied. Post-election, the candidates lost the appeal brought by the State, with the Court finding that the State's initial decision excluding them from the ballot was lawful. The District Court awarded legal fees to the candidates, on the basis that the injunction had given them the ultimate relief that they had sought. The appellate court reversed the fees decision, finding that the candidates' ultimate loss *on the merits* disqualified them as prevailing parties.

Under *LaRouche*, the Plaintiffs are prevailing parties, because the decision of the Court of Appeals finding that the Exemption Standards were unconstitutional was based on the *merits* of the Plaintiffs' arguments about those standards. The court's order mandating a "fresh look" review of Plaintiffs' appeals expressly ordered the Defendants not to employ those standards in their appellate decisions. If the issue of the Exemption Standards became "moot" after the Second Circuit's judgment, it was only because that judgment resolved the issue and changed Defendants' conduct. "If a claim is mooted, interim injunctive relief may be a basis for an award of attorney's fees, if plaintiff has prevailed on the merits at the interim stage." (*Id.* at 75).

If the Second Circuit's ruling of November 28, 2021 might be susceptible of reversal, it would arguably be premature to award interim attorney's fees at this time. *See, e.g., Turner v.*

*McMahon*, 830 F.2d 1003 (9th Cir. 1987), *cert. denied*, 488 U.S. 818 (1988) (vacating attorney fees award due to appellate reversal of judgment in favor of plaintiffs). However, the invalidity of the Exemption Standards *on the merits* is *not at issue* in the pending appeal, and neither is Plaintiff William Castro's reinstatement to employment with the DOE. Plaintiffs will remain prevailing parties with respect to these aspects of the litigation no matter what happens in the pending appeal. The appeal may result in Plaintiffs becoming prevailing parties with respect to additional issues; but it cannot affect Plaintiffs' victory with respect to the Exemption Standards, the "fresh look" appeals and William Castro's reinstatement.

In *Haley v. Pataki*, the District Court for the Northern District of New York carefully examined the issues to be considered in determining whether to award interim attorney's fees under Section 1988.

> "A prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of litigation." *Tex. State Teachers Ass'n*, 489 U.S. 782 [ ]. However, "it seems clearly to have been the intent of Congress to permit such an interlocutory award only to a party who has established his entitlement to some relief on the merits of his claims, either in the trial court or on appeal." *Hanrahan v. Hampton*, 446 U.S. 754 [ ] (1980). As the Supreme Court has stated:
>
>> It seems apparent … that Congress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of his claims. For only in that event has there been a determination of the "substantial rights of the parties," which Congress determined was a necessary foundation for departing from the usual rule in this country that each party is to bear the expense of his own attorney.
>
> *Id.*

*Haley v Pataki*, 901 F Supp 85, 87-88 [N.D.N.Y. 1995]

In *Haley v. Pataki*, the court ordered New York State to pay millions of dollars to legislative employees, knowing that the Legislature was likely to enact a new budget before the litigation was finalized and therefore, that "the relief sought by the plaintiffs was temporary relief." Nevertheless,

> "[t]he Court made its decision only after fully and carefully considering the legal claims before the Court, and made the decision to grant plaintiffs' preliminary relief "with full awareness that … it was most unlikely there would ever be a different legal outcome in the particular case."
>
> The Court granted mandatory injunctive relief, which required the plaintiffs to make a "clear showing of probable success." [ ] Moreover, the Court noted that "mandatory injunctions are not granted in doubtful cases in which the facts and law do not clearly favor the moving party." [ ] Nevertheless, the Court stated in the

6

> May 3, 1995 order that "the court has little difficulty in finding that the plaintiffs have established a showing of likelihood of success on their claim under the Contract Clause." Based on the foregoing, this Court finds that *there was substantial consideration of the merits of this case*, and thus, the plaintiffs are prevailing parties, such that they are entitled to an award of legal fees.

*Haley*, 901 F Supp at 88 (emphasis supplied). The District Court's injunction was later dissolved, and the litigation dismissed as moot, by the Court of Appeals. *Id.* at 87. Nevertheless, the District Court awarded attorney's fees to the plaintiffs who brought the case.

The Plaintiffs in the instant case meet the standards outlined in *LaRouche* and *Haley* for an award of legal fees following an interim judgment. The Second Circuit examined the First Amendment deficiencies of the DOE's Exemption Standards and found that Plaintiffs had established a strong likelihood of success on the merits of their claims challenging those standards. The merits of Plaintiffs' arguments were so strong that the Defendants consented to a judgment that forbade them from employing the Exemption Standards to Plaintiffs' appeals on remand.

For the reasons stated, Plaintiffs are prevailing parties in the instant litigation, and now is the appropriate time to decide their pending motion. Plaintiffs request that the motion be permitted to proceed.

Respectfully submitted,

/s/ Jonathan R. Nelson  
Counsel for Keil Plaintiffs

/s/ Sujata S. Gibson  
Counsel for Kane Plaintiffs

cc:     All counsel via ECF